Weston L. Harris (A1387)
**PARSONS DAVIES KINGHORN & PETERS**
185 South State Street, Suite 700
Salt Lake City, UT 84111
(801) 363-4300
(801) 363-4378– Fax

Scott J. Goldstein  (MO #28698)
Daniel D. Doyle   (MO # 36724)
**Spencer Fane Britt & Browne LLP**
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216– Fax

Counsel for Debtors

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **In re:** ) | **Case Nos. 02-22906** |
| ) | **02-22907** |
| **SIMON TRANSPORTATION SERVICES INC.,** ) | |
| **and DICK SIMON TRUCKING, INC.,** ) | **Chapter 11 proceedings** |
| ) | **Jointly administered** |
| **Debtors.** ) | |

## MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND TO APPROVE ASSUMPTION AND ASSIGNMENT OF LEASES AND EXECUTORY CONTRACTS

Simon Transportation Inc. and Dick Simon Trucking, Inc., debtors and debtors in possession (together, "Debtors"), for their Motion, state:

1. This Court has jurisdiction over this case and over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M)and (N).

2. Debtors filed their voluntary Chapter 11 petitions on February 25, 2002 ("Petition Date").  The Debtors have continued to operate their business and manage their properties pursuant to sections §§ 1107 and 1108 of the U.S. Bankruptcy Code.

3. The Debtors operate one of the country's largest transporters of temperature-controlled freight.  The Debtors have under lease or under sale contracts approximately 2,300 tractors and 3,000 trailers.

4. Due to declining market conditions for freight rates, shipper demand, and equipment



0222906D106

values, coupled with an overcapacity of equipment, the Debtors have incurred severe financial

losses for a sustained period.  Operating losses at the Petition Date were estimated at $100,000

per day.

5.  With such losses, the Debtors can be expected to remain in operation no more than 60

days.

6.  Both before and after the Petition Date, the Debtors have streamlined their fleet,

personnel, and operations significantly to reduce its fleet of tractors and trailers, attempted to

carry higher revenue shipments, and attempted to retain key customers, so as to retain an efficient

business attractive to potential buyers.  Debtors have moved to reject or abandon hundreds of

tractors and trailers that are burdensome to the estates, despite its ability to retain the equipment

under 11 U.S.C. § 365(d)(10).

7.  Debtors have actively marketed the sale of the tractors, trailers, and related assets

through Morgan Keegan & Company, which distributed marketing materials to potential buyers

last week. Morgan Keegan is establishing a data room to facilitate due diligence of prospective

bidders for Debtors' assets.

8.  Debtors hope that a buyer might seamlessly operate the Debtors' core business

without interruption of its shipper, vendor, and other business relationships, essentially taking

over profitable key shipper accounts so as to create value for the estates and their creditors.

Debtors also anticipate that the successful bidder will retain at least a portion of Debtors'

employees and preserve jobs both in the Salt Lake City area and nationally.

9.  Debtors also contemplate that the successful bidder will relieve the Debtor's of

burdensome debt arising from the financing of tractors and trailers under which the Debtors

guaranteed a residual value for each tractor and trailer. Any cure amounts or residual obligations are expected to be re-negotiated and paid by the successful bidder prior to actual assumption and assignment of any financing agreement, including finance leases, by the Debtor.

10.    In conjunction with ongoing attempts to sell the Debtors' assets at auction, Debtors have obtained a term sheet for a substantial portion of its assets from Central Freight Lines, Inc. (the "Central Bid"). Central Freight Lines, Inc., is a entity controlled, directly or indirectly, by Jerry Moyes, who also is the principal and controlling shareholder, directly or indirectly, of the Debtors.

11.    The Central Bid, which Debtors plan to use as a stalking horse, provides for, among other terms, Central's assumption of liabilities arising under financing agreements and under a mortgage of the Salt Lake City terminal and driver training center (mortgaged by a non-debtor, Simon Terminal LLC, of which Dick Simon Trucking is the sole member). In addition to relieving the estates of more than $100 million in liabilities, the Central Bid would provide a cash payment of $2 million to purchase goodwill and other general intangibles. A copy of the Central Freight Lines term sheet, entitled "Acquisition of Assets of Simon Transportation Services Inc. and Subsidiaries – Summary of Terms" dated March 8, 2002, is attached as Exhibit "A".

12.    The Debtors contemporaneously have filed their motion to establish bidding, auction and sale procedures and to provide adequate notice of the sale and of the bidding, auction and sale procedures.

13.    The Central Bid is currently the only offer the Debtors have received for their assets.

14.    Subject to this Court's order approving the sale to Central Freight Lines consistent

with the provisions of the attached term sheet and of a subsequent asset purchase agreement

incorporating those provisions that is to be filed in conjunction with the proposed auction, and

subject to any topping bid that is higher and better than the Central Bid, the Debtors request that

the Court authorize and approve the sale of the assets listed on the Central Bid term sheet

pursuant to 11 U.S.C. § 363 or to the highest and best bidder for the assets (the "Buyer").

15.   The Debtors additionally request that the Court enter an order providing for all liens,

claims, interests, and encumbrances to attach to the sale proceeds in their respective priorities,

with payment of proceeds in compliance with applicable priorities and loan documents;

approving the Debtors' assumption and assignment of specified unexpired leases and executory

contracts as are later identified by the Debtors and with written consent of each counterparty;

waiving the 10 day stay of the effectiveness of the order provided by Bankruptcy Rule 6004(g);

and finding that the sale to the Buyer is in good faith, bona fide, and protected by 11 U.S.C. §

363(m).

16.   The Debtor's precarious financial position, which has been exacerbated by the

departure of at least one large shipper and the withholding of freight by others during the short

pendency of this bankruptcy case, requires a sale of Debtors' assets as quickly as possible so as to

preserve going concern sale values for the estates.  Any unnecessary delays in marketing,

auctioning and selling the Debtor's assets likely will result in Debtors running out of cash before

closing the sale.

