

Robert S. Prince (A2652)
KIRTON & McCONKIE
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone: (801) 328-3600

David E. Runck (MN #289954)
OPPENHEIMER WOLFF & DONNELLY LLP
3300 Plaza VII Building
45 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 607-7421

Attorneys for Thermo King SVC, Inc.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |
|---|---|
| In re: | Bankruptcy No. 02-22906 |
| SIMON TRANSPORTATION SERVICES, INC., | (Chapter 11) |
| Debtor. | |
| In re: | Bankruptcy No. No. 02-22907 |
| DICK SIMON TRUCKING, INC., | (Chapter 11) |
| Debtor. | |

## OBJECTION OF THERMO KING SVC, INC. TO ASSUMPTION
## AND ASSIGNMENT OF EXECUTORY CONTRACT
## WITHOUT PAYMENT OF CURE AMOUNT



0222906D328

Thermo King SVC, Inc. ("Thermo King"), a party to a certain Maintenance Agreement with Debtor Dick Simon Trucking, Inc. ("Simon Trucking") in these jointly administered Chapter 11 cases, hereby objects to the Debtors' proposed assumption and assignment of Thermo King's executory contract in connection with the Debtors' sale of substantially all their assets. In support of its Objection, Thermo King states and alleges as follows:

## JURISDICTION AND VENUE

1.    On February 25, 2002 (the "Petition Date"), Debtors Simon Trucking and Simon Transportation Services, Inc. ("Simon Transportation") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court. These cases have been procedurally, but not substantively, consolidated for purposes of administration. Simon Trucking and Simon Transportation now operate their business as a debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

2.    This objection arises under 11 U.S.C. §§ 365(b)(1) and Federal Rule of Bankruptcy Procedure 6006. This Court has jurisdiction over this objection pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core objection and is proper under 28 U.S.C. §§ 1408 and 1409.

## THERMO KING'S MAINTENANCE AGREEMENT
## WITH SIMON TRUCKING

3.    Debtors Simon Trucking and Simon Transportation are truckload carriers that specialize in providing temperature-controlled transportation services to major shippers in the U.S. food industry.

2

4.     On or about April 10, 2001, Debtor Simon Trucking entered into a Guaranteed Maintenance Agreement ("Maintenance Agreement") with Thermo King, under which Thermo King agreed to provide Simon Trucking with various fleet maintenance and repair services for its transport refrigeration units. Under the terms of the Maintenance Agreement, Simon Trucking agreed to pay for Thermo King's services on a monthly basis, in advance, based on estimated charges for the previous month. A true and correct copy of the Maintenance Agreement is attached hereto as **Exhibit "A"**.

5.     As of the Petition Date, Simon Trucking owed Thermo King a net amount of approximately $40,773.00 for pre-petition services provided by Thermo King and taxes under the terms of the Maintenance Agreement. In addition, at this time, a post-petition amount of $60,000.00 is currently due and owing for post-petition services provided under the Maintenance Agreement. As of this date, these amounts remain unpaid. (The net pre-petition default amount of approximately $40,773.00, together with the post-petition default amount of $60,000.00 are hereinafter collectively referred to as the "Cure Amounts.")

## DEBTORS' MOTION TO SELL
## SUBSTANTIALLY ALL OF THEIR ASSETS

6.     On March 11, 2002, Simon Trucking and Simon Transportation filed a joint Motion for Approval of Sale of Substantially All of the Debtors' Assets and to Approve Assumption and Assignment of Leases and Executory Contracts ("Sale Motion"). Under the terms of the Sale Motion, Debtors propose to sell substantially all of their assets to Central

3

Freight Lines, Inc. ("Central Freight Lines"), or to the highest bidder at auction.  Paragraph 23 of

the Sale Motion requested the Court to permit the Debtors to:

> assume or reject any and all executory contracts or unexpired
> leases sought to be transferred to the Buyer in the sale (a) after
> closing of the Sale; (b) upon 10 days' notice to the counterparty of
> each such agreement, with an opportunity for prompt hearing upon
> written objection; (c) if the Buyer agrees to provide for the cure of
> any default amount as may be negotiated; and (d) if the Debtors
> and their estates are released from any liability for any further cure
> of defaults or other amounts due.

See Sale Motion, at ¶ 23.

   7.   On March 25, 2002, Central Freight Lines filed an unsigned Asset Purchase

Agreement to be approved by the Court in the event Central Freight Lines is the successful

bidder at auction ("Purchase Agreement").  Paragraph 2.1(g) of the Purchase Agreement

provided that all of the Debtors' contracts and agreements listed on Schedule 2.1(g) of the

Purchase Agreement would be assumed and assigned to Central Freight Lines.  As of March 25,

2002, however, Schedule 2.1(g) did not list any executory contracts or agreements to be assumed

and assigned.

   8.   On April 4, 2002, Central Freight Lines filed an amended version of

Schedule 2.1(g) with the Court, stating that it wishes to assume all of the Debtors' rights under

Thermo King's Maintenance Agreement as part of the asset sale.  Schedule 2.1(g) further

provides, however, that "in such assumption Buyer shall not be responsible for any Cure

Amounts and shall only assume obligations under such contracts and agreements arising after

Closing." A hearing to approve the sale of the Debtors' assets has been scheduled for Monday,

April 8, 2002, at 1:30 p.m.

9.      Under Section 365(b)(1) of the Bankruptcy Code, if a pre-petition default exist

under an executory contract, the contract may not be assumed or assigned unless, at the time of

assumption "the trustee . . . cures, or provides adequate assurance that the trustee will promptly

cure, such default." 11 U.S.C. § 365(b)(1).  See also In re By-Rite Distributing, Inc., 55 B.R.

