J. THOMAS BECKETT (5587)
DIANNA M. GIBSON (7533)
ANNE E. RICE (7971)
PARSONS BEHLE & LATIMER
Attorneys for Freightliner Companies
One Utah Center
201 South Main Street, Suite 1800
Post Office Box 45898
Salt Lake City, Utah 84145-0898
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| In re: | |
|---|---|
| SIMON TRANSPORTATION SERVICES, INC.; DICK SIMON TRUCKING, INC., AND SIMON TERMINAL, LLC, <br><br> Debtors. | Case No. 02-22906 <br> Case No. 02-22907 <br> Case No. 02-24874 <br> Chapter 11 <br> (Jointly Administered) <br><br> FREIGHTLINER'S REPLY TO DEBTOR'S PRELIMINARY RESPONSE TO FREIGHTLINER'S MAY 5, 2002 MOTION FOR RECONSIDERATION <br><br> Judge Glen E. Clark |

Freightliner LLC (f/k/a/ Freightliner Corporation) and Freightliner Market Development Corporation (together, "Freightliner" or the "Freightliner Companies"), by and through their undersigned counsel, Parsons Behle & Latimer, respectfully submit the following Reply to the Debtor's Preliminary Response to Freightliner's May 5, 2002 Motion for Reconsideration.

483873.1



0222906D701

## INTRODUCTION

On April 9, 2002, the Debtor and the purchaser of its assets, Central Refrigerated Services, Inc. ("Central"), filed a joint motion (the "Contracts Motion") seeking this Court's approval of (i) the Debtor's assumption of five contracts between the Debtor and Freightliner, and (ii) the Debtor's assignment of those five contracts to Central. (Under these contracts, Freightliner had conditionally agreed to repurchase some of the Debtor's truck tractors for above-market prices.) On April 22, 2002 – upon the expiration of a sharply reduced notice period – this Court entered two orders granting the Contracts Motion.

However, the Contracts Motion was not properly served on Freightliner. It was not addressed to an officer of the corporation, as strictly required by law. Predictably, it rattled around in a mailroom in Portland for a while and then was misdirected to a man on vacation. For this reason – and also because the motion was remarkably vague and unforthcoming – no one at Freightliner with the slightest idea of its import obtained it until too late. Freightliner, therefore, did not receive notice of the impending motion, the deadline for objections, or the time, date, and place of the hearing. It neither objected to the motion nor appeared at the hearing. Instead, when it learned after the fact of the *fait accompli*, Freightliner immediately filed two notices of appeal and this pending motion for reconsideration.

Ever since – in an effort to avoid this Court hearing and fairly ruling on Freightliner's objections – the Debtor and Central have struggled to cobble together a

483873.1                                                                 2

credible theory that Freightliner knew, should have known, could have known, or might have suspected that the Contracts Motion was pending – or perhaps that some affiliate, friend or acquaintance had forwarded to Freightliner some of the information that the Debtor had failed to convey. Such conspiracy theories and innuendo miss the mark by suggesting that Freightliner had both the opportunity and the duty to connect the dots. It had neither. These fanciful notions also suggest that Freightliner had some reason for ignoring a court deadline. That is inconceivable.

The law is clear. The Debtor was required by law to serve adequate notice properly in the manner required by the Bankruptcy Rules. It failed to do so. This Court must find that service was inadequate and notice was inadequate, and then hear Freightliner's objections.

## DISCUSSION

### The Debtor Failed to Properly Serve the Contracts Motion on The Freightliner Companies and Failed to Provide Specific Notice of the Contracts to be Assumed or Assigned.

The Debtor asserts that it properly served the Contracts Motion by mailing it by ordinary mail to Freightliner's general headquarters address. The Debtor, however, cites no legal authority to support this argument while carefully avoiding any discussion of the notice requirements explicitly prescribed in Rules 6006, 9014 and 7004 of the Federal Rules of Bankruptcy Procedure ("FRBP"). These rules require service upon a designated officer. They do not, implicitly or explicitly, allow service on the corporation at its general headquarters address.

