Weston L. Harris (A1387)
R. Kimball Mosier (2334)
**Parsons Davies Kinghorn & Peters**
185 South State Street, Suite 700
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Scott J. Goldstein    (MO #28698)
**Spencer Fane Britt & Browne LLP**
1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
Facsimile: (816) 474-3216

Counsel for Debtors

---

### In the United States Bankruptcy Court
### District of Utah, Central Division

---

In re:

SIMON TRANSPORTATION SERVICES
INC., DICK SIMON TRUCKING, INC. AND
SIMON TERMINAL, LLC

        Debtors.

Bankruptcy No. 02-22906 GEC
[Chapter 11]
[JOINTLY ADMINISTERED]

---

### DEBTORS' OBJECTION TO FREIGHTLINER LLC'S PROOFS OF CLAIM
### (CLAIM NOS. 939, 945, AND 947)

---

Debtors Simon Transportation Services Inc. ("Simon Transportation"), Dick Simon

Trucking, Inc. ("Dick Simon") and Simon Terminal, LLC ("Simon Terminal") (at times

collectively referred to herein as "Debtors"), by their undersigned attorneys, for their

Objection to Freightliner LLC's ("Freightliner") Proofs of Claim Nos. 939, 945 and 947

(collectively, the "Proofs of Claim"), respectfully state as follows:

      1.    Debtors Simon Transportation and Dick Simon commenced the captioned

cases by filing separate Voluntary Petitions for Relief under Chapter 11 of the United

States Bankruptcy Code ("Code"), Code §§ 101 through 1146, on February 25, 2002 (the

"Filing Date").

WA 668719.3



0222906D779

2.     Debtor Simon Terminal filed its Voluntary Petition for Relief under Chapter 11 of the Code on March 25, 2002.

3.     Upon information and belief, on or about June 15, 1998, Westway Express, Inc. ("Westway") entered into a Master Lease Agreement (the "Master Lease") with Transwest Trucks, Inc. ("Transwest"), whereby Westway leased certain tractors from Transwest. A copy of the Master Lease is attached as **Exhibit A** and is incorporated by reference.

4.     Upon information and belief, Transwest assigned its interest in the Master Lease to Mercedes-Benz Credit Corporation (now, Daimler-Chrysler Services North America, LLC) ("MBCC").

5.     Allegedly, on or about January 12, 1999, Freightliner Market Development Corporation ("FMDC"), MBCC's sister corporation, executed the Guaranty of FMDC (the "Guaranty"), whereby FMDC unconditionally guaranteed Westway's obligations under the Master Lease.   The Guaranty is attached as **Exhibit B** and is incorporated by reference.

6.     On or about December 15, 2000, Dick Simon agreed to purchase a substantial portion of  Westway's assets.

7.     Upon information and belief, on or about March 15, 2001,  Dick Simon and Westway entered into a Transfer of Interest and Assumption of Obligation Under a Motor Vehicle Lease Agreement (the "Transfer Agreement"), whereby Dick Simon agreed to make payments under the Master Lease and to be bound by the terms and conditions of

2

the Master Lease. The Transfer Agreement is attached as **Exhibit C** and incorporated by reference.

8.      Upon information and belief, on or about March 15, 2001, Dick Simon and MBCC entered into a Revision Agreement/Motor Vehicle Lease Agreement (the "Revision Agreement"). The Revision Agreement is attached as **Exhibit D** and is incorporated by reference. The Revision Agreement amended the Master Lease and specifically states that Dick Simon shall not be responsible for any residual guaranteed value at the end of the Master Lease term.

9.      Freightliner alleges that on or about  May 28, 2002, FMDC paid MBCC  the amount of $8,209,372.17 on account of the Guaranty. Freightliner further alleges that on or about June 25, 2002, FMDC paid MBCC in the amount of $1,747,651.85 on account of the Guaranty. These payments total $10,057,024.02 and are evidenced only by FMDC check request forms that Freightliner attached to the Proofs of Claim. The check request forms are attached as **Exhibits E and F**, respectively, and are incorporated by reference.

10.     On August 26, 2002, Freightliner filed a proof of claim, claim no. 939, in the Simon Transportation case, Case No. 02-22906, proof of claim, claim no. 945[1], in the Simon Terminal case, Case No. 02-24874 and proof of claim, claim no. 947 in the Dick Simon case, Case No. 02-22907.  In each of the proofs of claim, Freightliner asserts a subrogation claim in the total amount of $10,057,024.02.

---

[1] Claim No. 945 also consisted of proofs of claim for the Dick Simon and Simon Transportation cases. Debtors believe these claims were inadvertently included in Claim No. 945, as they are exact duplicates of Claim Nos. 939 and 947.  To this extent, said claims are duplicates and should be disallowed.

WA 668719.3

11.     Debtors object to Claim Nos. 939 and 945 pursuant to Code § 502(b)(1) on the grounds that Simon Transportation and Simon Terminal were not parties to the Master Lease, Transfer Agreement, or Revision Agreement, and therefore, Freightliner's claim is unenforceable against Simon Transportation and Simon Terminal.  Further, to the extent that Claim Nos. 939 and 945 are duplicates, they are improperly repetitive and would result in an inflated recovery to Freightliner if allowed.

12.     Debtors object to the Proofs of Claim on the grounds that Debtors dispute whether Freightliner and FMDC have a subrogation claim against the Debtors' estates. Upon information and belief, Dick Simon may be liable to MBCC under the Transfer Agreement. Debtors, however, believe that issues exist as to whether FMDC properly paid MBCC on account of the alleged Guaranty and whether FMDC actually paid MBCC on account of the alleged Guaranty.  As a result, Debtors request an opportunity to conduct discovery as to the underlying factual basis of Freightliner's subrogation claim.

13.     Debtors further object to the Proofs of Claim on the grounds that Freightliner was not the proper party to file the Proofs of Claim.  Allegedly, FMDC was the guarantor of the Master Lease and is the party who paid MBCC on account of the Guaranty.  Thus, FMDC, to the extent it has a claim, is the proper party to file the Proofs of Claim, not Freightliner.

14.     To the extent that Freightliner has a subrogation claim, Debtors further object to the calculations made by Freightliner in the Proofs of Claim on the grounds that they are incorrect and dispute the amount Freightliner is actually owed.  Specifically, upon

4

information and belief, the Proofs of Claim consist of amounts representing the residual value of the leased tractors.  Pursuant to the Revision Agreement, Dick Simon is not obligated to pay such residual value amounts at the end of the Master Lease and any claim for said residual value would be unenforceable against Dick Simon.  Debtors also dispute Freightliner's calculations in the Proofs of Claim apart from the residual value amounts and request an opportunity to conduct discovery as to the underlying factual basis of the calculations.

15.     Pursuant to Fed. R. Bankr. P. 3005(a), the Proofs of Claim assert subrogation claims on account of the Guaranty and as a result should have been filed in the name of MBCC.

16.     Debtors reserve the right to further supplement this Objection as they deem appropriate.

**WHEREFORE**, Debtors object to Freightliner LLC's Proofs of Claim, Claim Nos. 939, 945, and 947 and request a hearing on their Objection be held.

Date:

SPENCER FANE BRITT & BROWNE LLP

Scott J. Goldstein    MO #28698
Daniel D. Doyle       MO #36724
Lisa A. Epps          MO #48544
1000 Walnut Street, Suite 1400
Kansas City, MO  64106
(816) 474-8100
(816) 474-3216– Fax

5

WA 668719.3

-and-

Weston L. Harris    UT #A1387
R. Kimball Mosier   UT #2334
PARSONS DAVIES KINGHORN & PETERS
185 South State Street, Suite 700
Salt Lake City, UT 84111
(801) 363-4300
(801) 363-4378– Fax

COUNSEL FOR DEBTORS


## CERTIFICATE OF MAILING

I hereby certify that on October __7__, 2002, a true and correct copy of the above and foregoing   was sent by hand delivery and/or U.S. Mail, postage prepaid, to the following:

J. Thomas Beckett, Esq.
Parsons Behle & Latimer
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT 84145-0898
COUNSEL FOR FREIGHTLINER LLC

Peter W. Billings, Esq.
Fabian & Clendenin
215 South State #1200
Salt Lake City, UT 84111
COUNSEL FOR THE
UNSECURED CREDITORS COMMITTEE

Laurie A. Crandall, Esq.
United States Trustee
9 Exchange Place, Suite 100
Salt Lake City, UT 84111

WA 668719.3

**Mercedes-Benz Credit Corporation**
**LEASE AGREEMENT**
(Closed-End)

## LESSOR - LESSEE

Lessor's Name: _Transwest Trucks, Inc._

Street Address: _7626 Brighton Road_

City: _Commerce City_    State: _CO_    Zip: _80022_

Lessee's Name: WESTWAY EXPRESS, INC.