17.   In addition, Debtors' largest creditor, Mercedes-Benz Credit Corporation, has

informed the Debtors that MBCC will permit assumption of its debt by the Buyer only until April

1, 2002, requiring that any applicable notice periods be reduced to facilitate the auction and sale

on that date.

18. Section 363(b)(1) permits the Debtors to sell property outside the ordinary course of their business after notice and a hearing, based upon the Debtors' reasonable business judgment. *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

19. Section 363(f) allows the Debtors to sell property free and clear of liens, claims and encumbrances if the sale is permitted under non-bankruptcy law, if the secured party consents to the sale, or if the party asserting the interest can be compelled in a legal or equitable proceeding to accept a money satisfaction for such interest.

20. Debtors' financial adviser, Morris Anderson & Associates, has actively been negotiating with equipment vendors, including MBCC, concerning acceptable buyout or lease assumption terms for tractors and trailers.

21. Debtors anticipate that the equipment financing entities and others with interests in the assets to be sold, given the declining market values for tractors and trailers and due to the Morris Anderson negotiations, will not object to the sale to any qualified buyer. The Debtors may exclude from the sale any or all collateral or leased property in which an objecting creditor has an interest.

21. Section 363 provides for rejection of unexpired leases and executory contracts if supported by the Debtors' business judgment. Debtors lack any equity in its tractors and trailers for which Debtors have guaranteed payment of residual values, and for which they were in arrears up to five months prior to the Petition Date.

22. Because of the lack of equity and the potential for millions of dollars in unsecured claims arising from the rejection or abandonment of leased or purchased tractors and trailers, the

estates' interests are best served by permitting the assumption and assignment of contracts and leasing agreements to the Buyer only if the Buyer cures defaults and assumes the agreements after an opportunity for the Buyer to negotiate the amounts due and terms of the agreements.

23.  Under the circumstances, the Court should permit the Debtors to assume or reject any and all executory contracts or unexpired leases sought to be transferred to the Buyer in the sale (a) after the closing of the Sale; (b) upon 10 days' notice to the counterparty of each such agreement, with an opportunity for prompt hearing upon written objection; (c) if the Buyer agrees to provide for the cure of any default amount as may be negotiated; and (d) if the Debtors and their estates are released from any liability for any further cure of defaults or other amounts due.

24.  Under the circumstances, particularly the Debtors' continuing and severe negative cash flow and the erosion of market values due to market conditions that will increase potential unsecured deficiency claims against the estates, imposition of the 10-day stay of the effectiveness of a sale order likely would chill bidding, generate an unnecessary additional diminution of the value of estate property, and increase the difficulties involved in renegotiating unexpired leases and executory contract terms and cure amounts prior to assumption and assignment to the Buyer.  The circumstances warrant a waiver of the stay provided by Bankruptcy Rule 6004(g).

WHEREFORE, the Debtors request that this Court enter an Order in substantially the form attached hereto as Exhibit "B":

(A) Authorizing the Debtors to sell all or substantially all of their assets to Central Freight Lines, Inc., pursuant to the terms of the Central Bid term sheet, subject to approval of a forthcoming asset purchase agreement and subject to higher and better bids for purchase of the assets;

(B) Directing that all liens, claims, and other encumbrances in the purchased assets attach to the proceeds of the sale in their respective priorities;

(C) Authorizing the Debtors to assume or reject any and all executory contracts or unexpired leases sought to be transferred to the Buyer through the approved sale (i) after the closing of the Sale; (ii) upon 10 days' notice to the counterparty of each such agreement, with an opportunity for prompt hearing upon written objection; (iii) if the Buyer agrees to provide for the total cure of any default amount as may be negotiated; and (iv) if the Debtors and their estates are released from any liability for any further cure of defaults or other amounts due;

(D) Finding that the Buyer is a bona fide purchaser in good faith entitled to the protections of 11 U.S.C. § 363(m);

(E) Lifting the 10-day stay of the effectiveness of the sale order as permitted by Bankruptcy Rule 6004(g), so as to make the sale order effective upon entry;

(F) Reducing any applicable notice periods to permit the sale to occur on April 5, 2002; and

(G)  Providing such other and further relief as is just and proper.

Dated: March 11, 2002.

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP
Scott J. Goldstein      MO #28698
Daniel D. Doyle       MO #36724
Lisa A. Epps          MO #48544
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216– Fax

– and –

PARSONS DAVIES KINGHORN & PETERS

*Weston L Harris*

Weston L. Harris   (A1387)
185 South State Street, Suite 700
Salt Lake City, Utah 84111
(801) 363-4300
(801) 363-4378 – fax

COUNSEL FOR DEBTORS

**ACQUISITION OF ASSETS**
**OF**
**SIMON TRANSPORTATION SERVICES INC.**
**AND SUBSIDIARIES**

**Summary of Terms**
**March 8, 2002**

Set forth below is an outline of the principal terms and conditions of a proposed transaction (the "Transaction") pursuant to which Central Freight Lines, Inc. or an affiliate formed or to be formed corporation or other business entity (the "Buyer") will purchase substantially all of the assets of Simon Transportation Services Inc. ("SIMN") and its subsidiaries, Dick Simon Trucking, Inc. ("DSTI") and Simon Terminal, LLC ("Terminal"). SIMN and DSTI are sometimes referred to herein as the "Debtors" and the Debtors collectively with Terminal are referred to as the "Sellers." The Debtors have filed for reorganization under Chapter 11 of the Bankruptcy Code (the "Code") and anticipate a sale of assets under Section 363 of the Code. This Summary of Terms represents a non-binding statement of the present intentions of the parties, and it is subject to investigation, due diligence, negotiation of a definitive agreement, negotiation of lease assumptions with lessors, approval of the Bankruptcy Court, and other matters. The Buyer shall be bound only if the parties execute a definitive agreement relating to the matters addressed herein (the "Definitive Agreement") that has been approved by the Bankruptcy Court after notice and a hearing. The principal terms and conditions of the Transaction, which are anticipated to be embodied in the Definitive Agreement, are as follows:

1.    **Tractors.** The Debtors will sell or assign (as defined and qualified below) to the Buyer the approximately 1,108 tractors listed on attached Exhibit A (the "Tractors") on terms and conditions mutually determined by the Buyer and the applicable lessor. The Buyer also will assume the leases on approximately 370 tractors leased to the Debtors by the Buyer's affiliates. The Buyer will accept the Tractors, on an "AS IS" and "WHERE IS" basis; provided that the Buyer will accept as Tractors only those identified units that are located and meet certain physical or operating condition requirements specified in the Definitive Agreement as of the closing (the "Closing") of the Definitive Agreement. As used in this Summary of Terms, "sell or assign" shall mean that the Debtors will either (a) sell and transfer the property or rights in question to the Buyer under Section 363(f) of the Code, or (b) assume and assign to the Buyer, on such terms as may be acceptable to the Buyer in its sole discretion, the contracts or leases relating to the property in question under Section 365(f) of the Code, as the case may be. The Buyer believes it has negotiated the principal economic terms of a lease with the lessor of 827 of the Tractors.

2.    **Trailers.** The Debtors will sell or assign to the Buyer the approximately 1,969 trailers listed on attached Exhibit B (the "Trailers") on terms and conditions mutually determined by the Buyer and the applicable lessor. The Buyer will accept the Trailers, on an "AS IS" and "WHERE IS" basis; provided that the Buyer will accept as Trailers only those identified units that are located and meet certain physical or operating condition requirements specified in the Definitive Agreement as of Closing. The Buyer believes it has negotiated the principal economic terms of a lease with the lessor of approximately 779 of the Trailers.

3.    **Tractor and Trailer Licenses and Permits.** The Tractors and Trailers will be sold or assigned to the Buyer with all unexpired licenses and permits, and the Debtors will seek an order of the Bankruptcy Court approving the transfer of all unexpired licenses and permits to the Buyer and compelling the licensing/permitting jurisdiction to honor the transfer.

4.    **Tractor and Trailer Repurchase Agreements.** The Debtors will sell or assign to the Buyer all of the Debtors' rights in the Conditional Commitment to Repurchase Agreements, letters, and similar "buyback" and "trade-back" agreements or other arrangements between the Debtors and equipment manufacturers. The Debtors will seek an order of the Bankruptcy Court approving the transfer of such agreements to the Buyer and compelling the manufacturer(s) to honor the transfer.

5.    **Schedule I Values.** Schedule I hereto sets forth the value to the Debtors' estates under this Summary of Terms, including the approximate principal balance of on and off balance sheet obligations from which the Debtors would be relieved as estimated from information provided by the Debtors.

6.    **Purchase of Headquarters, Atlanta and Fontana Terminals, and Other Fixed Assets.** The Debtors will sell or cause to be sold to the Buyer: (a) the real property, improvements, buildings, and fixtures situated in West Valley City, Utah, owned by Terminal (collectively, the "Headquarters"); or, at the Buyer's election, DSTI will sell to the Buyer all of DSTI's outstanding LLC membership interests of Terminal; (b) the real property, improvements, buildings and fixtures situated at Conley, Georgia (the "Atlanta Terminal") and Fontana, California (the "Fontana Terminal"); (c) the approximately 70 model year 1998 FLD120 tractors and 195 model year 1996 trailers listed on attached Exhibit C; (d) all office equipment, office supplies, furniture, computer and telecommunications equipment, and other office assets; (e) all shop equipment, inventory of parts, tires, fuel, Qualcomm equipment, service vehicles and other shop, garage and service assets; and (f) all other tangible assets of the Debtors except as excluded below or pursuant to the Definitive Agreement. In exchange, the Buyer will: (w) assume the debt in the amount of approximately $13,000,000 owed by the Sellers to National Life Insurance and secured by the Headquarters (the "Assumed Headquarters Debt"); (x) assume the debt in the amount of approximately $3,000,000 owed by the Debtors to The Jerry and Vicky Moyes Family Trust and secured by the Atlanta Terminal; (y) assume the debt of approximately $4,630,000 owed by the Debtors to Interstate Equipment Leasing, Inc. and secured by the Fontana Terminal and the tractors and trailers listed on Exhibit C; and (z) pay to the Debtors approximately $2,185,000, based on a balance sheet dated January 31, 2002, subject to adjustment through Closing for changes in assets and as set forth in the Definitive Agreement, such payment to be made in cash, through assumption of the obligations of the Debtors under the DIP Credit Agreement or under any other obligations owed to the Buyer or any of its affiliates, or a combination thereof.

7.    **Intentionally Omitted.**

2

8.    **Purchase of Intangible and Business Record Property.**    The Buyer shall pay $2,000,000 in cash (or, to the extent any obligations remain outstanding from the Debtors to the Buyer or any of its affiliates, the Buyer may assume such obligations and the cash payment shall be reduced accordingly) for all intangible and business record property of the Debtors, which shall include but not be limited to all customer lists; operating authority; license plates; permits; goodwill; vendor rebates and warranties; customer contracts; equipment repurchase agreements; telephone numbers, fax numbers, domain names, and Websites; trademarks, trade names, copyrights, and other intellectual property; business records applicable to the ongoing business, including those relating to Tractors, Trailers, owner-operators, employees, and drivers, but excluding corporate minute books, income tax returns, and other records relating to the Debtors themselves and not useful in the ongoing business; and all claims the Sellers, the Debtors' estate, or any other party in interest may have against the Buyer or any person or entity affiliated with the Buyer, including but not limited to any claims for any alleged preference, fraudulent conveyance, or contribution or participation in the liability of any preference or fraudulent conveyance or for any claim or cause of action that could be brought under Bankruptcy Code Section 542, 543, 544, 547, 548, or 549.

9.    **Owner-Operator Withholdings.**    The Buyer will acquire all of the amounts withheld from owner-operator settlements to be paid directly to finance companies and other payees at the direction of the owner-operators (the "Withholdings"). In exchange, the Buyer will assume the obligation to remit such funds to the payees.