740, 745 (D. Utah 1985) (stating that trustee may not assume lease or contract under section 365

unless, at the time of assumption, the trustee cures all defaults); In re Sweetwater, 40 B.R. 733,

743 (Bankr. Utah 1984) (same).  Thermo King asserts that it is entitled to have all defaults under

the Maintenance Agreement, both pre- and post-petition, cured before the trustee or debtor-in-

possession is entitled to assume the Maintenance Agreement and assign such agreement to

Central Freight Lines or any other third party.

10.      In this case, neither the Debtors' Sale Motion nor the Asset Purchase Agreement

filed by Central Freight Lines provide for the payment to Thermo King of its pre-petition

Cure Amount.  Accordingly, Thermo King hereby objects to the proposed assumption and

assignment of the Maintenance Agreement as set forth in the Asset Purchase Agreement.

**WHEREFORE,** based on the foregoing, Thermo King hereby objects to the assumption and assignment of its executory contract as provided by the terms of Schedule 2.1(g) of the Asset Purchase Agreement.

DATED this 5th day of April, 2002.

Respectfully submitted,

KIRTON & McCONKIE

_____
Robert S. Prince
Attorneys for Thermo King SVC, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, 2002, true and correct copies of the

foregoing Objection of Thermo King Svc, Inc. to Assumption and Assignment of Executory

Contract Without Payment of Cure Amount were served upon the following by the methods of

service specified under the name of each addressee below:

Weston L. Harris
PARSONS DAVIES KINGHORN &
PETERS
Attorneys for Debtors
185 South State Street, Suite 700
Salt Lake City, UT 84111
Facsimile: 363-4378

Peter W. Billings
Gary E. Jubber
FABIAN & CLENDENIN
Attorneys for Unsecured Creditors
Committee
215 S. State Street, 12th Floor
Salt Lake City, UT 84111
Facsimile: 596-2814

Vernon L. Hopkinson
COHNE, RAPAPORT & SEGAL
Attorneys for Creditor CitiCapital Leasing,
Inc.
525 East 100 South, Suite 500
P.O. Box 11008
Salt Lake City, UT 84147-0008
Facsimile: 355-1813

Paul W. Werner
Danny C. Kelly
STOEL RIVES LLP
Attorneys for The Jerry and Vickie Moyes
Family Trust, Interstate Equipment Leasing,
Inc., DST Leasing LLC, Central Freight
Lines, Inc. and Central Refrigerated Service,
Inc.
One Utah Center
201 South Main Street, Suite 1100
Salt Lake City, UT 84111
Facsimile: 578-6999

U. S. Trustee's Office
Attn: Laurie A. Crandall, Assistant U.S.
Trustee
9 Exchange Place, #100
Salt Lake City, UT 84111-2780
Facsimile: 524-5628

Daniel D. Doyle
Scott J. Goldstein
Mark A. Thornhill
SPENCER FANE BRITT & BROWNE
LLP
Attorneys for Debtors
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Facsimile: (816) 474-3216

7

Gregory J. Adams
McKAY BURTON & THURMAN
Attorneys for Creditors Chris Farris, James
Farris and Kelly Vasquez
Suite 600, Gateway Tower East
10 East South Temple, Suite 600
Salt Lake City, UT 84133
Facsimile: 521-4252

J. Randall Call
Sally B. McMinimee
PRINCE YEATES & GELDZAHLER
Attorneys for Creditors TBCC Funding
Trust I, Transportation Equipment Financial
Services Corp. and Transamerica
Equipment Financial Services Corp.
175 East 400 South, Suite 900
Salt Lake City, UT 84111
Facsimile: 524-1098

L. R. Curtis
Attorneys for Creditor SBC Capital Services
Manning, Curtis, Bradshaw & Bednar
10 Exchange Place, #300
Salt Lake City, UT 84111
Facsimile: 364-5678

L. Mark Ferre
Attorneys for Creditor Daimler Chrysler
Services North America LLC
1366 Murray Holladay Road
Salt Lake City, UT 84117
Facsimile: 277-9942

Kim Gage
Attorneys for Creditor Daimler Chrylser
Services North America LLC
535 Anton Boulevard, Tenth Floor
Costa Mesa, CA 92626-1977
Facsimile: (714) 431-1119

Mark R. Gaylord
BALLARD SPAHR ANDREWS &
INGERSOLL
Attorneys for Creditor Fleet Capital Leasing
One Utah Center
201 South Main Street, Suite 600
Salt Lake City, UT 84101-2221
Facsimile: 531-3001

R. L. Knuth
JONES WALDO HOLBROOK &
MCDONOUGH
Attorneys for Creditor Oriz USA
Corporation
1500 Wells Fargo Plaza
170 South Main Street
Salt Lake City, UT 84101
Facsimile: 328-0537

David E. Leta
SNELL & WILMER
Attorneys for Creditor U.S. Bancorp Leasing
and Financing
15 West South Temple, Suite 1200
Salt Lake City, UT 84101
Facsimile: 257-1800

Joel T. Marker
McKAY BURTON & THURMAN
Attorneys for Creditor Banc of America
Leasing & Capital, LLC
Suite 600 Gateway Tower East
10 East South Temple
Salt Lake City, UT 84133
Facsimile: 521-4252

David E. Runck
Attorneys for Creditor Thermo King SVC,
Inc.
3300 Plaza VII, 45 South Seventh Street
Minneapolis, MN  55402
Facsimile: (612) 607-7100