483873.1                                    3

Rule 6006 of the FRBP provides that a proceeding to assume, reject or assign an executory contract is a contested matter, which specifically requires that a party to an executory contract be given notice of such a proceeding. See FRBP 6006(a), (c). Rule 9014, which pertains to contested matters, provides that "reasonable notice and opportunity for hearing shall be afforded any party against whom relief is sought" and states that motions in a contested matter must be served in the same manner provided for service of a complaint in Rule 7004. See FRBP 9014; See also In re Ex-Cel concrete Co., 178 B.R. 198, 202 (9th Cir. 1995).

Rule 7004(b)(3) specifically requires that service on a corporation by mail must be directed "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." FRBP 7004(b)(3). Bankruptcy courts uniformly have interpreted this provision *literally* to require that service, to be effective, must be made upon an officer, executive or agent by name, or at the very least, directed to an office or title. See In re C.V.H. Transport, Inc., 254 B.R. 331, 333 (Bankr. M.D. Pa. 2000) (upholding notice sent to "officer, managing or general agent, or any other agent authorized . . . to receive service"); In re Schoon, 153 B.R. 48, 49 (Bankr. D. Idaho 1993) (requiring service upon a specifically named officer). These courts have reasoned that literal compliance with Rule 7004(b)(3) serves to protect due process and ensure that bankruptcy matters will proceed expeditiously. See In re Pittman Mechanical Contractors, Inc., 180 B.R. 453, 457 (Bankr. E.D. Va. 1995); See, e.g., In re C.V.H. Transport, 254 B.R. at 333 (stating it is reasonable to assume that a

properly addressed envelope, directed to a corporation and the attention of an officer or agent will in fact be delivered to the proper person charged with responding).

Given the comparatively lenient service procedure in bankruptcy, which allows for nationwide service of process by first class mail,[1] and the potentially short time periods in which a response might be required (such as occurred in this case), "it is of great importance that persons effecting service provide correct notice in accord with the Rules." In re Pittman Mechanical Contractors, Inc., 180 B.R. at 457. As the Bankruptcy Court for the District of Delaware noted:

> [I]t does not seem too onerous to require the notice to comply with the literal requirement that it be addressed to an officer or to the known person responsible for such [ ] matters, in order for the notice to be considered "reasonably calculated" to afford [an entity] an opportunity to object in this particular circumstance, especially given the extremely short period in which those receiving notice were given to file objections.

In re Golden Books Family Entertainment, Inc., 269 B.R. 300, 305 (Bankr. D. Del. 2001) (holding notice defective where it was addressed to a general address and not to an officer as required by Rule 7004).

The Debtor filed the Contracts Motion and mailed it, by "snail-mail," to Freightliner's general address on April 9, 2002. The Contracts Motion required written objections to be filed in this Court by April 19, 2002. Factoring in the three days for

---

[1] Courts have recognized that the privilege of nationwide service of process allowed in bankruptcy proceedings can drastically reduce costs and delay in litigation. "As a privilege, it is not be abused or taken lightly. Where the alternative to service by mail is hiring a process server to serve the papers in person, it seems like a small burden to require literal compliance with the rule." In re Schoon, 153 B.R. 48, 49 (Bankr. D. Idaho 1993) (requiring strict application of Rule 7004 to require designation of officer by name).

mailing, Freightliner in reality had six business days in which to file its objections. Under these circumstances, the consequence of the Debtor's defective service was severe – Freightliner was denied its day in court.

The Contract Motion also is remarkable because it is so vague and unforthcoming. It recites that the Debtor seeks to assume and assign the contracts "listed on the attached Exhibit A." Exhibit "A," however, did not list any agreements. It only listed (in microscopic print) companies and their addresses.

The Debtor, however, asserts that notice was not defective merely because the Contracts Motion did not identify or attach the Freightliner contracts to be assumed and assigned. The Debtor reasons that the Freightliner Companies in fact had notice of which Freightliner contracts were subject to assumption and assignment. Again, the Debtor cites no authority in support of this assertion. Instead, the Debtor speculatively alleges that the Freightliner Companies simply must have or should have known.