Street Address: _5601 San Francisco Road N.E._

City: _Albuquerque_    State: _NM_    Zip: _87109_

This Lease Agreement (hereinafter "Lease") is entered into on the _15_ day of June, 1998, by and between the Lessor named above (hereinafter "Lessor") and the Lessee named above (hereinafter "Lessee").

1.  **EQUIPMENT.** Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor the equipment described in each Schedule A now or hereafter executed pursuant to this Lease (hereinafter "Schedule" or "Schedules"), together with any attachments or accessories now or hereafter incorporated in or attached to said equipment (hereinafter "Equipment").

    It is hereby agreed that additional Equipment may be leased hereunder by the execution of additional Schedules by Lessor and Lessee. Each such Schedule, when so executed, shall constitute a separate Lease of the Equipment described therein. Except as specifically modified in any Schedule, all of the terms and conditions of this Lease shall govern the rights and obligations of Lessee and Lessor with respect to the Equipment described in the Schedules. Whenever reference is made herein to "this Lease" or "the Lease" it shall be deemed to include all Schedules now or hereafter executed under this Lease.

2.  **TERM.** This Lease shall commence on the delivery date stated on the applicable Schedule and shall continue until all rental payments as hereinafter described, and all of Lessee's other obligations hereunder, have been satisfied in full by Lessee.

3.  **RENTAL.** Lessee agrees to pay Lessor monthly payments in an amount and for the term indicated in the Schedule(s) without reduction or set off for any reason, except as otherwise provided in this Lease.

    The first payment shall be due on the date stated in the Schedule(s).

4.  **LATE CHARGE; DISHONORED CHECKS.** In the event Lessee fails to pay in full any rental payment, or any other sum required to be paid hereunder by Lessee, within ten (10) days of its due date, Lessor may, without declaring Lessee to be in default, charge Lessee an amount equal to five percent (5%) of such past due amounts or the maximum allowed by applicable state law. In addition, Lessor may collect from Lessee a fee for dishonored checks. Such fee shall not exceed $35 or the maximum amount permitted by applicable law. The imposition of any charge by Lessor shall in no way alter Lessor's right to additionally or subsequently declare Lessee to be in default or to exercise any of its remedies under this Lease.

5.  **FEES AND TAXES.** Lessee agrees to pay when due all fees, sales and use taxes, duties, assessments, highway use taxes, or other taxes and charges, however designated, now or hereafter levied or based upon the purchase, rental, ownership, use, possession, leasing, operation, control, maintenance or sale of the Equipment, whether or not paid or payable by Lessor (excluding Lessor's net income, franchise and business and occupation taxes), and shall supply Lessor with proof of payment upon written demand therefor by Lessor.

6.  **INSURANCE.** With respect to the Equipment, Lessee shall provide and maintain, at its own expense, public liability insurance for bodily injury or death and property damage insurance with an aggregate limit of not less than $750,000 occurrence, or such other higher limit as may be required by law.

Mercedes-Benz
Credit Corporation

Mercedes-Benz Credit Corporation
LEASE AGREEMENT
(Closed-End)

Lessee shall also provide and maintain, at its own expense, collision and upset insurance with a deductible of not more than $5,000, and fire, theft and combined additional insurance with a deductible of not more than $5,000.

All insurance required herein shall protect Lessor and Lessee as their interests may appear. All insurance required to be provided by Lessee shall designate Lessor as an additional insured and loss payee and shall, by the terms of the policies or appropriate endorsements thereto; (a) be primary to, and in no respect excess or contributory to or contingent upon, any liability insurance provided by Lessor, (b) waive any right of subrogation against Lessor, (c) provide that all liability insurance shall first be applied against any claim against Lessor, (d) provide that all insurance proceeds are to be paid directly to Lessor in respect of any damage to the Equipment, and (e) provide that coverage may not be changed, altered or canceled by the issuing insurance company without twenty (20) days prior written notice to Lessor.

All insurance required herein to be provided by Lessee shall be placed with an insurance company acceptable to and approved by Lessor. Lessor shall be provided with certificates of insurance (or other documentation acceptable to Lessor) evidencing the insurance coverage required herein and establishing that such insurance is in effect with respect to the Equipment.

Lessee agrees that any excess or umbrella liability insurance which it may have in addition to the minimum requirements set forth above shall also include the interest of Lessor, to the extent permitted by law.

With respect to any such insurance, Lessee hereby appoints Lessor, or Lessor's assignee, as Lessee's attorney in fact, with full power to: (a) determine at Lessor's discretion what is a reasonable sum for settlement and/or compromise of claim or suit but in no way shall Lessor have the power to compromise any claim or suit with respect to Lessee's liability without Lessee's express written consent; (b) institute suit in Lessee's name, or in Lessor's name, or both, and to add any costs or expenses relating to the suit or claim, including legal fees and expenses, to the balance of Lessee's obligations under the Lease; and (c) sign in Lessee's name any settlement, draft or check.

7. **LESSOR'S RIGHT TO PAY.** If Lessee fails to insure the Equipment as required by Section 6 hereof or if Lessee fails to pay and discharge any or all fees, taxes, liens and other charges as required by Section 5 hereof, Lessor, without prejudice to any other rights hereunder, may (but shall not be obligated to) provide such insurance, or may pay and discharge such fees, taxes, liens or other charges, and Lessee agrees to repay said sums to Lessor upon demand. If Lessee fails to repay Lessor within ten (10) days of the sending of Lessor's demand for repayment, Lessor may assess a late charge on such amounts in accordance with Section 4 hereof. If such amounts, including late charges, remain unpaid for ten (10) additional days, then Lessee shall also be liable for interest thereon at the default rate of interest set forth in Section 14 of this Lease, or the maximum amount permitted by law.

8. **INDEMNIFICATION.** Lessee assumes liability for and agrees to defend, indemnify and hold Lessor harmless from any claim for liability (including, without limitation, claims involving strict liability in tort or product liability), loss, cost, expense or damage of every nature (including, without limitation, fines, forfeitures, penalties, settlements and attorney's fees) by or to any person and regardless of its basis, which directly or indirectly results from or pertains to the purchase, sale, leasing, manufacture, delivery, ownership, use, possession, operation, condition (including, without limitation, latent or other defects, whether or not discoverable, and patent, trademark and copyright infringement), removal, return or storage of the Equipment, the breach by Lessee of any covenant or condition of this Lease, or the recovery of claims under physical damage coverage on the Equipment. **LESSEE'S INDEMNITIES AND LIABILITIES SHALL CONTINUE IN FULL FORCE AND EFFECT, NOTWITHSTANDING THE EXPIRATION OR TERMINATION OF THIS LEASE FOR ANY REASON.**

Notwithstanding the foregoing, Lessee's indemnification shall only pertain to incidents occurring up to and including the date of maturity of this Lease (including any lease extension) or prior to that time if Lessor terminates this Lease and takes possession of the applicable vehicle(s).

Upon request by Lessor, Lessee shall assume the defense of all demands, claims, actions, suits and all other proceedings against Lessor for which indemnity is provided herein and shall allow Lessor to participate in the defense thereof. Lessee shall be subrogated to all rights of Lessor for any matter for which Lessee has assumed obligation hereunder and may not settle such demand, claim or action without Lessor's prior consent. Lessor shall be subrogated to all rights of Lessee for any

Mercedes-Benz Credit Corporation
**Mercedes-Benz Credit Corporation**
**LEASE AGREEMENT**
(Closed-End)

matter for which Lessor has assumed obligation hereunder and may settle such demand, claim or action without Lessee's prior consent.