10.    **Excluded Assets.**    The following assets shall be excluded from the purchased or leased assets:    all cash and cash equivalents; accounts and notes receivable; deposits (other than the Withholdings); all of the Sellers' rights under the Definitive Agreement including the cash portion of the purchase price; all claims and causes of action of the Sellers except those specified in Section 8 above; equity securities of subsidiaries (except to the extent Terminal's LLC interests are transferred); all rights under the Sellers' insurance policies with respect to events occurring prior to the Closing; all Rejected Equipment (as defined in Section 17) and leases thereof; and any other asset excluded pursuant to the Definitive Agreement.

11.    **Assumed/Excluded Liabilities.**    Except for the Assumed Headquarters Debt, the assumed obligations relating to the Tractors and Trailers (as indicated in Sections 1 and 2 hereof), the debt assumed with respect to the Atlanta Terminal, the Fontana Terminal, and other assets acquired under Section 6 hereof, the obligation to remit funds under Section 9 hereof, and any other liability that the Buyer specifically assumes under the Definitive Agreement (the "Assumed Liabilities"), the Buyer will not assume, become responsible for as a result of the Transaction, or be deemed to have assumed or become responsible for as a result of the Transaction, any other debt, claim, obligation, or other liability of the Sellers or arising from the Transaction.

12.    **Prorations.**    Employee compensation, owner-operator settlements, rentals, security deposits, utility charges, real property taxes, personal property taxes, and similar assessments and accruals payable in respect of any of the purchased or leased assets and any liabilities other than the Assumed Liabilities, applicable to periods both prior to and after the Closing, shall be

3

prorated as of the Closing of the Definitive Agreement. The Buyer will assume no liabilities, late fees, penalties, or other amounts with respect to the Assumed Liabilities arising prior to the Closing of the Definitive Agreement.

13.    **Employees/Owner-Operators.**  The Buyer will be afforded access to and the right to offer employment to any employees and a contract to any owner-operators of the Debtors it desires. The Debtors shall be responsible for bringing current all accrued and unpaid vacation, sick leave, reimbursements, severance, stay bonuses, and other amounts due employees that are identified by the Buyer as employees anticipated to be hired by the Buyer at Closing as well as all settlements for owner-operators that are identified by the Buyer as contractors anticipated to be contracted with by the Buyer at Closing. The Debtors shall comply with and be responsible for any liability under the WARN Act and any state or local counterpart.

14.    **Conditions to Closing.**  The Definitive Agreement will include reasonable and customary conditions to closing in similar transactions, including but not limited to the accuracy of the respective parties' representations and warranties and performance of their respective covenants and agreements; the absence of a materially adverse change in the business and assets of the Sellers; and entry by the Bankruptcy Court of an order or orders in form and substance reasonably acceptable to the Buyer approving the Definitive Agreement, and authorizing and directing the Debtors to consummate the transactions contemplated thereby. Without limiting the generality of the foregoing, such order or orders shall find and provide, among other things, that (i) the assets sold to the Buyer shall be transferred free and clear of all liens, claims, and encumbrances of any kind or character pursuant to an order of the Bankruptcy Court; (ii) the Buyer has acted in good faith within the meaning of Section 363(m) of the Code and, as such, is entitled to the protections afforded thereby; (iii) the Definitive Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith, and from arm's length bargaining positions; (iv) the Buyer is not acquiring or assuming any of the Sellers' or any other person's liabilities except as expressly provided in the Definitive Agreement; (v) any and all Tractor leases and Trailer leases shall be assumed by the Debtors and assigned to the Buyer pursuant to Section 365 of the Code; (vi) the Bankruptcy Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to the Definitive Agreement, or the breach thereof; (vii) the Definitive Agreement and the transactions and instruments contemplated thereby shall be specifically performable and enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any chapter 7 or chapter 11 trustee; (viii) the Buyer is not a successor corporation to any of the Sellers and is not liable for any obligations or liabilities of the Sellers (including any administration expenses) except for those expressly assumed by the Buyer under the Definitive Agreement; and (ix) the transactions contemplated hereby are exempt from transfer taxes pursuant to Section 1146(c) of the Bankruptcy Code.

15.    **Terms of Definitive Agreement.**  The Definitive Agreement shall contain terms and conditions that are reasonable and customary in transactions of this nature. The representations and warranties of the respective parties shall not survive the Closing of the Definitive Agreement.

16.    **Intentionally Omitted.**

17.   **Transition Services.** Following the Closing of the Definitive Agreement, the Buyer will offer the services described below to the Debtors' estate and the creditors, any or all of which services may be accepted or not accepted:

(a)   The Buyer will assist lessors of tractors and trailers not included in the Tractors and Trailers sold or assigned to the Buyer under Sections 1 and 2 above ("Rejected Equipment") with identifying, locating, and recovering such Rejected Equipment. Any movement of the Rejected Equipment by the Buyer will be at a rate of $1.25 per mile (all miles) to a Debtors' terminal facility or other destination acceptable by both the Buyer and such lessor. The Buyer may transport freight in such equipment while it is being returned, and any revenue generated shall be for the account of the Buyer. The equipment movements would be coordinated by the Buyer so as not to disrupt the Buyer's equipment balance and position. The lienholders or lessors of the Rejected Equipment will be responsible for all insurance coverage and risk of loss to the Rejected Equipment.

(b)   The Buyer will offer the services of its employees to collect the pre-Closing accounts receivable of the Debtors on behalf of the estate and the creditors. The Buyer's fee for such service will be five percent (5%) of the collected amount plus one-half of any amount collected over 90% of the outstanding balance at Closing.

(c)   The Buyer will afford representatives of the Debtors' estates with access during normal business hours and the right to use without charge a reasonable amount of unused office space at the Headquarters building and, as available and not being used by the Buyer, office equipment, for ninety (90) days after the Closing.