Chris L. Schmutz
SCHMUTZ MOHLMAN & ROHBOCK
Attorneys for Creditor MBC Leasing
533 West 2600 South, Suite 200
Bountiful, UT  84010
Facsimile: 298-4804

Gerald H. Suniville
Attorneys for Creditors Key Equipment
Finance and KeyBank National Association
50 South Main, Suite 1600
P.O. Box 45340
Salt Lake City, UT  84145
Facsimile: 534-0058

James E. Till
PERKINS COIE LLP
Attorneys for Creditor PacifiCorp/Utah
Power
1211 SW Fifth Avenue, Suite 1500
Portland, OR  97204
Facsimile: (503) 727-2222

Randall D. Benson
Callister Nebeker & McCullough
Gateway Tower East, Suite 900
10 East South Temple
Salt Lake City, UT 84133
Facsimile: 364-9127

Gary E. Doctorman
Parsons Behle & Latimer
201 South Main Street, Suite 1800
P.O. Box 11898
Salt Lake City, UT 84147-0898
Facsimile: 536-6111

Douglas M. Monson
Elaine A. Monson
Ray, Quinney & Nebeker
36 South State Street, Suite 1600
Salt Lake City, UT 84145-0385
Facsimile: 532-7543

Andrew J. Petrie
Petrie, Bauer, Vriesman & Edgington LLP
1775 Sherman St., Suite 2500
Denver, CO 80203
Facsimile: (303) 226-7777

George W. Pratt
Jones Waldo Holbrook & McDonough
1500 Wells Fargo Plaza
170 South Main
Salt Lake City, UT 84145-0444
Facsimile: 328-0537

Michael G. Smith
Gibson, Oshsner & Adkins, L.L.P.
701 South Taylor, Suite 500
Amarillo, TX 79101-2400
Facsimile: (806) 378-9797

J. Michael Bennett
U.S. Bancorp Leasing & Financial
7659 S.W. Mohawk Street
Tualatin, OR 97062
Facsimile: (503) 234-4210

Gary W. Collins
Collins, Fairfield, Fowler, Harlan & Breen
10920 Ambassador Drive, Suite 500
Kansas City, MO 64153
Facsimile: (816) 880-9393

Anna W. Drake
215 South State, Suite 500
Salt Lake City, UT 84111
Facsime: 364-3756

James L. Jorissen
OPPENHEIMER WOLFF & DONNELLY
LLP
3300 Plaza VII Building
45 South Seventh Street
Minneapolis, MN 55402
Facsimile: (612) 607-7100

And via U.S. Mail, postage prepaid to the following:

Christopher D. Jaime
Attorneys for Creditor Sierra Freightliner
P.O. Box 3000
Reno, NV 89520

Dawn Kinney
Attorneys for Creditor Banc of America
Leasing & Capital, LLC
BANK OF AMERICA LEASING &
CAPITAL LLC
555 California Street, 4th Floor
San Francisco, CA 94104

Thomas J. Lallier
Attorneys for Creditors CitiCapital Business
Credit and Jerry Moyes
1600 TCF Tower
121 South Eighth Street
Minneapolis, MN 55402

Mark G. Ledwin
Attorneys for Creditor Genesis Insurance
Company
3 Gannett Drive
White Plains, NY 10604

Michael D. Nord
GEBHARD & SMITH
Attorneys for Creditor MBC Leasing
401 East Pratt Street
Baltimore, MD 21202

*Sally Qualter*

615704.1

# GUARANTEED MAINTENANCE AGREEMENT

THIS GUARANTEED MAINTENANCE AGREEMENT is made this 10th day of April, 2001 by and between Thermo King SVC, Inc., a Delaware corporation having its principal place of business at 314 W. 90th Street, Minneapolis, MN 55420 (hereinafter referred to as "TK SVC"), and Dick Simon Trucking, Inc., a company having its principal place of business at 5175 West 2100 South, West Valley City, UT 84120-1252 (hereinafter referred to as "Customer").

## RECITALS

WHEREAS Customer owns and/or leases, or provides vehicle maintenance and repair to, vehicles designed for the carriage of temperature controlled cargo and wishes to participate in TK SVC's guaranteed maintenance program (hereinafter referred to as "GMP").

WHEREAS Customer wishes to participate in the GMP for purposes of acquiring guaranteed maintenance of transport refrigeration units ("Units") which it has primarily acquired from independent sales and service dealers of Thermo King Corporation, a Delaware corporation ("Thermo King").

WHEREAS, TK SVC wishes to provide its GMP to Customer.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto hereby agree as follows:

1.  **Guaranteed Maintenance Program**

    1.1 **Equipment Covered**
    TK SVC agrees to provide to Customer the fleet maintenance and repair services defined by this Agreement for the Units in Customer's fleet as of the date of this Agreement which are identified by model and type, serial number, year of manufacture, date in service, load/use characteristics, and current hour meter reading [provided by Customer and agreed to by both parties] in Exhibit A attached hereto and made a part hereof. Pricing is determined on the basis of the specific Unit models in Customer's fleet and on the basis of whether the Units are new or used, more specifically as set forth in Section 2.

    1.2 **Service Identification**
    All services encompassed by the GMP will normally be performed on a subcontracted basis by a network of Thermo King dealers which elect to subcontract with TK SVC for purposes of providing TK SVC's GMP to Customer ("Subcontract Dealers"). Unauthorized service will not be covered by the GMP.

    1.3 **Services Provided**
    Subject to the exclusions described in Section 4 of this Agreement, the services provided pursuant to this Agreement shall include all required scheduled maintenance and unscheduled repairs for Units as set forth in Exhibit B.