Despite what the Freightliner Companies knew or did not know – and they certainly did not know the objection deadline or the time and place of the hearing – it was the Debtor's obligation to advise the Freightliner Companies in unequivocal terms that its rights in certain contracts would be adjudicated. "[P]rinciples of fairness require that when relief is being sought against [a] party, *the party must be told in unambiguous terms that its specific rights are to be adjudicated.*" In re Automationsolutions Int'l, 274 B.R. 527, 529 (Bankr. N.D. Cal. 2002) (emphasis added) (refusing to make findings or waive rights of party who was neither served nor explicitly told that its rights were being

adjudicated). Here, on its face, the Contracts Motion does not give notice of which of the Freightliner contracts were subject to assumption and assignment. The subject contracts were neither identified nor attached to the Contracts Motion. Because the Debtor failed to designate an officer, agent or a responsible party for service of the Contracts Motion, and because the Debtor failed to identify the Freightliner contracts at issue, the Freightliner Companies received defective notice, which prevented them from forwarding the motion to the most knowledgeable Freightliner officer and timely objecting to the Contracts Motion.

<u>The Only Authority that the Debtor Cites in Support of its
View that Proper Notice is Unnecessary in the Face of
Alleged Actual Knowledge, in Fact Supports Freightliner's
Position.</u>

In support of its argument, the Debtor cites one case, <u>In re National Gypsum Co.</u>, 208 F.3d 498, 513 (5th Cir. 2000), asserting that "technical arguments regarding notice cannot be sustained when the movant possesses 'actual knowledge of a significant refined degree.'" (<u>See</u> Debtor's Preliminary Response at 9, ¶ 15.) The Debtor, however, has selectively quoted the standard articulated in <u>In re National Gypsum Co.</u>. The full quote reads:

> [W]e hold that the debtor had responsibility to assure that the non-debtor party was on notice of the debtor's specific intent to assume the contract. *Unless there is a showing that the non-debtor possessed actual knowledge of a sufficiently refined degree,* the debtor must demonstrate delivery of the proprosed plan of reorganization or some other court-ordered notice that set forth [debtor's] intent to assume the [contract] . . . .

Id. at 513 (emphasis added).

Contrary to the Debtor's reading of In re National Gypsum, that case places the burden *on the Debtor* to show that it notified the Freightliner Companies of the Debtor's specific intent to assume the contracts. Accordingly, it is the Debtor's burden to show that the Freightliner Companies had "actual knowledge of a sufficiently refined degree," i.e., actual knowledge of the specific contracts to be assumed and assigned, knowledge of the objection deadline, and knowledge of the hearing date, time and place. See id. at 514. Otherwise, the Debtor must show that it properly served upon an officer a court-filed notice that makes clear the Debtor's intent to assume or assign the Freightliner contracts. The Debtor cannot do either.

Ultimately, even if Freightliner had a suspicion (which they in fact did not have) that the Debtor might attempt at some time to assume and assign the Freightliner Agreements to Central, "'notice cannot by itself validate an otherwise defective service.'" In re C.V.H. Transport, Inc., 254 B.R. at 333 (quoting Grand Entertainment Group v. Star Media Sales, 988 F.2d 476, 492 (3d Cir. 1993) (notice to defendant that he has been sued does not cure defective service).

## CONCLUSION

The law is clear. It was the Debtor's obligation to effect proper service. It did not do so. It was also the Debtor's obligation to assure that Freightliner had actual and specific notice of the pending Contracts Motion. It did not do this either.

The Court must find that service and notice were inadequate, and then proceed to give Freightliner's objections a fair hearing.

RESPECTFULLY SUBMITTED this 22nd day of August, 2002.

PARSONS BEHLE & LATIMER

By _____
J. THOMAS BECKETT
DIANNA M. GIBSON
ANNE E. RICE
Attorneys for the Freightliner Companies

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2002, true and correct copies of the foregoing were served by facsimile transmission to the following:

Weston L. Harris
Parsons Davies Kinghorn & Peters
185 South State Street, Suite 700
Salt Lake City, Utah 84111
Fax: (801) 363-4378

Scott J. Goldstein
Mark A. Thornhill
Spencer Fane Britt & Brown LLP
1000 Walnut, Suite 1400
Kansas City, Missouri 64106
Fax: (816) 474-3216

Michael N. Emory
Richards Brandt Miller & Nelson
50 S. Main
Salt Lake City, Utah 84144
Fax: (801) 532-5506

_____

483970.1