For purposes of this Section 8, the term "Lessor" shall never include Freightliner Corporation or any of its successor corporations, Transwest Trucks, Inc. to the extent it has made repairs or serviced the vehicle(s), or the manufacturer of any part or component which is alleged by any claimant to be defective.

9.   ASSIGNMENT. All right, title and interest in and to this Lease, as well as to the Equipment, may be assigned at any time by Lessor without Lessee's consent. Upon notice of any assignment by Lessor or its assignee, Lessee shall make all payments coming due hereunder to the assignee without offset, counterclaim or defense of any kind. It is expressly understood that any reference in this Lease to "Lessor" shall be construed to mean Lessor or Lessor's assignee.

Lessee shall not assign, transfer or sublet this Lease, the Equipment or Lessee's interest hereunder without Lessor's prior written consent (which may be withheld at Lessor's sole discretion), nor shall Lessee's interest hereunder inure to the benefit of any trustee, receiver, creditor or successor of Lessee or its property, whether or not in bankruptcy, or whether by operation of law or otherwise.

10.   OWNERSHIP/TITLE. Ownership of and title to all Equipment shall be and remain in Lessor, notwithstanding possession and use thereof by Lessee. Lessee has not acquired, and will not acquire by its acceptance of this Lease, any proprietary rights or interest in the Equipment other than the leasehold interest created by this Lease. Lessee acknowledges that unless and until Lessor allows Lessee to purchase the Equipment pursuant to Section 16 below, Lessee's interest shall be that of lessee and not owner. Lessee and Lessor intend for this agreement to be a lease.

11.   USE, INSPECTION AND ALTERATIONS. Lessee at its sole expense shall have the Equipment serviced in accordance with the manufacturer's approved maintenance schedules, ensure that maintenance records are available for review by Lessor at reasonable times and places and maintain the Equipment in good repair, appearance, functional order, and good lawful operating condition.

Lessee shall not: (a) use or permit the use of the Equipment in any unintended, injurious or unlawful manner, (b) subject the Equipment to unusual, extreme or severe operating conditions; or (c) change or alter the Equipment without Lessor's prior written consent, except that Lessee shall make such alterations and improvements, at Lessee's expense, as may be required from time to time to meet the requirements of law or of any federal, state or local governmental authority having jurisdiction over the Equipment.

Notwithstanding the foregoing, Lessee may add, alter and remove Qualcomm units which are not financed by Lessor provided such actions do not cause damage to the Equipment.

To ensure compliance with the foregoing, Lessor shall have the right, at any time upon prior notice, to enter Lessee's premises or elsewhere to inspect the Equipment or to observe its use. All improvements and alterations, other than improvements which can be readily removed without causing damage to the Equipment and without rendering the Equipment unable to comply with law, shall become part of the Equipment and shall be the property of Lessor.

12.   LOSS AND DAMAGE. Lessee hereby assumes the risk of loss, including theft or destruction, and the risk of damage to the Equipment, from any and every cause whatsoever, whether or not such loss is covered by insurance. Loss or damage to the Equipment, or any part thereof, shall not relieve Lessee of any obligation under this Lease.

If any item of Equipment is damaged or destroyed in an accident or other occurrence or confiscated by any governmental authority or subjected to any tax lien or is stolen, abandoned or subjected to undue peril, Lessee will notify Lessor within ten (10) days of such occurrence or condition.

If any item of Equipment is damaged and is in a condition which Lessor believes may be reasonably repaired, Lessee shall repair the same to good working order. If any item of Equipment is in a condition which Lessor believes is beyond reasonable repair, or with respect to any other occurrence or condition set forth above, Lessor may terminate this Lease with respect to

 Mercedes-Benz
Credit Corporation

# Mercedes-Benz Credit Corporation
## LEASE AGREEMENT
(Closed-End)

that Equipment immediately. If the Lease is terminated, Lessee's termination liability shall be the amount which Lessee would have to pay if Lessee had defaulted on the terms of the Lease as set forth in Paragraph 14 hereof, less the proceeds Lessor receives from the insurance provided by Lessee, if any. Lessee expressly understands and agrees that in the event of a total loss, Lessee's insurance policy may not be sufficient to completely satisfy Lessee's indebtedness, and Lessee agrees that in such event Lessee shall be liable for, and shall pay Lessor upon demand therefor, the amount of any such deficiency.

13. SPECIAL REPRESENTATIONS, WARRANTIES AND COVENANTS OF LESSEE. Lessee represents, warrants and covenants to Lessor that: (a) the Equipment will not be used outside of the United States during more than 50 percent of any calendar year or partial calendar year during the term of this Lease; (b) Lessee is not and will not become an organization exempt from the tax imposed by Chapter 1 of the Internal Revenue Code of 1986 nor will Lessee allow any such entity to use the Equipment; and (c) Lessee is not the United States, any State (including the District of Columbia) or political subdivision thereof, or any agency or instrumentality of the United States, any State or political subdivision thereof or any international organization, nor will Lessee allow any such entity to use the Equipment. Lessee acknowledges that if any representation, warranty or covenant herein is false or if it takes any action or omits to take any action which causes any such representation, warranty or covenant to be false or to be breached, Lessor, or the affiliate group of which it is a member, may suffer adverse tax consequences. Accordingly, Lessee agrees that if it breaches any such representation, warranty or covenant or if the same shall be or become false, this Lease shall be deemed to be in default and Lessee shall be liable to Lessor in the manner and for the amounts specified in Section 14 hereof.

14. DEFAULT; LESSOR'S REMEDIES. Time is of the essence in this Lease, and Lessor may declare this Lease to be in default and terminated upon the occurrence of any of the following events: (a) Lessee's failure to pay, following the expiration of fifteen (15) days from the sending by Lessor of a written notice of default, the full amount of any payment required hereunder or under any other loan, retail installment contract or lease with Lessor or any other person or shall default in the performance of any of the obligations or covenants hereunder or thereunder, including, without limitation, rent, taxes, liens, insurance, indemnification, repair or other charge; or (b) the making of any false or misleading statement by Lessee prior to or in connection with this Lease; or (c) Lessee's death, dissolution, insolvency or other termination of existence; or (d) Lessee's becoming the subject of a petition in bankruptcy, either voluntarily or involuntarily, or making an assignment for the benefit of creditors, or being named or subjected to a suit for the appointment of a receiver, or (e) seizure of or levy upon the Equipment by reason of any legal or governmental process directed against Lessee, or (f) any bankruptcy, insolvency, termination or default of any guarantor of Lessee; (g) if any guaranty supporting Lessee's obligations hereunder shall fail to remain in full force and effect; or (h) Lessor in good faith believes the prospect for performance or payment by Lessee is substantially impaired.

Upon Lessee's default, Lessee shall be liable for, and shall pay Lessor upon demand liquidated damages: the applicable amount set forth on the attached Stipulated Loss Schedule, plus any and all other payments due and owing at the time of default (collectively, the "Default Liability").

In the event of Lessee's default, Lessee agrees to surrender the Equipment to Lessor at such location as Lessor may designate, and agrees that Lessor may take possession of the Equipment wherever the same may be found, whether on Lessee's premises or elsewhere, in accordance with applicable law. Lessee further agrees that any and all rights or interests Lessee may have in the Equipment shall be extinguished upon Lessee's default. Lessor agrees that the Equipment may be surrendered at Transwest Trucks, Inc. in Denver, Colorado or Transwest Trucks, Inc. in Albuquerque, New Mexico.

If Lessor obtains possession of the Equipment following Lessee's default, Lessor shall dispose of the Equipment by public or private sale in the wholesale or retail market, and such disposition may be with or without notice to Lessee. Following any such sale, Lessor shall deduct from the Default Liability the amount of any proceeds obtained upon disposition of the Equipment, less any costs or expenses incurred by Lessor in connection with the repossession, storage, restoration and/or disposition of the Equipment.