(d)   The Buyer will afford the representatives of the Debtors' estates and any affected creditors or lessors ingress, egress, and parking rights at designated locations for up to 120 days after the Closing for the purpose of assembling, storing, and if necessary auctioning Rejected Equipment, all to be conducted in a manner that does not interfere with the Buyer's business operations. The fee for such rights will be a reasonable amount per day per piece of Rejected Equipment payable weekly and in any event prior to removal of such equipment from the premises. The owners of the Rejected Equipment will have sole responsibility for insurance and risk of loss.

(e)   The Buyer will permit the representatives of the Debtors' estates access to the Buyer's employees on a dedicated or as needed basis, to the extent that such access does not unreasonably interfere with the Buyer's operation of the business. The charge for such access will be an amount equal to twice the hourly pay rate of the subject employees.

18.   **Preparation of Definitive Agreement.** Upon execution of this Summary of Terms and entry of an order concerning the bid procedures referred to below, the Buyer will begin its due diligence and preparation of the Definitive Agreement.

19.    **Access.** Upon execution of this Summary of Terms and entry of an order concerning the bid procedures, the Sellers will provide the Buyer and its representatives with full and complete access to their assets, properties, employees, accountants, attorneys, business records and contracts, and all other information reasonable requested by the Buyer; provided that such access shall be at reasonable times and in a manner reasonably designed not to unduly disrupt the Sellers' business. In addition, at such time, the Sellers hereby authorize the Buyer to contact the Sellers' lenders, lessors, customers, vendors, creditors, attorneys, accountants, and other business partners as to matters relating to the business and operations of Sellers and the negotiation, execution, and Closing of the Definitive Agreement and the terms of any arrangements or continued business with such persons, and the Sellers authorize such persons to provide information to and cooperate with the Buyer in this process.

20.    **Alternative Transaction.** If the Debtors consummate an alternative transaction relating to the sale or other disposition of all or substantially all of their assets or a similar business combination transaction involving one or more third parties (an "Alternative Transaction"), the Debtors shall pay to the Buyer, as a condition to closing such Alternative Transaction, an amount in cash equal to $500,000 out of the closing proceeds. The bid procedures will provide for a minimum overbid of $850,000.

21.    **Expenses.** Each party shall be responsible for its own expenses; provided, that the Debtors shall be responsible for the Buyer's expenses of due diligence, bid analysis, negotiation, and preparation of this Summary of Terms and the Definitive Agreement, and other related matters in the event the Debtors fail to accept the Definitive Agreement on substantially the terms and conditions set forth herein, select any other bidder as the winning bid at auction, or otherwise agree to or consummate an Alternative Transaction. The amount payable under this section shall not exceed $250,000. All amounts payable hereunder shall be priority administrative claims under Section 503 of the Code.

22.    **Bid Procedures.** Within three business days of the date hereof, the Debtors shall prepare and file with the Bankruptcy Court, and seek prompt approval of, a motion seeking approval of the terms hereof and bid procedures consistent with Sections 20 and 21 hereof and otherwise reasonably acceptable to the Buyer.


** Remainder of Page Intentionally Left Blank **

Signature Page
To
Summary of Terms
Dated
March 8, 2002

Central Freight Lines, Inc.

By: _____
Jerry Moyes, Chairman

Schedule I
To
Summary of Terms
Value to Debtors

| Section of Summary of Terms | Nature of Payment | Approximate Dollar Value |
|---|---|---|
| 1 | Leased Tractor Assumption | $  52,000,000* |
| 2 | Leased Trailer Assumption | 61,000,000* |
| 6 | Terminals and Fixed Assets | 20,150,000+ |
| 6 | Exhibit C Tractors and Trailers | 2,665,000 |
| 8 | Intangibles/Business Records | 2,000,000 |
| | Total | $ 137,815,000 |

* Approximate principal balance of remaining lease payments on assumed fleet of approximately 1,108 tractors and 1,969 trailers estimated from information provided by the Debtors. The 370 IEL and DST tractors are not included but will be assumed by the Buyer.

+ Includes Headquarters, Atlanta Terminal, and Fontana Terminal; inventory of parts, tires, and fuel; service vehicles, shop and shop equipment; office equipment and furniture; Qualcomm equipment; 26 old owned tractors; and other miscellaneous assets.

Exhibit A
To
Summary of Terms
Dated
March 8, 2002

| Current Lessor | Quantity of Tractors |
|---|---|
| DaimlerChrysler (f/k/a MBCC) | 827 |
| Ameritech Credit | 45 |
| CIT Group | 87 |
| First Source | 5 |
| G.E. Capital (f/k/a Safeco) | 69 |
| G.E. Capital | 13 |
| Orix | 62 |
| TOTAL | 1,108 |

Exhibit B
To
Summary of Terms
Dated
March 8, 2002

| Current Lessor | Quantity of Trailers |
| --- | --- |
| DaimlerChrysler (f/k/a MBCC) | 779 |
| Associates | 147 |
| CIT Group | 130 |
| Fleet Capital | 611 |
| G.E. Capital | 2 |
| G.E. Capital | 58 |
| TCF | 63 |
| Trans Lease | 59 |
| US Bancorp | 120 |
| TOTAL | 1,969 |

Exhibit C
To
Summary of Terms
Dated
March 8, 2002


See attached list of 70, 1998 Freightliners Model FLD120 and 195, 1996 Utility Trailers.