    1.3.1 **Pre-trip Inspections**
    Customer and/or the operators of the vehicles assume responsibility for cursory inspection and routine services normally performed daily or before loading the vehicle and all other owner/operator obligations as outlined in Thermo King's operator's manual(s), copies of which have been provided to Customer and which may be amended by Thermo King from time to time at its discretion. This includes, but is not limited to, checking for proper engine oil and coolant levels, draining water from fuel tanks, periodically cleaning the Unit using water only (no solvents), painting and other cosmetic maintenance as required. Pre-trip inspections will be at an additional charge if desired by Customer. Customer will be responsible for reporting pre-trip and en-route problems to TK SVC or its designee. Any repair expense required as a direct or indirect result of neglecting to perform such inspections and routine services will be excluded from coverage under the terms of the GMP.

    1.3.2 **Interim Inspections**
    Units covered under the GMP will be scheduled for an interim inspection by a Subcontract Dealer as set forth on Exhibit B.

*K.S.*

### 1.3.3 Scheduled Maintenance

Units covered under the GMP will be required to have scheduled maintenance services. The scheduled maintenance will include the items set forth on Exhibit B.

## 1.3.4 Scheduling

Interim inspections and scheduled maintenance will take place at a date and time to be agreed upon by and between Customer and the TK SVC Fleet Manager. Customer shall make the equipment available for interim inspections and scheduled maintenance at customer's depot unless otherwise agreed by Customer, TK SVC and the Subcontract Dealer. Any alternative location must have facilities that are in accordance with all applicable laws and regulations relating to health, safety and the environment. Customer will provide the support of their internal unit tracking system to TK SVC to help locate and schedule units for service. Customer will provide unit service history to TK SVC, from this database.

### 1.3.5 Unscheduled Repairs

Unscheduled repairs will include those items which are subject to normal wear, but are not replaced on a regularly scheduled basis; those items which have an unpredictable life cycle and repairs which require spontaneous attention (i.e., accidents and breakdowns). Customer will contact TK SVC's office or any other office designated by TK SVC, to arrange for unscheduled repairs to be performed. Any repairs that are excluded from the coverage of the GMP must be approved by Customer and will not be performed by any Subcontract Dealer unless Customer issues a purchase order number covering such repairs. All repairs to Units shall be performed only by a Subcontract Dealer or an authorized service provider. Any unauthorized repairs will not be covered by this Agreement.

### 1.3.6 Non Thermo King Providers

Payment for repairs performed by a non-subcontracted provider which were authorized by TK SVC under this GMP shall be made directly to the provider by Customer. A copy of the non-subcontract provider's invoice to Customer shall be presented by Customer to TK SVC to secure a credit by TK SVC against the preceding month's Customer invoice.

### 1.3.7 Manufacturers Warranty

Repairs covered under an implied or written warranty are not covered under the GMP. Any expenses incurred by TK SVC for warrantable items will be invoiced to the customer if not collected in 90 days. All warranties are between customer and manufacturer or its agent. It is the customer's responsibility to see that the manufacturer or its agent honor the agreement. The agreement includes but is not limited to manufacturer or its agent's warranty, commercial policy, or campaigns.

## 1.4 Service and Repair Parts

All parts used in performing any services or repairs under the GMP will be genuine Thermo King service parts or Thermo King re-manufactured parts or TK SVC approved parts. TK SVC reserves the right to repair, replace or change parts, components or cores as it deems appropriate. Replaced or changed parts, components or cores will become the property of TK SVC, and Subcontract Dealers shall be responsible for the disposal of all parts, hazardous materials, components or cores which are covered by this Agreement in accordance with the instruction of TK SVC and all applicable laws and regulations.

*K.S.*

2. **Contract Pricing**

   2.1 *Pricing*

   The price per running hour for any given Unit is as set forth in Exhibit C.   If the actual annual hours of operation of a unit exceed the projected annual hours of operation as outlined in Schedule A by 20% or more, the hourly rate for the next twelve month period shall be increased in accordance with the following to reflect such greater usage:  a 20%-25% greater usage, a 5% increase in the hourly rate; a 26%-30% greater usage - an 8% increase in the hourly rate; 30% or more greater usage - a 10% increase in the hourly rate.  The actual hours of operation of a unit shall be reviewed on an annual basis to determine whether the hourly rate for the unit shall remain the same, be increased to a higher level or reduced to a prior level for each subsequent twelve-month period of coverage under this Agreement. If the actual annual hours of operation of a unit exceed the projected annual hours of operation as outlined in Schedule A by 20% or more for the final twelve month period of coverage under this Agreement, Customer shall pay TK SVC an amount equal to the actual hours of operation of such unit for such final twelve month period multiplied by the applicable increase in the amount of the hourly rate for such unit as set forth above within thirty (30) days after the end of coverage for such unit. In the event the location of Customer's depot or an individual Unit is permanently moved to a location having a different business expense structure, or the covered Unit experiences a material change in load/operating conditions, TK SVC and Customer shall renegotiate the price per running hour rate established hereunder based on the following formula:  The change in the price per running hour will be calculated by multiplying the difference between the previous and the new shop labor rate by 60% to reflect the service expense effect on the overall rate.  This new rate may also be adjusted for any labor or travel rate premium caused by new available servicing time periods. Customer shall have the obligation to notify TK SVC as soon as possible of any such changes.