Lessor may assess, and Lessee will be liable for, interest on the total amounts Lessee may owe to Lessor from time to time by reason of Lessee's default at the rate of eighteen percent (18%) per annum, unless a lower rate is required by applicable law, in which case that rate shall apply, both before and after judgment.

Mercedes-Benz
Credit Corporation

Mercedes-Benz Credit Corporation
**LEASE AGREEMENT**
(Closed-End)

---

Lessee understands and agrees that the remedies provided under this Lease in favor of Lessor upon default shall not be exclusive, but shall be cumulative and in addition to any other remedies available to Lessor, whether existing in law, equity or bankruptcy.

15. **SURRENDER/CONDITION OF EQUIPMENT.** Upon the expiration of this Lease, Lessee shall, at Lessee's expense, assemble and return the Equipment unencumbered at Lessor's place of business, or at such other place as Lessor specifies (Lessor agrees that the Equipment may be surrendered at Transwest Trucks, Inc. in Denver, Colorado or Transwest Trucks, Inc. in Albuquerque, New Mexico) in the same condition, appearance and functional order as received, reasonable and ordinary wear and tear excepted and: (a) the mileage as shown on the odometer and/or hubodometer is accurate and that the Equipment will have accumulated no more than 144,000 miles per year, total mileage in no event exceeding 504,000 miles per 42-month period, and any and all miles above 504,000 miles are subject to an excess mileage charge of five cents ($.05) per mile and, (b) at the time of surrender the Equipment is in roadworthy condition capable of passing any applicable state or federal safety inspection, and meets the following requirements:

A. Engine, Transmission, Rear Axle

  1. To be in sound and roadworthy operating condition, free of mechanical defects, capable of passing published guidelines for used components by the respective manufacturers. All components must function as originally designed. Engines must pass specific tests for horsepower, crank case pressure, manifold pressure and fuel delivery specifications (Lessee shall not be liable for the cost of the test).

  2. All electronic engine passwords must be reset to "00" at time of surrender.

  3. Batteries must be capable of holding a charge and starting the engine.

  4. No fluid or exhaust leaks.

B. Chassis, Frame, Suspension and Fifth Wheel

  1. Frame, springs, suspension components and axle housings shall be free of cracks or breaks, in good condition and maintained per OEM recommended service standards.

  2. Fifth Wheel shall be in good operating condition.

C. Cab and Interior

  1. No accidental exterior damage of bumpers, fairings, side extenders or any cab sheet metal.

  2. Cab sheet metal shall be free of rust or corrosion.

  3. No holes, rock chips or fractures in windshield, sleeper skylight or cab side glass.

  4. Interior upholstery to be in good condition, free of rips, tears or holes.

  5. Cab heater, air conditioner, all gauges, lights, controls and radios are to be as originally installed and in good operating condition.

  6. All exterior decals must be removed and the underlying surface in good condition, free of cracks or peeling.

  7. Paint shall be original paint or equivalent

Mercedes-Benz Credit Corporation
**LEASE AGREEMENT**
(Closed-End)

D. Tires

   1. Tires shall have 10/32 or better remaining tread depth and be free of cuts, cracks or excessive alignment and mechanical wear.

   2. Front to be matched original tread (no recaps).

   3. Rear to be matched original or recaps (first generation recaps only).

   4. Trailer tires or regrooved tires are not acceptable.

   5. All tires must pass D.O.T. specifications.

E. Brakes

   1. Brake pads at each wheel to have a minimum 1/2 inch of remaining lining depth (including the backing plate).

   2. Brake drums shall be in good condition with no excessive wear.

F. D.O.T. Inspection

   1. Each Truck must be capable of passing a D.O.T. inspection.

16. **PURCHASE OPTION.** It is understood and agreed that Lessee has no option to purchase the Equipment at any time; however, Lessee may have the opportunity to purchase the Equipment upon the expiration of the Lease for the fair market value of same as determined by Lessor as of such Lease expiration date. In that event, Lessee must pay any official fees and taxes assessed in connection with the purchase, plus any other amounts due hereunder but not paid at the time of termination. Lessee expressly understands that Lessee shall have absolutely no equity or other ownership rights in the Equipment unless and until Lessee purchases said Equipment pursuant to this Section.

17. **ADDITIONAL SECURITY.** To further secure the performance of Lessee's obligations to Lessor, hereunder or otherwise, Lessee hereby grants to Lessor a security interest in (a) each and every vehicle purchased by Lessee and financed by Mercedes-Benz Credit Corporation, and (b) each and every vehicle leased by Lessee from Mercedes-Benz Credit Corporation (Lessee's interest in said leased vehicles being assigned to the full extent of Lessee's interest therein).

18. **DISCLAIMER OF WARRANTIES. LESSOR IS NOT THE PRODUCER, MANUFACTURER OR DESIGNER OF THE EQUIPMENT, AND LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THIS LEASE OR THE EQUIPMENT, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR INTENDED USE. LESSOR SPECIFICALLY DISCLAIMS ANY AND ALL LIABILITY FOR CONSEQUENTIAL DAMAGES.**

Lessor agrees, however, to assign to Lessee all of the manufacturer's standard warranties applicable to the Equipment, together with any rights and remedies afforded thereunder, to the extent that those warranties, rights and remedies are assignable.

19. **ENTIRE AGREEMENT; WAIVER.** This Lease and the Schedule(s) referred to herein constitute the entire agreement of the parties hereto. No waiver or modification of this Lease or any Schedule shall be effective unless in writing and signed by both parties. No waiver by Lessor of any obligation of Lessee under this Lease shall be deemed a waiver of Lessor's right to subsequent or other full and timely performance.

20. **BINDING ON SUCCESSORS AND PERMITTED ASSIGNS.** This Lease shall be binding upon and inure to the benefit of any successors and permitted assigns of the parties hereto.

**Mercedes-Benz Credit Corporation**
**LEASE AGREEMENT**
(Closed-End)

21.   COSTS AND ATTORNEY'S FEES.   If Lessor employs an agent or other party for purposes of collection or repossession, or refers this Lease to an attorney for purposes of collection, repossession or enforcement of Lessor's interests herein, Lessee agrees to reimburse Lessor upon Lessor's demand for all of Lessor's repossession costs, attorney's fees and expenses to the extent permitted by applicable state law.

22.   NOTICES.   All notices and payments shall be mailed to the respective parties at the addresses set forth above, or such other address as a party may provide to the other party in writing.

23.   GOVERNING LAW; JURISDICTION.   This Lease shall be deemed to have been made in the state named in Lessor's address above, and shall be interpreted, and the rights and liabilities of the parties determined, by the laws and courts of that state, to the exclusion of the courts of any other state or country; provided, however, that Lessor shall have the right, but not the obligation, to litigate in any state or country in which Lessee, the Equipment, or any of Lessee's or any guarantor's assets are located. LESSEE WAIVES ANY AND ALL RIGHT TO A JURY TRIAL REGARDING ANY DISPUTE ARISING HEREUNDER.

24.   SEVERABILITY.   If any of the provisions of this Lease are prohibited by or held invalid under applicable laws or regulations of any jurisdiction in which this Lease is sought to be enforced, then that provision shall be considered inapplicable and omitted but shall not invalidate the remaining provisions.

25.   HEADINGS.   Headings at the beginning of each section are solely for the convenience of the parties and shall not be considered when interpreting this Lease.

BY SIGNING BELOW, LESSEE ACKNOWLEDGES THAT LESSOR'S SIGNATURE ON THIS LEASE WILL HAVE THE EFFECT OF ASSIGNING ALL RIGHT, TITLE AND INTEREST OF LESSOR IN AND TO THIS LEASE AND THE EQUIPMENT TO MERCEDES-BENZ CREDIT CORPORATION, AND THAT LESSEE ACCEPTS THE TERMS AND CONDITIONS OF THIS LEASE.

I HAVE RECEIVED AND READ A COMPLETED COPY OF THIS LEASE BEFORE SIGNING BELOW.