70 Tractors
1998 Freightliners Model FLD120

EXHIBIT C
Page 1 of 7

| UNIT# | SERIAL# |
|---|---|
| 2493 | 1FUYDDYB7WP940048 |
| 2494 | 1FUYDDYB9WP940049 |
| 2495 | 1FUYDDYB5WP940050 |
| 2496 | 1FUYDDYB7WP940051 |
| 2497 | 1FUYDDYB9WP940052 |
| 2498 | 1FUYDDYB0WP940053 |
| 2499 | 1FUYDDYB2WP940054 |
| 2500 | 1FUYDDYB4WP940055 |
| 2501 | 1FUYDDYB6WP940056 |
| 2502 | 1FUYDDYB8WP940057 |
| 2503 | 1FUYDDYBXWP940058 |
| 2504 | 1FUYDDYB1WP940059 |
| 2505 | 1FUYDDYB8WP940060 |
| 2506 | 1FUYDDYBXWP940061 |
| 2507 | 1FUYDDYB1WP940062 |
| 2508 | 1FUYDDYB3WP940063 |
| 2509 | 1FUYDDYB5WP940064 |
| 2510 | 1FUYDDYB7WP940065 |
| 2511 | 1FUYDDYB9WP940066 |
| 2512 | 1FUYDDYB0WP940067 |
| 2513 | 1FUYDSEB5WP940777 |
| 2514 | 1FUYDSEBXWP940778 |
| 2515 | 1FUYDSEB1WP940779 |
| 2516 | 1FUYDSEB8WP940780 |
| 2517 | 1FUYDSEBXWP940781 |
| 2518 | 1FUYDSEB1WP940782 |
| 2519 | 1FUYDSEB3WP940783 |
| 2520 | 1FUYDSEB5WP940784 |
| 2521 | 1FUYDSEB7WP940785 |
| 2522 | 1FUYDSEB9WP940786 |
| 2523 | 1FUYDSEB0WP940787 |
| 2524 | 1FUYDSEB2WP940788 |
| 2525 | 1FUYDSEB4WP940789 |
| 2526 | 1FUYDSEB0WP940790 |
| 2527 | 1FUYDSEB2WP940791 |
| 2528 | 1FUYDSEB4WP940792 |
| 2529 | 1FUYDSEB6WP940793 |
| 2530 | 1FUYDSEB8WP940794 |
| 2531 | 1FUYDSEBXWP940795 |
| 2532 | 1FUYDSEB1WP940796 |

EXHIBIT C
Page 2 of 7



| Tractor | Make/Model | | Year | Miles | VIN |
|---|---|---|---|---|---|
| 2440 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | | |
| 2441 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 441757 | 1FUYDDYB4WP840024 |
| 2443 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 348076 | 1FUYDDYB6WP840025 |
| 2444 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 450722 | 1FUYDDYB8XWP840027 |
| 2446 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 273243 | 1FUYDDYB1WP840028 |
| 2451 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 401228 | 1FUYDDYB5XWP840030 |
| 2455 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 428305 | 1FUYDDYB9WP840035 |
| 2456 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 470940 | 1FUYDDYB6WP840039 |
| 2458 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 308798 | 1FUYDDYB2WP840040 |
| 2460 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 405887 | 1FUYDDYB8WP840042 |
| 2463 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 416573 | 1FUYDDYBXWP840044 |
| 2465 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 340336 | 1FUYDDYB5WP940047 |
| 2468 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 286653 | 1FUYDSEB3WP940749 |
| 2470 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 423105 | 1FUYDSEB3WP940752 |
| 2472 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 417095 | 1FUYDSEB7WP940754 |
| 2473 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 480695 | 1FUYDSEB0WP940756 |
| 2477 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 458771 | 1FUYDSEB2WP940757 |
| 2478 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 379493 | 1FUYDSEB4WP940761 |
| 2480 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 388848 | 1FUYDSEB6WP940762 |
| 2481 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 388277 | 1FUYDSEB8XWP940764 |
| 2482 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 396583 | 1FUYDSEB1WP940765 |
| 2483 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 450980 | 1FUYDSEB3WP940766 |
| 2485 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 296265 | 1FUYDSEB5WP940767 |
| 2486 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 134605 | 1FUYDSEB9WP940759 |
| 2487 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 325333 | 1FUYDSEB5WP940770 |
| 2488 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 421713 | 1FUYDSEB7WP940771 |
| 2489 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 424573 | 1FUYDSEB9WP940772 |
| 2490 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 352828 | 1FUYDSEB0WP940773 |
| 2491 | FRGHT FLD 120 | 70" FT/CONDO | 1999 | 393065 | 1FUYDSEB2WP940774 |
| 2492 | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 417728 | 1FUYDSEB4WP940775 |
| | FRGHT FLD 120 | 70" FT/CONDO | 1998 | 408022 | 1FUYDSEB6WP940776 |

TRLER #        195-1996 UTILITY TRLERS

EXHIBIT C
Page 3 of 7

| TRLER # | 195-1996 UTILITY TRLERS |
|---------|------------------------|
| 530273 | 1UYVS2537TU897654 |
| 530278 | 1UYVS2535TU897659 |
| 530286 | 1UYVS2535TU897667 |
| 530291 | 1UYVS2539TU897672 |
| 530307 | 1UYVS2532TU897688 |
| 530309 | 1UYVS2530TU897690 |
| 530310 | 1UYVS2532TU897691 |
| 530311 | 1UYVS2534TU897692 |
| 530314 | 1UYVS253XTU897695 |
| 530316 | 1UYVS2533TU897697 |
| 530317 | 1UYVS2535TU897698 |
| 530318 | 1UYVS2537TU897699 |
| 530321 | 1UYVS2533TU943402 |
| 530323 | 1UYVS2537TU943404 |
| 530325 | 1UYVS2530TU943406 |
| 530327 | 1UYVS2534TU943408 |
| 530330 | 1UYVS2534TU943411 |
| 530331 | 1UYVS2536TU943412 |
| 530335 | 1UYVS2533TU943416 |
| 530338 | 1UYVS2539TU943419 |
| 530340 | 1UYVS2537TU943421 |
| 530342 | 1UYVS2530TU943423 |
| 530343 | 1UYVS2532TU943424 |
| 530345 | 1UYVS2536TU943426 |
| 530347 | 1UYVS253XTU943428 |
| 530348 | 1UYVS2531TU943429 |
| 530350 | 1UYVS253XTU943431 |
| 530355 | 1UYVS2539TU943436 |
| 530356 | 1UYVS2530TU943437 |
| 530358 | 1UYVS2534TU943439 |
| 530359 | 1UYVS2530TU943440 |
| 530363 | 1UYVS2538TU943444 |
| 530364 | 1UYVS253XTU943445 |
| 530367 | 1UYVS2536TU943448 |
| 530369 | 1UYVS2533TU943450 |
| 530370 | 1UYVS2538TU937501 |
| 530371 | 1UYVS253XTU937502 |
| 530372 | 1UYVS2531TU937503 |
| 530373 | 1UYVS2533TU937504 |
| 530375 | 1UYVS2537TU937506 |
| 530377 | 1UYVS2530TU937508 |
| 530378 | 1UYVS2532TU937509 |
| 530379 | 1UYVS2539TU937510 |
| 530380 | 1UYVS2530TU937511 |
| 530381 | 1UYVS2532TU937512 |
| 530383 | 1UYVS2536TU937514 |