      2.1.1 Units that are already in service as of the date of this Agreement may also be included under this Agreement. The Subcontract Dealer will evaluate each Customer unit and will provide an estimate outlining the work necessary to bring the Units up to Thermo King national repair standards, replacing any parts or components which show excessive wear or evidence of near term failure.  Customer will be responsible for these costs and invoices for this work will be processed through the SVC Centralized Billing program. Customer will have the option to decide if it wants Subcontract Dealer to perform the necessary services to meet the minimum GMA standards so the Unit can be included in the GMP.  TK SVC will have 90-120 days to complete the Takeover Inspections and 180 days to resolve any discrepancies.

   2.2 *Overtime*

   Overtime may be charged if the equipment is not available at the scheduled time and the Subcontract Dealer is required to complete the work in overtime (outside of the Subcontract Dealer's published business hours or outside of the agreed upon service maintenance time).  Customer reserves the right to authorize overtime work and Customer will not be required to pay for overtime unless such overtime has been authorized by Customer or operator purchase order.

   No overtime shall be charged to Customer in the case of unscheduled repairs and breakdowns requiring emergency service on a loaded vehicle with perishable cargo in jeopardy or spoilage, or if a delay in starting a scheduled maintenance is caused by a Subcontract Dealer, and overtime is required to complete the scheduled maintenance on a timely basis.

   The Subcontract Dealer will advise Customer by phone as soon as any delay becomes known and of any change in the scheduled service as a result of the delay.

   2.3 *Storage Charges*

   Except for inspections, scheduled maintenance, or unscheduled repairs requiring that Customer's Unit remain on a Subcontract Dealer's premises for a duration longer than three (3) days, Customer will be invoiced a storage charge at the storage rate set forth on Exhibit C for any duration of storage beyond the greater of (i) three (3) days; or (ii) the number of days required by Subcontract Dealer to complete the subject inspection, scheduled maintenance or unscheduled repairs.

   2.4 *Travel Time*

   Travel time and distance may be charged in the event Customer requires scheduled service at a place other than as described in Section 1.3.4.  Travel time up to 20 miles and in the case of city operation, up to one (1) hour will not be charged to Customer.  Charges will be levied for travel required in excess of such time or distance.  Travel invoices will be issued only when authorized by Customer or operator purchase order

*K.S.*

## 2.5 Invoicing and Payment Terms

Customer will pay to TK SVC the first monthly payment due based on the agreed upon annual hourly rate multiplied by the projected annual average hourly use of the Units upon execution of this Agreement. Thereafter, TK SVC will send to the office designated by Customer in advance a monthly invoice for subsequent monthly portions of the annual rate per Unit, which is projected to be based on 1296 hours on trailer units plus an invoice for all additional charges incurred during the previous month for non-GMP covered services rendered by TK SVC through its Subcontract Dealers. On any additional charges that are billed through TK SVC they will be invoiced with a 2% administrative fee under our Centralized Billing program, up to a maximum of $50 per invoice. Customer will send payment for said monthly invoice to TK SVC within fifty (50) days of the date of such invoice. Customer shall have no obligation to make any payment directly to any Subcontract Dealer with respect to services rendered under this GMP. Customer agrees to pay TK SVC for all invoices submitted under this Agreement. There will be a 1.5% per month penalty for late payment.

### 2.5.1 Tax and Taxes

The 'applicable' sales tax for any service shall be determined by the law governing the contract between Customer and the dealer providing service. It is the Customer's and Dealer's responsibility to clarify this issue before services are provided. Any dispute over sales tax charges shall be resolved by and between Customer and Dealer.

## 2.6 End of Coverage Charges

Customer will notify TK SVC in writing at the time a Unit is taken out of the GMP, including when the Unit is "temporarily out of service." TK SVC does not agree to retroactive notification, i.e., TK SVC will not count a Unit as being out of service for any time period prior to receipt of such written notice.

### 2.6.1 A Unit out of service for a time period of four (4) weeks or more due to major repairs to the chassis, body and Unit will be treated as being "temporarily out of service" and will be removed from the GMP provided that Customer has notified TK SVC that such Unit is "temporarily out of service." A Unit out of service for a time period of less than four (4) weeks will not be treated as being removed from the GMP. The time the Unit was taken out of service will be calculated by whole weeks and charges will be adjusted on the following monthly customer invoice.

### 2.6.2 If a Unit is "temporarily out of service," in all cases an inspection, at the Customer's expense must be performed prior to its reinstatement under the GMP. TK SVC will notify the appropriate Subcontract Dealer to provide the required pre- reinstatement inspection. TK SVC will charge Customer extra for any remedial repairs or replacement parts required and caused by inactivity and/or repair work.

### 2.6.3 The annual rate for a Unit permanently removed from the GMP will be adjusted to the actual hours run by such Unit prior to its removal from the GMP. Details are outlined in Section 2.1.

### 2.6.4 Delinquent Units

Units that are not made available for service as required by this Agreement and fall more than one (1) month overdue may be removed from the GMP. This removal from the GMP will occur only after two (2) monthly written advisory notices, spanning one (1) month commencing with a notice on the service date and ending with a notice one month after the service date to both Customer and the Subcontract Dealer. Upon the occurrence of the third notice, the Unit will be removed from the GMP. ~~An administration charge equal to the rate for 100 running hours will be assessed and invoiced to Customer by TK SVC for such Unit.~~ If Customer wants to reinstate a delinquent Unit to the GMP, the following conditions must be met:

   (i)   No more than one (1) year shall have passed since the removal of the Unit from the GMP;

   (ii)   The Unit shall not have been operated for more than 2000 hours since the last hours were recorded by a Subcontract Dealer for the Unit;

   (iii)   The Unit shall have been inspected, at the Customer's expense, serviced and all defects corrected by a Subcontract Dealer; and

   (iv)   The cost of such service and repair shall have been paid by Customer.