Lessee:   Westway Express, Inc.

By:

Title:   Senior Vice President

BY SIGNING BELOW, LESSOR ACCEPTS THE TERMS AND CONDITIONS OF THIS LEASE AND ASSIGNS ALL RIGHT, TITLE AND INTEREST IN AND TO THIS LEASE AND THE EQUIPMENT TO MERCEDES-BENZ CREDIT CORPORATION PURSUANT TO THE TERMS OF THE EQUIPMENT PURCHASE AND LEASE ASSIGNMENT AGREEMENT BY AND BETWEEN LESSOR AND MERCEDES-BENZ CREDIT CORPORATION.

Lessor:   TransWest Trucks, Inc.

By:

Title:   Finance Manager

@007

JAN 8 '98 15:11 FROM MERCEDES BENZ CREDIT TO 915037358591 PAGE.002/002

## GUARANTY OF FMDC

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned FREIGHTLINER MARKET DEVELOPMENT CORPORATION (hereinafter called "FMDC") does hereby unconditionally guaranty to MERCEDES-BENZ CREDIT CORPORATION (hereinafter called "MBCC") that WestWay Express, Inc. (hereinafter called "Debtor") shall promptly and fully pay any and all indebtedness which now exists and/or which may hereafter accrue in any manner from said Debtor to said MBCC under that Closed-End Lease Agreement dated _____ June 15, _____, 1998 (hereinafter called the "Indebtedness"). FMDC promises to pay any and all of the Indebtedness, forthwith, upon demand, without relief from valuation and appraisement laws.

FMDC waives all notice of acceptance of this Guaranty by MBCC; all notice of the extension of credit from time to time given by MBCC to Debtor; and all notice of the amount of the Indebtedness. FMDC acknowledges that it has reviewed the Loan and Security Agreement and finds same acceptable in all respects. FMDC agrees that all loan balances as shown on the books of MBCC shall be deemed to be conclusive. If FMDC desires at any time to ascertain the amount of liability accrued under this guaranty, it may make inquiry from MBCC.

FMDC hereby waives any rights it may have to limit the amount of the Indebtedness. FMDC further waives all rights which it has or may have by statute or otherwise to require MBCC to institute suit against Debtor or to exhaust its rights or remedies against Debtor. FMDC hereunder and being bound to the payment of the Indebtedness as fully as if the Indebtedness was directly owing to MBCC by it and as fully as if FMDC was a joint maker with Debtor with respect to the Indebtedness. FMDC further waives notice of adverse change in Debtor's financial condition or of any other fact which might materially increase FMDC's risk. It is specifically agreed that MBCC is not required to exercise diligence to enforce its rights against Debtor. FMDC hereby waives for itself, its successors and assigns, any rights whatsoever which it may acquire by law or otherwise to any equitable assignment of any or all of any security which MBCC may hold.

FMDC agrees that it cannot avail itself of any defense whatsoever which Debtor may have against MBCC other than the payment of the Indebtedness. FMDC hereby waives all defenses given to sureties or guarantors at law or in equity other than the payment of the Indebtedness, and the fact that certain of said defenses are hereby expressly mentioned does not mean that other defenses are not also waived. It being expressly agreed that MBCC cannot prejudice its rights against FMDC by any act or omission on its part with respect to the Indebtedness. All remedies or actions for the enforcement by MBCC of the payment of the Indebtedness are cumulative and the pursuit of one shall not preclude the enforcement of any other rights or remedies.

It is understood and agreed that this Guaranty shall be governed by and construed, in all respects, in accordance with the laws of the State of Connecticut.

This Guaranty constitutes the entire understanding of the parties, and no waivers or modifications shall be valid unless written upon or attached to this Guaranty.

This Guaranty shall extend to and bind the successors and assigns of FMDC.

This Guaranty shall inure to the benefit of all transferees, assignees and/or endorsers of MBCC of any part or parts or all of the Indebtedness.

IN WITNESS WHEREOF, FMDC has hereunto subscribed its name this 30 day of ___March___, 1998

FREIGHTLINER MARKET DEVELOPMENT CORPORATION

By:_____

Title:_____TREASURER_____

l:\lcz_orig\fmdcltd.gr

## EXHIBIT B

105   007348-0147

Mercedes-Benz Credit Corporation

# TRANSFER OF INTEREST AND ASSUMPTION OF OBLIGATION UNDER A MOTOR VEHICLE LEASE AGREEMENT

count # 01-200-37452-01-20105

FOR VALUE RECEIVED, and subject to the consent of Mercedes-Benz Credit Corporation (MBCC), the undersigned **Westway Express, Inc.** Lessee/Transferor(s) hereby transfers to **Dick Simon Trucking, Inc.,** Transferee(s) all of Transferor's right, title and interest in and to the vehicle(s) described as: **the One (1) 1999 Freightliner Serial No. See Attached Property Schedule** subject to Lessee Agreement dated **June 15, 1998** between Transferor(s) (the Lease), and all the Transferor's obligations under the Lease.

Transferor hereby agrees that this transfer shall in no way operate to relieve Transferor from its obligations under the Lease (a copy of which is attached), and Transferor hereby agrees that the time for making payments for any or all of the installments due or to become due under the Lease may be extended or the Lease in any other manner changed at the option of MBCC without Transferor's consent and that any such extensions or changes shall not relieve Transferor from liability under the Lease. Transferor hereby appoints MBCC as its attorney-in-fact to execute and file on its behalf all official forms necessary to transfer Transferor's right, title and interest in all vehicles described above.

Lessee/Transferor: **Westway Express, Inc.**

Signature:_____

Title:_____

Address: **5601 SAN FRANCISCO RD NE , ALBUQUERQUE, NM 87109-4603**

Additional Guarantors:

**Westernway Holdings Co.      N.W. Transport Service, Inc.      FMDC**

Signature: _____   _____   _____

Date: _____   _____   _____

Guarantor: **SLT Express Inc.**

Signature:_____

Date:_____

*SAMPLE OF 50*

Subscribed and sworn to before me this _____ day of _____, 20___

_____
Notary Public

My Commission expires:_____

FOR AND IN CONSIDERATION OF THE FOREGOING, and subject to the revision agreement and its accompanying schedule entered into on this date between MBCC and Transferee, attached hereto and incorporated herein by this reference, the terms of which shall govern in the event of inconsistency ("revision Agreement"), Transferee hereby agrees to make all payments now due or to become due under the Lease and further agrees to comply with and be bound by each and all of the terms and conditions of the Lease with **Fifteen (15)** remaining payments of **$1,416.74,** beginning **September 15, 2000,** and continuing on the same day every month thereafter. The applicable residual value at maturity is **$39,418.47.** This lease will mature on **January 14, 2002** at which time all remaining obligations of Lessee under the Lease must be performed. Provided, however, the foregoing terms of repayment shall automatically be modified upon execution of the revision agreement. Group A of the Revision Agreement Schedule refers to the modified payment terms for the Lease Schedule to which this Transfer pertains.

Transferee hereby appoints MBCC as its attorney-in-fact to execute and file on its behalf all official forms necessary to transfer its right, title and interest in the above-described vehicle(s). Transferee hereby acknowledges receipt of a copy of the Lease.

Transferee: **Dick Simon Trucking, Inc.**

Signature:_____

Title:_____

Address: **5175 West 2100 South, West Valley, UT 84120**

Guarantor: **FMDC**

Signature:_____   Date:_____

Guarantor.

Signature:_____   Date:_____

Subscribed and sworn to before me this __15th__ day of ____

_____
Notary Public

WILLIAM J. BAKER
NOTARY PUBLIC • STATE OF UTAH
5175 WEST 2100 SOUTH
WEST VALLEY CITY, UTAH  84120
COMM. EXP. MAR. 11, 2003

expires: __March 11, 2003__

Mercedes-Benz Credit Corporation hereby consents to the transfer of the above-described vehicle(s) and corresponding Lease obligations subject to the terms of the Lease..