EXHIBIT C
Page 4 of 7



| | |
|---|---|
| 530385 | 1UYVS253XTU937516 |
| 530386 | 1UYVS2531TU937517 |
| 530389 | 1UYVS2531TU937520 |
| 530392 | 1UYVS2537TU937523 |
| 530393 | 1UYVS2539TU937524 |
| 530394 | 1UYVS2530TU937526 |
| 530402 | 1UYVS253XTU937533 |
| 530404 | 1UYVS2533TU937535 |
| 530406 | 1UYVS2537TU937537 |
| 530408 | 1UYVS2530TU937539 |
| 530410 | 1UYVS2539TU937541 |
| 530411 | 1UYVS2530TU937542 |
| 530412 | 1UYVS2532TU937543 |
| 530413 | 1UYVS2534TU937544 |
| 530414 | 1UYVS2536TU937545 |
| 530416 | 1UYVS253XTU937547 |
| 530417 | 1UYVS2531TU937548 |
| 530418 | 1UYVS2533TU937549 |
| 530419 | 1UYVS253XTU937550 |
| 530420 | 1UYVS2531TU937551 |
| 530422 | 1UYVS2535TU937553 |
| 530423 | 1UYVS2537TU937554 |
| 530424 | 1UYVS2539TU937555 |
| 530425 | 1UYVS2530TU937556 |
| 530427 | 1UYVS2534TU937558 |
| 530428 | 1UYVS2536TU937559 |
| 530429 | 1UYVS2532TU937560 |
| 530430 | 1UYVS2534TU937561 |
| 530431 | 1UYVS2536TU937562 |
| 530432 | 1UYVS2538TU937563 |
| 530434 | 1UYVS2531TU937565 |
| 530435 | 1UYVS2533TU937566 |
| 530436 | 1UYVS2535TU937567 |
| 530437 | 1UYVS2537TU937568 |
| 530438 | 1UYVS2539TU937569 |
| 530439 | 1UYVS2535TU937570 |
| 530440 | 1UYVS2537TU937571 |
| 530441 | 1UYVS2539TU937572 |
| 530443 | 1UYVS2532TU937574 |
| 530444 | 1UYVS2534TU937575 |
| 530445 | 1UYVS2536TU937576 |
| 530447 | 1UYVS253XTU937578 |
| 530448 | 1UYVS2531TU937579 |
| 530451 | 1UYVS2531TU937582 |
| 530452 | 1UYVS2533TU937583 |
| 530454 | 1UYVS2537TU937585 |
| 530455 | 1UYVS2539TU937586 |
| 530456 | 1UYVS2530TU937587 |
| 530457 | 1UYVS2532TU937588 |

EXHIBIT C
Page 5 of 7

| | |
|---|---|
| 530458 | 1UYVS2534TU937589 |
| 530459 | 1UYVS2530TU937590 |
| 530460 | 1UYVS2532TU937591 |
| 530461 | 1UYVS2534TU937592 |
| 530462 | 1UYVS2538TU937593 |
| 530463 | 1UYVS2538TU937594 |
| 530464 | 1UYVS253XTU937595 |
| 530465 | 1UYVS2531TU937596 |
| 530467 | 1UYVS2535TU937598 |
| 530468 | 1UYVS2537TU937599 |
| 530469 | 1UYVS2538TU937600 |
| 530470 | 1UYVS2537TU974801 |
| 530473 | 1UYVS2532TU974804 |
| 530474 | 1UYVS2534TU974805 |
| 530475 | 1UYVS2536TU974806 |
| 530476 | 1UYVS2538TU974807 |
| 530478 | 1UYVS2531TU974809 |
| 530479 | 1UYVS2538TU974810 |
| 530480 | 1UYVS253XTU974811 |
| 530483 | 1UYVS2535TU974814 |
| 530484 | 1UYVS2537TU974815 |
| 530485 | 1UYVS2539TU974816 |
| 530486 | 1UYVS2530TU974817 |
| 530487 | 1UYVS2532TU974818 |
| 530488 | 1UYVS2534TU974819 |
| 530489 | 1UYVS2530TU974820 |
| 530490 | 1UYVS2532TU974821 |
| 530491 | 1UYVS2534TU974822 |
| 530492 | 1UYVS2536TU974823 |
| 530493 | 1UYVS2538TU974824 |
| 530494 | 1UYVS253XTU974825 |
| 530495 | 1UYVS2531TU974826 |
| 530496 | 1UYVS2533TU974827 |
| 530497 | 1UYVS2535TU974828 |
| 530498 | 1UYVS2537TU974829 |
| 530500 | 1UYVS2535TU974831 |
| 530501 | 1UYVS2537TU974832 |
| 53502 | 1UYVS2539TU974833 |
| 530503 | 1UYVS2530TU974834 |
| 530504 | 1UYVS2532TU974835 |
| 530505 | 1UYVS2534TU974836 |
| 530506 | 1UYVS2536TU974837 |
| 530507 | 1UYVS2538TU974838 |
| 530508 | 1UYVS253XTU974839 |
| 530509 | 1UYVS2536TU974840 |
| 530510 | 1UYVS2538TU974841 |
| 530511 | 1UYVS253XTU974842 |
| 530512 | 1UYVS2531TU974843 |
| 530513 | 1UYVS2533TU974844 |