K.S.

**2.7  Additional Units**
Customer may add units to this GMP by completing and sending "Equipment Add/Delete form" to TK SVC, or by other written means agreed by Customer and TK SVC. The parties will negotiate a rate per hour that shall apply to the added unit. Any existing rates for that unit model are void after 12 months. The time period that a newly added unit shall be covered will not extend beyond the initial term of this GMP unless there is mutual agreement by Customer and TK SVC.

## 3.  Term and Termination

3.1  The term of coverage under the GMP for each Unit shall be as set forth on Exhibit C.

3.2  This Agreement cannot be renewed or continued by implication, amendment or ratification. The exclusive method for renewal is by execution of a new Agreement.

3.3  Except as otherwise provided, this Agreement may not be terminated in its entirety at any time by either TK SVC or Customer, except upon six (6) months' prior written notice; provided, however that in the event of mutual agreement that legitimate business reasons affecting one of the parties exists then, and in that event, either party may terminate the Agreement upon sixty (60) days' prior written notice.

3.4  This Agreement may be terminated at any time by either TK SVC or Customer in the event that:

    3.4.1  The other party is in default under any of the terms and conditions of this Agreement or is delinquent in the payment of its account and such party fails to cure such default or delinquency within thirty (30) days after written notice thereof; or

    3.4.2  The other party becomes insolvent, or if there are instituted by or against the other party proceedings in bankruptcy or under any insolvency law or for reorganization, receivership, or dissolution, or if the other party shall make an assignment for the benefit of any or all of its creditors.

## 4.  Exclusions

Units shall be covered under the GMP only for normal use and reasonable wear and tear. They shall not be covered for costs and faults caused by any factor other than normal use and correct maintenance. The following exclusions from coverage under the GMP are among the exclusions applicable to this Agreement:

    **4.1  Damage**
    4.1.1  Damage caused by accident, impact, or road debris, including damage that prevents the Unit from operating; damage that is detrimental to the operation of the Unit, damage that renders the Unit unsafe to the public and property; damage that has a resultant degrading damage or corrosion risk. This does not include day-to-day abrasions.

    4.1.2  Damage caused by abnormal or poor loading. This includes all damage to the evaporator, but does not include damage to bulkheads and ducting attached to, but not part of, the Unit. This does not include day-to-day abrasions.

    4.1.3  Damage caused while the vehicle is left unaccompanied in either a roadside or park facility.

    4.1.4  Damage to the Unit caused in the process of repairs to any part of the vehicle by persons other than Subcontract Dealers, such as body and chassis repair shops engaged to perform such repairs. This exclusion includes, but is not limited to, work on, and refitting of, Units without the supervision of a Subcontract Dealer, electric welding on any part of the vehicle with resulting damage to the Unit, painting and the preparation of the paint process.

    4.1.5  Damage caused by operator error.

    4.1.6  Damage caused as a result of force majeure as set forth in Section 5.3.

    **4.2  Negligence, abuse and misuse**
    Damage caused by failure to conduct daily checks, fueling, cleaning, pre- trips and making the Unit available for scheduled service; operation of the Unit with a known problem, and operation of the Unit with product or at temperatures for which it was not designed or intended.

    **4.3  Theft**
    Theft of the complete vehicle or any part thereof, including any refrigeration unit, the cargo or other items carried on the vehicle and damage caused by the perpetration of any such theft. The responsibility for insuring against theft is with the owner or operator of the Unit, or the proprietor of the Unit location at the time of the theft. This Agreement will not cover any form of theft in any circumstances.

*K.S.*

**4.4  Defective power supplies**
Damage to electric motor windings and associated control gear caused by lack of, defective, or surges in, power supplies. In the case of a suspected supply problem, the Subcontract Dealer will report such fact and the operator shall be required to ensure that the supply problem is corrected. Records of the rectification work also may be required.

**4.5  Fuel**
Damage caused by contaminated fuel, out of fuel, fuel not to proper specification, gelled fuel, or fuel line damage, including fuel with no antifreeze in winter and heating oil of a higher viscosity than diesel. Expenses incurred as a result of running out of fuel is not covered.

**4.6  Rust and Corrosion**
Damage caused by rust and corrosion as a result of road salt contacting unrepaired impact damage; chemicals used in washes; or chemicals or substances carried as part of or included in the cargo.

**4.7  Non-standard parts and modifications**
Damage caused by any unauthorized non-standard parts and modifications and/or ancillary equipment which was fitted to a Unit, such as tailgate power supply, and not specified in this Agreement. The responsibility for such modifications shall be with the person making such modifications.

**4.8  Battery Damage**
Dead batteries and battery damage caused by misuse and abuse, including, but not limited to, boost (slave) starting either to or from the TK SVC battery, boost charging without the required control that causes electrolyte loss, overheating and subsequent plate damage.

**4.9  Legislation**
Costs resulting from changes in legislation relating to refrigerants and working practices.

**4.10  Refrigerant Changes**
Refrigerant changes caused by Customer's requests for refrigerant changes to comply with its own company directives. The cost of these changes will be charged and invoiced outside this Agreement; provided, however, that the service cost of any newly installed refrigerant approved by TK SVC will be accepted under the GMP after the change. No changes will be accepted unless the refrigerant proposed is approved by TK SVC.