MERCEDES-BENZ CREDIT CORPORATION

Dated this _____ day of _____ , 20___     By _____

# EXHIBIT C


Mercedes-Benz
Credit Corporation

**Mercedes-Benz Credit Corporation**

20186

007348-0147

Lease Schedule A

Date: 6/15/98          This Schedule A refers to Lease Agreement dated    6/15/98

(If no Lease date is set forth in the preceding sentence, then the most recent applicable Lease Agreement between Lessor and Lessee shall govern this Schedule A.)

**BASE LOCATION:**

Street Address:    4359 West 36th

County: COOK      City: CHICAGO      State: ILLINOIS      Zip: 60632

**PROPERTY SCHEDULE:**

| Year | Make | Model | Serial Number | Delivery Date | Capitalized Cost | Residual Value | Term in Months |
|------|------|-------|---------------|---------------|------------------|----------------|----------------|
| 1999 | Freightliner | C-120 | 1FUY8SFB4XPA32112 | 6/15/98 | $K2,899.00 | $39,418.47 | 42 |
| N/A | | | | | | N/A | N/A |
| N/A | | | | | | N/A | N/A |

| CAPITALIZED COST AND MONTHLY PAYMENTS | | INITIAL AMOUNTS DUE: | |
|---|---|---|---|
| Gross Capitalized Cost | $42,899.00 | Capitalized Cost Reduction | $0.00 |
| Capitalized Cost Reduction | $0.00 | Refundable Security Deposit | |
| Adjusted Capitalized Cost | $42,899.00 | License/Registration Fees | |
| Base Monthly Lease Payment | $1,416.74 | First TOTAL Monthly Lease Payment | $0.00 |
| Monthly Service/Maintenance Contract Cost | | State/Use Tax on Initial Amounts Due: | |
| MBCC PDI | $0.00 | State | $0.00 |
| State/Use Taxes per month: | | Local | $0.00 |
| State | | County | $0.00 |
| Local | | Other | $0.00 |
| County | | Total | $0.00 |
| TOTAL Monthly Lease Payment | $1,416.74 | | |

**Rent** - Lessee hereby agrees and promises to pay Lessor the total sum of $59,503.08 payable as follows: one payment of $0.00 on N/A, 42 payments of $1,416.74 each, and 0 payments of $0.00 each commencing 7/15/98 and continuing on the same day each month thereafter, except as follows: N/A

**Certificate of Delivery and Acceptance and Date of Placement in Service** - Lessee hereby certifies to Lessor that on and as of the date described above as "Delivery Date", the equipment described herein: (1) is tangible personal property and (2) has been delivered to and is in possession of the Lessee. Lessee also represents, warrants, and certifies that: (1) the equipment was delivered to its location and (2) the equipment is available for use and placed in service by Lessee on the above-described "Delivery Date".

**Ratification and Affirmation of Representations, Warranties and Covenants** - Lessee hereby agrees that that its warranties and covenants made in the Lease Agreement are approved, ratified and affirmed in all aspects as of the date of this Lease Schedule and confirms that the representations made in the Lease Agreement and Statement are, as of the date of this Lease Schedule, true, accurate and complete in all aspects. Lessor and Lessee hereby characterize this Lease Schedule as a separate lease with respect to each item of equipment set forth herein.

LESSOR AND LESSEE HEREBY ACKNOWLEDGE THAT LESSOR'S SIGNATURE ON THIS LEASE SCHEDULE SHALL CONSTITUTE AN ASSIGNMENT OF ALL LESSOR'S RIGHT, TITLE, AND INTEREST IN AND TO THIS SCHEDULE AND THE EQUIPMENT LEASED HEREUNDER TO MERCEDES-BENZ CREDIT CORPORATION PURSUANT TO THE TERMS OF THE EQUIPMENT PURCHASE AND LEASE ASSIGNMENT AGREEMENT BY AND BETWEEN LESSOR AND MERCEDES-BENZ CREDIT CORPORATION.

TRANSWEST, INC.                          WESTWAY EXPRESS, INC.
(LESSOR)                                 (LESSEE)

By                                       By

Title: Finance Manager                   Title: Sr. V.P.



## REVISION AGREEMENT
## MOTOR VEHICLE LEASE AGREEMENT
Original Acct #See Revision Schedule
DCN #See Revision Schedule

Mercedes-Benz
Credit Corporation

FOR VALUABLE CONSIDERATION, it is mutually agreed that the Motor Vehicle Lease Agreement dated (See Effective Date on Revision Schedule), by and between Mercedes-Benz Credit Corporation (MBCC) as Lessor and Dick Simon Trucking, Inc. as Lessee covering:

See Property Schedule Addendum's, attached hereto

be and hereby is amended as follows:

1.  Rent shall be payable in accordance with the Revision Agreement Schedule in installments commencing on April 1, 2001, and continuing on first date every month thereafter, for the number of payments shown on such Schedule, until accounts are paid in full. This lease will mature on the Lease Maturity date reflected on the Revision Agreement Schedule, at which time all of Lessee's obligations under the lease must be fully performed.

2.  The Above Figures Do Not Include Monthly Sales Use Tax Or Personal Property Tax, Which May Be Due Depending Upon The Garaged Location Of The Vehicle(S).

3.  The residual value at maturity is not applicable, as this is a fair market value Lease, and Lessee shall not be responsible for any guaranteed value at the end of the Lease term.

4.  Lessor agrees that the Equipment may be surrendered at the expiration of the Lease to a Salt Lake City, Utah location designated by Lessor or to Lessee's place of business in Salt Lake City, Utah.

5.  Section 15 of the Lease pertaining to condition of the Equipment on surrender shall be modified as set forth in the attached Exhibit A.

Except for the modifications stated above, the terms of the Lease shall remain in full force and effect. This Agreement will become effective upon its acceptance by MBCC.

Calculations as of January 22, 2001

| | | |
|---|---|---|
| Revision Fee | $ | 0.00 |
| Delinquency Charges | $ | 0.00 |
| Miscellaneous Charges | $ | 0.00 |
| Total Due Up Front | $ | 0.00 |

LESSEE: Dick Simon Trucking, Inc.