EXHIBIT C
Page 6 of 7

| | |
|---|---|
| 530514 | 1UYVS2535TU974845 |
| 530515 | 1UYVS2537TU974846 |
| 530516 | 1UYVS2539TU974847 |
| 530517 | 1UYVS2530TU974848 |
| 530518 | 1UYVS2532TU974849 |
| 530519 | 1UYVS2539TU974850 |
| 530520 | 1UYVS2534TU897501 |
| 530521 | 1UYVS2536TU897502 |
| 530522 | 1UYVS2538TU897503 |
| 530523 | 1UYVS253XTU897504 |
| 530525 | 1UYVS2533TU897505 |
| 530526 | 1UYVS2535TU897507 |
| 530527 | 1UYVS2537TU897508 |
| 530528 | 1UYVS2536TU897509 |
| 530529 | 1UYVS2535TU897510 |
| 530530 | 1UYVS2537TU897511 |
| 530531 | 1UYVS2539TU897512 |
| 530533 | 1UYVS2532TU897514 |
| 530534 | 1UYVS2534TU897515 |
| 530535 | 1UYVS2536TU897516 |
| 530536 | 1UYVS2538TU897517 |
| 530537 | 1UYVS253XTU897518 |
| 530538 | 1UYVS2531TU897519 |
| 530539 | 1UYVS2538TU897520 |
| 530540 | 1UYVS253XTU897521 |
| 530541 | 1UYVS2531TU897522 |
| 530542 | 1UYVS2533TU897523 |
| 530543 | 1UYVS2535TU897524 |
| 530545 | 1UYVS2539TU897526 |
| 530547 | 1UYVS2532TU897528 |
| 530548 | 1UYVS2534TU897529 |
| 530549 | 1UYVS2530TU897530 |
| 530550 | 1UYVS2532TU897531 |
| 530551 | 1UYVS2534TU897532 |
| 530552 | 1UYVS2536TU897533 |
| 530553 | 1UYVS2538TU897534 |
| 530554 | 1UYVS253XTU897535 |
| 530555 | 1UYVS2531TU897536 |
| 530556 | 1UYVS2533TU897537 |
| 530557 | 1UYVS2535TU897538 |
| 530558 | 1UYVS2537TU897539 |
| 530559 | 1UYVS253TU897540 |
| 530560 | 1UYVS2535TU897541 |
| 530561 | 1UYVS2537TU897542 |
| 530562 | 1UYVS2539TU897543 |
| 530563 | 1UYVS2530TU897544 |
| 530565 | 1UYVS2534TU897546 |
| 530566 | 1UYVS2536TU897547 |
| 530567 | 1UYVS2538TU897548 |

530568    1UYVS253XTU897549
530569    1UYVS2536TU897550

EXHIBIT C
Page 7 of 7

*Prepared and submitted by:*

Weston L. Harris (A1387)
**PARSONS DAVIES KINGHORN & PETERS**
185 South State Street, Suite 700
Salt Lake City, UT 84111
(801) 363-4300
(801) 363-4378– Fax

Counsel for Debtors

Scott J. Goldstein  (MO #28698)
Daniel D. Doyle    (MO # 36724)
**Spencer Fane Britt & Browne LLP**
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216– Fax

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Case Nos. 02-22906** |
| | ) | **02-22907** |
| **SIMON TRANSPORTATION SERVICES INC.,** | ) | |
| **and DICK SIMON TRUCKING, INC.,** | ) | **Chapter 11 proceedings** |
| | ) | **Jointly administered** |
| **Debtors.** | ) | |

### ORDER APPROVING SALE OF SUBSTANTIALLY
### ALL OF THE DEBTORS' ASSETS AND APPROVING
### <u>ASSUMPTION AND ASSIGNMENT OF LEASES</u>

This matter, having come before the Court upon Debtors' Motion for Approval of Substantially All of the Debtors' Assets and for Approval of Assumption and Assignment of Leases and Executory Contracts, the Court having considered the Motion, statements of counsel, and the record in this case, after notice and hearing adequate under the circumstances, and for good cause shown, IT IS HEREBY ORDERED that:

A.   Based on this Court's findings (1) that there are compelling facts supporting the proposed sale a demonstrate financial emergency, (2) that the Debtors have, through its broker and financial adviser have adequately solicited other purchasers, and (3) that the sale is in the best interests of the estate when all relevant factors are taken into account, the Debtors' Motion is granted in its entirety;

B.   The Debtors are authorized to sell all or substantially all of their assets (the "Assets") to Central Freight Lines, Inc., pursuant to the terms of the Central "Acquisition of Assets of Simon Transportation Services Inc. and Subsidiaries - Summary of Terms" dated March 8, 2002 (the "Term Sheet"), or pursuant to a subsequently approved an asset purchase agreement incorporating the Term Sheet; and subject to higher and better bids for purchase of the Assets;

C.   All liens, claims, and other encumbrances in the purchased Assets shall attach to the



proceeds of the sale in their respective priorities;

D.   The Debtors are authorized to assume or reject any and all executory contracts or unexpired leases sought to be transferred to the Buyer through the approved sale (i) after approval of the Sale; (ii) upon 10 days' notice to the counterparty of each such agreement, with an opportunity for prompt hearing upon written objection; (iii) if the Buyer agrees to provide for the total cure of any default amount as may be negotiated; and (iv) if the Debtors and their estates are released from any liability for any further cure of defaults;

E.   The Buyer is a bona fide purchaser in good faith entitled to the protections of 11 U.S.C. § 363(m); and

F.   The 10-day stay of the effectiveness of the sale order as permitted by Bankruptcy Rule 6004(g) is hereby lifted, so that this Order effective upon its entry.

Dated: April ___ , 2002

SO ORDERED:

_____
Honorable Glen E. Clark
United States Bankruptcy Judge