**5.    Warranty and Liability Limitation**

**5.1  Exclusive Limited Warranty**
Subject to the provisions of this Agreement, except for replacement compressors, engines and rebuilt engines having a one (1) year warranty, TK SVC warrants the maintenance and repair services, parts and materials provided under the GMP to be free from defects in material and workmanship for the duration of the term hereof and ninety days thereafter. This warranty provision is exclusive, extends only to Customer and is limited to repair or replacement at TK SVC's option, by a Subcontract Dealer, and is limited to the price of the maintenance or repair services or the part on which such liability under this warranty is based.



**5.2** *Limitation of Liability*

THE WARRANTY OBLIGATIONS OF TK SVC SET FORTH HEREIN ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, WHETHER STATUTORY, EXPRESS OR IMPLIED (INCLUDING ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL WARRANTIES ARISING FROM COURSE OF DEALING OR USAGE OF TRADE). The remedies provided herein are Customer's sole remedies for any failure of TK SVC to comply with its obligations. The repair or replacement of parts or services under the GMP shall constitute complete fulfillment of all the liability of TK SVC and the sole remedy of Customer, whether the claims of Customer are based in contract, in tort (including TK SVC's negligence or strict liability) or otherwise with respect to or arising out of the service and/or parts furnished hereunder. Except as set forth herein, TK SVC, the Subcontract Dealers, and their suppliers shall not be liable in contract, in tort (including TK SVC's, the Subcontract Dealer's or their suppliers' negligence or strict liability) or otherwise for damage or loss of other property, loss of profits or revenue, road loss, loss of use of equipment, cost of capital, cost of purchased or temporary equipment, claims of customers of Customer or for any special, indirect, incidental or consequential damages whatsoever. The remedies of Customer set forth herein are exclusive and the liabilities of TK SVC with respect to any claims of Customer arising from the services and/or parts sold under this agreement or anything done in connection herewith such as the performance thereof, or from the manufacture, sale, delivery or resale or use of any part covered by or furnished under this Agreement, whether in contract, in tort (including TK SVC's negligence or strict liability) or otherwise, are limited to the remedies set forth herein. Nothing in this paragraph shall limit the liability of TK SVC or the Subcontract Dealers in tort (including TK SVC's or the Subcontract Dealers' negligence or strict liability) for personal injury claims asserted by third parties.

**5.3** **Force Majeure**

Neither party hereto shall be liable for failure to perform or for delay in performance resulting from any cause beyond its reasonable control, including without limitation: compliance with any regulations, orders, acts, instructions or priority requests of any government or any department or agency thereof; acts of God, fires, floods or weather; strikes, lockouts or factory shutdowns; embargoes, hostilities or riots; delays or shortages in transportation or manufacturing facilities or materials from TK SVC's or the Subcontract Dealers' usual sources.

**6.** **Amendments; Waivers**

No amendment or modification of this Agreement or waiver of any of the provisions herein contained shall be binding on either party unless the same is in writing and signed by an authorized representative of each party.

**7.** **Independent Contractors**

Each party hereto is an independent contractor and nothing in this Agreement shall be construed or implied to create a relationship of partners, agency, joint ventures or of employer and employee.

**8.** **Notices**

Any notices relating to this Agreement shall be given to TK SVC or Customer in writing at the address set forth herein below or at such other address as any party shall designate in writing. Delivery or service of any notice shall be deemed to have been given when delivered personally, sent by overnight courier service, by fax transmission or by certified mail, return receipt requested, postage prepaid.

If to TK SVC:    Thermo King SVC, Inc.      If to Customer:    Dick Simon Trucking, Inc.

                  Attn: President                            Attn: Kelle Simon

                  314 W. 90th Street                           5175 West 2100 South

                  Minneapolis, MN 55420                    West Valley City, UT 84120-1252

                  Phone: 952-886-8014                      Phone: 801-924-7000

                  Fax: 952 886-6017                      Fax: 801-924-7113

**9.** **Assignment of Rights**

Neither party shall assign its rights or obligations under this Agreement without the prior written consent of the other party. A Unit on a vehicle that is sold to a third party by Customer will no longer be covered by this Agreement.

*K.S.*

10. **Severability**
If for any reason any provision of this Agreement is held to be invalid, illegal or unenforceable, such provision shall be deemed to be modified to the minimum extent necessary to make such provision consistent with applicable law, and enforceable thereunder, and the remaining provisions of this Agreement shall not be affected and shall remain in full force and effect.

11. **Applicable Law**
This Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware, as may be in effect from time to time, except that its choice of law principles shall not apply.

12. **Entire Agreement**
This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement supersedes any and all prior existing agreements, understandings or arrangements between the parties with respect to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

**THERMO KING SVC, INC.**                              **Dick Simon Trucking, Inc.**

a Delaware Corporation                                 _____
("TK SVC")                                             ("Customer")

By: _*Gary M. Lemon*_                                  By: _*Kelle Si___*_

Title: _Pre**s**ident & CEO_                           Title: _President_

Name: _GARY M. LEMON_                                  Name: _Kelle Si____

K.S.