Signature: _____

Title (if applicable): __CFO__

Date: __3/15/01__

CORP. GUARANTOR: N/A

Signature: _____

Title (if applicable): _____

Date: _____

GUARANTOR: N/A

Signature: _____

Title (if applicable): _____

Date: _____
APPROVAL:
MERCEDES-BENZ CREDIT CORPORATION

By: _____
        Jim Hartz
Title: __Fleet Manager__

Date: _____



**EXHIBIT D**

**Dick Simon Trucking, Inc.**
Revision Agreement Schedule

| Group | Account # | DCN | Effective Date | # of Pmts | pmt amount | rent pmt commence date | # of Pmts | pmt amount | rent pmt commence date | Residual Value | Lease Maturity | Total Revision Fee Due | Late Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Group A | 01200374520120105 | 00734B-0147 | 05/15/95 | 1 | $1,430.00 | 04/01/01 | 9 | $1,100.00 | 05/01/01 | 54,900.65 | 01/31/02 | $0.00 | $0.00 |
| Group A | 01200374520120106 | 00734B-0148 | 06/19/96 | 1 | $11,440.00 | 04/01/01 | 9 | $8,800.00 | 05/01/01 | 444,013.60 | 01/31/02 | $0.00 | $0.00 |
| Group A | 01200374520120107 | 00734B-0149 | 06/24/98 | 1 | $11,440.00 | 04/01/01 | 9 | $8,800.00 | 05/01/01 | 439,971.63 | 01/31/02 | $0.00 | $0.00 |
| Group B | 01200374520120108 | 00734B-0150 | 07/01/98 | 1 | $10,010.00 | 04/01/01 | 10 | $7,700.00 | 05/01/01 | 399,603.34 | 02/28/02 | $0.00 | $0.00 |
| Group C | 01200374520120109 | 00734B-0151 | 08/12/98 | 1 | $12,870.00 | 04/01/01 | 11 | $9,900.00 | 05/01/01 | 500,120.42 | 03/31/02 | $0.00 | $0.00 |
| Group C | 01200374520120110 | 00734B-0152 | 08/26/98 | 1 | $4,290.00 | 04/01/01 | 11 | $3,300.00 | 05/01/01 | 170,690.42 | 03/31/02 | $0.00 | $0.00 |
| Group D | 01200374520120111 | 00734B-0153 | 09/02/98 | 1 | $4,290.00 | 04/01/01 | 12 | $3,300.00 | 05/01/01 | 186,616.14 | 04/30/02 | $0.00 | $0.00 |
| Group D | 01200374520120112 | 00734B-0154 | 09/14/98 | 1 | $4,290.00 | 04/01/01 | 12 | $3,300.00 | 05/01/01 | 236,186.23 | 04/30/02 | $0.00 | $0.00 |
| Group D | 01200374520120113 | 00734B-0155 | 09/16/98 | 1 | $5,720.00 | 04/01/01 | 12 | $4,400.00 | 05/01/01 | 224,203.93 | 04/30/02 | $0.00 | $0.00 |
| Group D | 01200374520120116 | 00734B-0157 | 09/25/98 | 1 | $2,860.00 | 04/01/01 | 12 | $2,200.00 | 05/01/01 | 164,420.37 | 04/30/02 | $0.00 | $0.00 |
| Group D | 01200374520120115 | 00734B-0156 | 09/24/98 | 1 | $7,150.00 | 04/01/01 | 12 | $5,500.00 | 05/01/01 | 265,486.66 | 04/30/02 | $0.00 | $0.00 |
| Group E | 01200374520120116 | 00734B-0158 | 10/01/98 | 1 | $4,290.00 | 04/01/01 | 13 | $3,300.00 | 05/01/01 | 186,182.79 | 05/31/02 | $0.00 | $0.00 |
| Group E | 01200374520120117 | 00734B-0159 | 10/06/98 | 1 | $10,010.00 | 04/01/01 | 13 | $7,700.00 | 05/01/01 | 526,608.91 | 05/31/02 | $0.00 | $0.00 |
| Group E | 01200374520120118 | 00734B-0160 | 10/13/98 | 1 | $4,290.00 | 04/01/01 | 13 | $3,300.00 | 05/01/01 | 185,077.19 | 05/31/02 | $0.00 | $0.00 |
| Group E | 01200374520120119 | 00734B-0161 | 10/20/98 | 1 | $5,720.00 | 04/01/01 | 13 | $4,400.00 | 05/01/01 | 220,444.62 | 05/31/02 | $0.00 | $0.00 |
| Group F | 01200374520120120 | 00734B-0162 | 11/03/98 | 1 | $12,870.00 | 04/01/01 | 14 | $9,900.00 | 05/01/01 | 498,861.43 | 06/30/02 | $0.00 | $0.00 |
| Group F | 01200374520120121 | 00734B-0163 | 11/17/98 | 1 | $11,440.00 | 04/01/01 | 14 | $8,800.00 | 05/01/01 | 446,133.39 | 06/30/02 | $0.00 | $0.00 |
| Group G | 01200374520120122 | 00734B-0164 | 12/02/98 | 1 | $5,720.00 | 04/01/01 | 15 | $4,400.00 | 05/01/01 | 223,950.21 | 07/31/02 | $0.00 | $0.00 |
| Group G | 01200374520120123 | 00734B-0165 | 12/02/98 | 1 | $10,010.00 | 04/01/01 | 15 | $7,700.00 | 05/01/01 | 394,085.42 | 07/31/02 | $0.00 | $0.00 |
| Group G | 01200374520120124 | 00734B-0166 | 12/02/98 | 1 | $4,290.00 | 04/01/01 | 15 | $3,300.00 | 05/01/01 | 169,496.60 | 07/31/02 | $0.00 | $0.00 |
| Group G | 01200374520120125 | 00734B-0166 | 12/09/98 | 1 | $8,580.00 | 04/01/01 | 15 | $6,600.00 | 05/01/01 | 339,539.75 | 07/31/02 | $0.00 | $0.00 |
| Group G | 01200374520120126 | 00734B-0167 | 12/09/98 | 1 | $2,860.00 | 04/01/01 | 15 | $2,200.00 | 05/01/01 | 111,824.75 | 07/31/02 | $0.00 | $0.00 |
| Group G | 01200374520120127 | 00734B-0168 | 12/09/98 | 1 | $1,430.00 | 04/01/01 | 15 | $1,100.00 | 05/01/01 | 56,222.51 | 07/31/02 | $0.00 | $0.00 |
| Group G | 01200374520120128 | 00734B-0169 | 12/16/98 | 1 | $8,580.00 | 04/01/01 | 15 | $6,600.00 | 05/01/01 | 338,539.75 | 07/31/02 | $0.00 | $0.00 |
| Group G | 01200374520120129 | 00734B-0170 | 12/16/98 | 1 | $2,860.00 | 04/01/01 | 15 | $2,200.00 | 05/01/01 | 111,824.75 | 07/31/02 | $0.00 | $0.00 |
| Group G | 01200374520120130 | 00734B-0171 | 12/16/98 | 1 | $2,860.00 | 04/01/01 | 15 | $2,200.00 | 05/01/01 | 112,444.63 | 07/31/02 | $0.00 | $0.00 |
| Group H | 01200374520120131 | 00734B-0175 | 03/16/99 | 1 | $12,870.00 | 04/01/01 | 18 | $9,900.00 | 05/01/01 | 524,056.30 | 10/31/02 | $0.00 | $0.00 |
| Group H | 01200374520120132 | 00734B-0174 | 03/22/99 | 1 | $5,720.00 | 04/01/01 | 18 | $4,400.00 | 05/01/01 | 235,473.89 | 10/31/02 | $0.00 | $0.00 |
| Group H | 01200374520120133 | 00734B-0176 | 01/11/99 | 1 | $11,440.00 | 04/01/01 | 18 | $8,800.00 | 05/01/01 | 457,547.92 | 10/31/02 | $0.00 | $0.00 |
| Group H | 01200374520120135 | 00734B-0178 | 03/26/99 | 1 | $21,450.00 | 04/01/01 | 13 | $16,500.00 | 05/01/01 | 880,214.03 | 10/31/02 | $0.00 | $0.00 |
| Group I | 01200374520120134 | 00734B-0177 | 04/05/99 | 1 | $7,150.00 | 04/01/01 | 19 | $5,500.00 | 05/01/01 | 293,254.63 | 11/30/02 | $0.00 | $0.00 |
| Group I | 01200374520120136 | 00734B-0180 | 04/15/99 | 1 | $10,010.00 | 04/01/01 | 19 | $7,700.00 | 05/01/01 | 409,442.48 | 11/30/02 | $0.00 | $0.00 |
| Group I | 01200374520120137 | 00734B-0179 | 04/27/99 | 1 | $7,150.00 | 04/01/01 | 19 | $5,500.00 | 05/01/01 | 292,705.36 | 11/30/02 | $0.00 | $0.00 |
| Group J | 01200374520120138 | 00734B-0181 | 05/03/99 | 1 | $5,720.00 | 04/01/01 | 20 | $4,400.00 | 05/01/01 | 321,080.74 | 12/31/02 | $0.00 | $0.00 |
| Group J | 01200374520120139 | 00734B-0182 | 05/10/99 | 1 | $8,580.00 | 04/01/01 | 20 | $6,600.00 | 05/01/01 | 354,913.63 | 12/31/02 | $0.00 | $0.00 |
| Group J | 01200374520120140 | 00734B-0183 | 05/17/99 | 1 | $12,870.00 | 04/01/01 | 20 | $9,900.00 | 05/01/01 | 535,170.16 | 12/31/02 | $0.00 | $0.00 |
| Group J | 01200374520120141 | 00734B-0185 | 05/20/99 | 1 | $1,430.00 | 04/01/01 | 20 | $1,100.00 | 05/01/01 | 59,223.34 | 12/31/02 | $0.00 | $0.00 |