**Exhibit A**

 **SVC**
A Thermo King Company

**SVC Fleet Equipment Profile**

**Date:** April 10, 2001

**Customer Name:** Dick Simon Trucking, Inc.

**Address:** 5175 West 2100 South

**City:** West Valley City    **State:** UT    **Zip:** 84120-1252    **Country** USA

**Contact Person:** Mike Vaniklotls    **Phone** 801-924-7000 x7305

**Title:** Building and Property Manager    **Fax** 800-777-8103

---

**Contract Information:**

**Length (months):** 60    **Total # of Units:** Approx 3000

**Central Billing Address:** 5175 West 2100 South

**City:** West Valley City    **State:** UT    **Zip** 84120-1252    **Country:** USA

---

**Operating Conditions:**

**# door openings/day:** _____    **# stops/day:** _____    **Avg. hourmeter/yr:** 1296

**Areas truck/tlr will run:** North America

**Peak seasons:** _____

**Products transported:** _____

**Commodity load method:** _____

| Days avail. for service: | MON ☐ | TUE ☐ | WED ☐ | THU ☐ | FRI ☐ | SAT ☐ | SUN ☐ |
|---|---|---|---|---|---|---|---|
| Time avail. for service: | TBD | By TK SVC Fleet Manager | | | | | |

| Primary Service location | X | TK Dealer | All major repair work customer is responsible to bring unit to dealership. | X | Customer Location | All work that can reasonably be done with Uptime vehicle |
|---|---|---|---|---|---|---|

---

**Acknowledgments:**

**Customer signature:** _Kth Si_____

**Title:** _____    **Date:** _____

**Form completed by:** _____

**Title:** _____    **Date:** _____

K.S.

04/05/2002 13:00 FAX 812 807 7100    OPPENHEIMER LAW FIRM                    ☎1011
THERMO KING SVC, INC.    Fax:952-888-6017    Feb 25 2002  15:41    P. 11

Case 02-22906   Doc 328-1   Filed 04/05/02   Entered 04/08/02 08:08:12   Desc Main
Document   Page 20 of 21

**Exhibit B**

### List of Maintenance Services

#### Interim Inspections:

Units covered under the GMP will be scheduled for an interim inspection by a Subcontract Dealer approximately every 90-150 days. Units operated over 3,000 per year will be separately evaluated as to appropriate inspections and maintenance. TK SVC will notify Customer with respect to required interim inspections in cases where Units are operated in excess of 3,000 hours per year.

| | |
|---|---|
| • Examine door seals for damage<br>• Check bulkheads for damage<br>• Verify adequate fuel level<br>• Check engine oil level<br>• Check coolant level<br>• Visually inspect hoses<br>• Inspect coils – condenser/evaporator<br>• Inspect for any fluid leaks<br>• Inspect battery<br>✔ **ALL OF THE ABOVE** | • Inspect defrost drains<br>• Note any unusual noises<br>• Check engine oil pressure<br>• Check ammeter<br>• Visually inspect belts<br>• Verify door switches (ERC)<br>• Verify for proper air flow<br>• Check damper door<br>• Check for damaged or loose wires |

#### Scheduled Maintenance:

Units covered under the GMP will be required to have scheduled maintenance services based on factory recommended intervals for trailers.

| | |
|---|---|
| • Check low coolant level alarm<br>• Check engine oil pressure<br>• Change engine oil, oil filters, and fuel filters<br>• Drain water from fuel tank and check vent<br>• Replace fuel filters, drain water separator<br>• Check defrost initiation and termination<br>• Inspect battery terminals & electrolyte level<br>• Check for damaged or loose wires<br>• Check for proper suction pressure<br><br>• Inspect for any fluid leaks<br>• Inspect tapered roller bearing fanshaft or fan transmission & idlers for leakage and bearing wear<br>• Clean entire unit<br>✔ **ALL OF THE ABOVE** | • Visually inspect belts<br>• Note any unusual noises<br>• Clean crankcase breather<br>• Inspect fuel transfer pump inlet strainer<br>• Check ammeter<br>• Check cycle sequence on all modes<br>• Check protection shutdown circuits<br>• Check refrigerant level<br>• Check throttling valve regulating pressure on defrost<br>• Inspect unit for damage<br>• Check all unit and fuel tank mounting bolts brackets, lines, hoses, etc.<br><br>• Check damper door |

#### Unscheduled Repairs:

Service Provided by TK SVC, Inc.          Yes          X                   No

This includes:  (i) repair and replacement of those items which are subject to normal wear or defect, but are not replaced on a regularly scheduled basis, (ii) repair and replacement of those items which have an unpredictable life cycle, and (iii) unforeseen or unpredictable repairs.

*K.S.*

**Exhibit C**

## Pricing Structure

**Rates" are as follows:**
- **Rates will increase each January based on Consumer Price Index changes.**
- **Any applicable taxes will be billed separately.**

| Contract Period (months) | Unit Age | Qty | Rate |
|---|---|---|---|
| 1-12 | New | Approx 2800 | $0.45 |
| 13-24 | 1 | | $0.52 |
| 25-36 | 2 | | $0.62 |
| 37-48 | 3 | | $0.85 |
| 49-60 | 4 | | $1.11 |

*1.09 K.S.*

The minimum annual rate to be charged per Unit covered under the GMP will be 1200 hours for a trailer Unit multiplied by the price per running hour applicable to the Unit as set forth above. Customer will be invoiced for the hours of usage of each unit in excess of the projected annual hours of usage or receive a credit for hours of usage that are less than the projected usage but greater than the minimum annual rate every 12 months during each year of this Agreement.

The foregoing rates do not include sales and use taxes and Customer shall be responsible for paying all applicable sales and use taxes.

TK SVC can utilize the Dick Simon Trucking facilities, including service bays, fleet management office space, parts area and parts assistance, mobile yard service trucks, fleet management and locator system at no charge. TK dealers or TK SVC are free to hire the current Dick Simon Trucking refrigeration technicians.

*K.S.*

## Terms of Coverage

The term of coverage for the Units included on this Schedule is 60 months from date the Units are first covered under the GMP.

The start date of coverage is May X, 2001  _____ *K.S.*

*19* | (customer initials)