| | Account # | DCN | Effective Date | # of Pmts | rent pmt pmt amount | rent pmt commence date | # of Pmts | pmt amount | rent pmt commence date | Residual Value | Lease Maturity | Total Revision Fees Due | Late Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Group J | 0120037452012014 2 | 0073480184 | 05/27/99 | 1 | $2,860.00 | 04/01/01 | 20 | $2,200.00 | 05/01/01 | 121,018.03 | 12/31/02 | $0.00 | $0.00 |
| Group K | 0120037452012014 3 | 0073480185 | 06/01/99 | 1 | $5,720.00 | 04/01/01 | 21 | $4,400.00 | 05/01/01 | 239,311.13 | 01/31/03 | $0.00 | $0.00 |
| Group K | 0120037452012014 4 | 0073480187 | 06/08/99 | 1 | $4,290.00 | 04/01/01 | 21 | $3,300.00 | 05/01/01 | 179,043.90 | 01/31/03 | $0.00 | $0.00 |
| Group K | 0120037452012014 5 | 0073480188 | 06/21/99 | 1 | $5,720.00 | 04/01/01 | 21 | $4,400.00 | 05/01/01 | 238,945.46 | 01/31/03 | $0.00 | $0.00 |
| Group K | 0120037452012014 6 | 0073480169 | 06/29/99 | 1 | $7,150.00 | 04/01/01 | 21 | $5,500.00 | 05/01/01 | 303,960.93 | 01/03/03 | $0.00 | $0.00 |
| Group L | 0120037452012014 7 | 0073480190 | 07/01/99 | 1 | $5,720.00 | 04/01/01 | 22 | $4,400.00 | 05/01/01 | 246,134.54 | 02/28/03 | $0.00 | $0.00 |
| Group L | 0120037452012014 8 | 0073480181 | 07/08/99 | 1 | $1,430.00 | 04/01/01 | 22 | $1,100.00 | 05/01/01 | 61,365.95 | 02/28/03 | $0.00 | $0.00 |
| Group L | 0120037452012014 9 | 0073480192 | 07/22/99 | 1 | $8,580.00 | 04/01/01 | 22 | $6,600.00 | 05/01/01 | 467,983.12 | 02/28/03 | $0.00 | $0.00 |
| Group L | 0120037452012015 0 | 0073480193 | 07/22/99 | 1 | $5,720.00 | 04/01/01 | 22 | $4,400.00 | 05/01/02 | 250,343.11 | 02/28/03 | $0.00 | $0.00 |
| Group M | 0120037452012015 1 | 0073480194 | 08/06/99 | 1 | $10,010.00 | 04/01/01 | 23 | $7,700.00 | 05/01/01 | 432,476.97 | 03/31/03 | $0.00 | $0.00 |
| Group M | 0120037452012015 7 | 0073480209 | 08/23/99 | 1 | $2,860.00 | 04/01/01 | 23 | $2,200.00 | 05/01/01 | 126,358.94 | 03/31/03 | $0.00 | $0.00 |
| Group M | 0120037452012015 8 | 0073480201 | 08/01/99 | 1 | $1,430.00 | 04/01/01 | 23 | $1,100.00 | 05/01/01 | 61,575.44 | 03/31/03 | $0.00 | $0.00 |
| Group O | 0120037452012015 9 | 0073480202 | 07/22/99 | 1 | $7,150.00 | 04/01/01 | 24 | $5,500.00 | 05/01/01 | 318,364.21 | 04/30/03 | $0.00 | $0.00 |
| | | | Totals: | | $344,630.00 | | | $265,100.00 | | $44,485,251.20 | | $0.00 | $0.00 |

Mercedes-Benz
Credit Corporation

Freightliner Financial
Services Ultimate

Purchaser: Dick Simon Trucking, Inc.

Signature: _____

Title _____

Date: 3/15/01

Guarantor: _____    Initials: _____

Guarantor: _____    Initials: _____

08/22/02  17:28 FAX 5037358591          TREASURY                                    ☑009

---

**FREIGHTLINER**                                                **DRAFT/CHECK REQUEST**
**MARKET DEVELOPMENT CORP.**

PAY TO:

Name: DaimlerChrysler Services North America, LLC          Vendor Code:   FCZ2

Address: _____          Document No.:   WESSIM

Lisle                              IL                      Date:   5/28/02
(City)                          (State)      (Zip)

                                                          **AMOUNT:**   8,309,372.17

| | SEPARATE | CHECK CD | | | USED TRUCK CUSTOMER (This will appear on check stub) | | | | |
| HNDL | CHECK | | | | | | | | |

Westway / Dick Simon Trucking

| Truck Id | Qty | Acquisition Amount | O/A | Other O/A | Residual Reserve | Repo Reserve | Total Book Value | Casub | Distribution Account No. | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 25% | 58 | 3,219,161.82 | | | 1,239,265.33 | 136,370.73 | 1,843,525.76 | 302 | 1380-41-00 | 4,730,035.14 |
| 100% | 83 | 5,050,210.35 | | | 1,460,713.14 | 742,987.83 | 2,886,509.36 | | | |
| | | | | | | | | 301 | 21782 | 879,358.66 |
| | | | | | | | | 301 | 21788 | 2,699,978.47 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| TOTAL | 141 | 8,309,372.17 | | | 2,699,978.47 | 879,358.56 | 4,730,035.14 | | | |

Trade Agreement No. and Date          2001-00128

COMMENTS: _____

ORIGINATOR: _____          DATE: 5/28/02

APPROVED BY: _____          DATE: 5/28/02

APPROVED BY: _____          DATE: 5/30/02

APPROVED BY: _____          DATE: 5/31/02

Special Instructions: _____

Route To: _____    Mail Code _____    Phone _____

**EXHIBIT E**

DRAFT CHECK 01-125 XLS                    6/29/02

08/22/02  17:30  FAX 5037358591          TREASURY                    ☑014

**FREIGHTLINER**                                              **DRAFT/CHECK REQUEST**
**MARKET DEVELOPMENT CORP.**

PAY TO:

Name: DaimlerChrysler Services North America, LLC          Vendor Code:  FCZ2

Address: _____                 Document No.:  WESSIM

Lisle _____ IL _____ ____             Date:   6/25/02
(City)                         (State)    (Zip)

                                              **AMOUNT:**   1,747,651.85

| | SEPARATE | | CHECK CD | | | USED TRUCK CUSTOMER (This will appear on check stub) |
| HNDL | CHECK | | | | | |

Westway / Dick Simon Trucking

| Truck Id | Qty | Acquisition Amount | O/A | Other O/A | Residual Reserve | Repo Reserve | Total Book Value | Coaub | Account No. | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 25% | 29 | 1,524,990.39 | | | 621,090.93 | 145,437.29 | 658,462.17 | 302 | 1380-41-00 | 658,462.17 |
| | | 122,661.46 | | | | 122,661.46 | - | | | - |
| | | | | | | | - | | | |
| | | | | | | | - | 301 | 21752 | 265,096.75 |
| | | | | | | | - | 301 | 21753 | 621,090.93 |
| | | | | | | | - | | | |
| | | | | | | | - | | | |
| | | | | | | | - | | | |
| | | | | | | | - | | | |
| | | | | | | | - | | | |
| | | | | | | | - | | | |
| | | | | | | | - | | | |
| | | | | | | | - | | | |
| | | | | | | | - | | | |
| | | | | | | | - | | | |
| | | | | | | | - | | | |
| | | | | | | | - | | | |
| TOTAL | 29 | 1,747,651.85 | - | - | 621,090.93 | 268,098.75 | 658,462.17 | | | |

Trade Agreement No. and Date          2001-00128

COMMENTS:
_____
_____
_____

ORIGINATOR:  _Tina Heuse_                              DATE:  6/25/02

APPROVED BY:  _____                       DATE:  6/25/02

APPROVED BY:  _____ 6/27                       DATE:  6/27/02

APPROVED BY:  _____ 6/27/02                    DATE:  6/27/02

Special Instructions:  _____
_____

Route To:  _____   Mail Code  _____   Phone  _____

DRAFT CHECK 01-128.XLS

**EXHIBIT F**          6/25/02