J. THOMAS BECKETT (5587)
DIANNA M. GIBSON (7533)
ANNE E. RICE (7971)
PARSONS BEHLE & LATIMER
Attorneys for Freightliner
One Utah Center
201 South Main Street, Suite 1800
Post Office Box 45898
Salt Lake City, UT 84145-0898
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

HEARING SETTING:
OCTOBER 21, 2002
10:00 O'CLOCK A.M.

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

In re:

SIMON TRANSPORTATION
SERVICES, INC.; DICK SIMON
TRUCKING, INC.; AND SIMON
TERMINAL, LLC,

Debtors.

Bankruptcy Case No. 02-22906
Bankruptcy Case No. 02-22907
Bankruptcy Case No. 02-24874
(Jointly Administered)

**FREIGHTLINER'S REPLY TO THE RESPONSES OF SIMON AND CENTRAL, AND IN SUPPORT OF ITS OBJECTION TO THE DEBTOR'S SUPPLEMENTAL MOTION FOR AUTHORITY TO ASSUME AND ASSIGN TRADE-BACKS TO CENTRAL**

Judge Glen E. Clark

Freightliner, by and through its undersigned counsel, Parsons Behle & Latimer, respectfully submits this Reply to the Responses of Dick Simon Trucking, Inc. ("Simon") and Central Refrigerated Service, Inc. ("Central") and in Support of Freightliner's

494310.1



0222906D782

Objection to the July 19, 2002 Supplemental Motion of Simon for Authority to Assume and Assign Certain Freightliner Contracts to Central.

## I.
## INTRODUCTION

Simon and Central take different positions on what the evidence at the hearing will show: Simon argues that its "quick sale" to an insider was in the best interest of the estate, and that its "quick sale" included the undisclosed Freightliner Trade-backs. Central focuses on the very novel and incredible argument that the Trade-backs are really *tri-lateral* agreements to which Simon's lessors are also (unknowingly) parties. These theories will be disproved at the hearing.

The purpose of this Reply is limited to addressing the common legal argument contained in Simon and Central's 's Responses: that this Court may in effect re-write section 365 of the United State Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

## II.
## DISCUSSION

A. **The Trade-backs Are Not Assumable Under 11 U.S.C. § 365 Because They Are Not Executory.**

Simon and Central urge this Court to conclude that the Freightliner Trade-backs – which are unexercised options – are "executory" and therefore subject to assumption under Section 365 of the Bankruptcy Code. In so doing, they urge this Court to amend, by judicial interpretation, the plain language of Section 365 and effectively read out of

the statute the term "executory." Simon argues that the real purpose of Section 365 is that "contracts should be assumable and assignable if it will result in a benefit to the estate." (Simon's Response at 13.) Accordingly, Simon argues for this Court either to ignore the term "executory" or to adopt a malleable definition of "executory" that will accommodate what it argues is in the "best interest of the estate." Similarly, Central argues for this Court to focus solely on the "result" that Central favors, and then apply any authority available that will achieve that goal.

These arguments, however, ignore the fundamentals of statutory construction and the Constitutional role of Congress and the federal bankruptcy courts. While Freightliner agrees that the decision to assume or reject a contract is based on whether such action will ultimately be in the "best interest of the estate," such analysis is irrelevant (and secondary) to the threshold question of whether a contract is executory.

1.  **Section 365 Applies Only To "Executory" Contracts.**

Section 365(a) of the Bankruptcy Code provides that a bankruptcy trustee or a debtor in possession, "subject to the court's approval, may assume or reject[1] any *executory* contract or unexpired lease of the debtor." 11 U.S.C. § 365(a) (1988)

---

[1] Generally, assumption and rejection are defined as follows. "Assumption," which finds its meaning in ordinary contract law, "refers to the bankruptcy estate's agreement to take on the *obligations* of the bankruptcy debtor on some *pending* contract or lease. That is, it is the estate's agreement to become administratively obligated on the assumed contract or lease, thereby giving the non-debtor party to the contract or lease priority over other creditors of the debtor." Michael T. Andrew, Executory Contracts Revisited: A Reply to Professor Westbrook, 62 U. Colo. L. Rev. 1, 3 (1991) (emphasis). "Rejection," which has been regarded as an obscure term, allows the trustee to decline the benefits of a contract or lease, "thereby leaving the non-debtor party with just a claim in the eventual distribution of the estate to creditors." Id. at 1, 3.

494310.1                                3

(emphasis added). The plain language of the statute clearly and unambiguously imposes a requirement that contracts be "executory."

    2.    **Fundamentals of Statutory Interpretation Require This Court To Give Effect To The Plain Language Of Section 365 And To The Term "Executory."**

The starting point for interpretation of a statute is the language of the statute itself. See Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990). Statutes contained within the Bankruptcy Code are interpreted no differently. In Gillman v. Mark Oakes Trucking, 171 B.R. 122 (Bankr. D. Utah 1994), this Court stated that "courts should interpret the statutory provisions of the Bankruptcy Code according to their plain meaning, so long as the provision at issue is unambiguous." Id. at 126. Where the language of the statute is sufficiently precise as to indicate congressional intent, there is no need to look behind the plain meaning of the statute. See id. ("The text of the statute itself is the best evidence of congressional intent."). "Courts must presume that Congress says in a statute what it means, and means in a statute what it says." Id. In such a case, the role of the courts is to enforce the statute according to its terms. Id. Where the "statutory language is not explicitly defined, courts should give words their common meaning."[2] Id. Courts should not

---

[2] The Tenth Circuit, along with Utah's federal bankruptcy court, agrees that words should be interpreted according to their plain and common meanings. In Roberts v. United States, 906 F.2d 1440, 1444-45 (10th Cir. 1990) (interpreting bankruptcy code and tax laws), the court reasoned:

    There are several reasons for this general adherence to the words of the statute as commonly understood. First, our limited function, in deference to the legislative process, is to interpret and

494310.1                              4

interpret the plain language contained in statutes in such a way as to render it meaningless. Id. "'The judicial function does not include the power of amendment under the guise of interpretation.'" Roberts v. United States, 906 F.2d 1440, 1444-45 (10th Cir. 1990) (quoting West Coast Hotel Co. v. Parrish, 300 U.S. 379, 404, 57 S.Ct. 578, 587-88, 81 L.Ed. 703 (1937)).

If a statute is ambiguous, courts will look to legislative history to determine legislative intent. See id. However, absent a clearly expressed legislative intention to the contrary, the statutory language must be regarded as conclusive. See Kaiser, 110 S.Ct. at 1575. "Where the terms of a statute are clear and unambiguous, the legislative intent must be derived from it, even if the intent expressed conflicts with the purpose of the statute as set forth in committee reports." 2A Sutherland Statutory Const. § 48.06 (4th ed. 1984). Simon and Central urge a different approach: because the plain language of the statute frustrates the result they favor, they advocate ignoring the plain language.

The issue for this Court to resolve is: How does the term "executory" affect the assumption or rejection of contracts under Section 365, and what test should be applied to determine if a contract is executory?

---

apply the law, not to make it.... Second, federal laws are enacted pursuant to the United States Constitution, which requires the President's consent to enact a law approved by the members of Congress unless two-thirds of the House and Senate override the President's veto.... Committee Reports [or joint statements in lieu of such reports] are not voted on by the full membership of both Houses, nor are they submitted to the President for approval. Third, Congress and the President enact laws against a backdrop of common usage and interpretation (hence, the choice of words used) which should control when words in a statute are applied.... Congress and the President approve or disapprove based upon the language contained in the enactment. (citations omitted).

3. **The Term "Executory" Has Been Defined By The United States Supreme Court and by Congress as a Contract On Which Performance Remains Due On Both Sides.**

Although the Code does not define "executory contract," the United States Supreme Court has interpreted "executory," as used in Section 365, to mean a contract "'on which performance remains due to some extent on both sides.'" National Labor Relations Board v. Bildisco & Bildisco, 465 U.S. 513, 522-23 n.6, 104 S.Ct. 1188, 1194 n.6, 79 L.Ed.2d 482 (1983) (quoting H.R.Rep.No. 595, 95th Cong., 1st Sess. 347 (1977); S.Rep.No.989, 95th Cong., 2nd Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5844, 6303)). The Bildisco Court's definition of "executory" is based on express congressional intent as reflected in the legislative history of Section 365. See id. The definition also is consistent with the common usage of the term "executory."[3] Under the Bildisco definition, unexercised options are not executory: there is no performance due, on either side, under unexercised options such at the Trade-backs.

---

[3] The term "executory contract" — which is the opposite of an "executed contract" — commonly refers to a contract that has been only partially performed. "Executory contract" is defined in Black's Law Dictionary as follows:

> A contract that has not as yet been fully completed or performed. A contract the obligation (performance) of which relates to the future. . . . In the context of Bankruptcy Code, is contract under which obligation of both bankrupt and other party to contract are so far unperformed that failure of either to complete performance would constitue material breach excusing performance of either. . . . *Compare* Executed Contract.

Black's Law Dictionary at 570 (6th ed.) (emphasis added). Black's defines an "executed contract" as a "[c]ontract which has been fully performed by the parties. *If performed in part, it is partially executed (executory)*; if entirely performed, it is fully or wholly executed." See id. at 567 (emphasis added).

a. The Countryman Definition Of "Executory Contract" Is Consistent With Bildisco, Common Usage and Legislative Intent.

The Countryman definition states that "a contract is executory if 'the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." See In re Robert L. Helms Const. & Devel. Co., Inc., 139 F.3d 702, 705 & n.7 (9th Cir. 1998) (quoting Vern Countryman, Executory Contracts in Bankruptcy: Part 1, 57 Minn. L. Rev. 439, 460 (1973)). The Countryman definition is a method of determining which contracts are subject to Section 365. It reflects both the definition of "executory," as intended by Congress, in Bildisco and the true nature of executory contracts—contracts that are only partially performed.

A Utah federal district court in Thomas American Stone & Building, Inc. v. White, 142 B.R. 449, 452-53 (D. Utah 1992), relied on the legislative history and the Countryman definition of "executory" to hold that a fully performed contract was not executory. Id. In fact, the Thomas American Stone court stated: "Because only the rare agreement is without any unperformed obligation on either side courts have construed Congress' intent to be in accord with Professor Countryman's definition of executory contracts." Id. at 453.

Simon argues that Countryman defeats the goal of Section 365, which is to allow assumption or rejection when to do so will benefit the estate. In support, Simon cites to

494310.1                                    7

a Utah Bankruptcy Court decision in In re Booth, 19 B.R. 53, 56 (Bankr. D. Utah 1982). Booth, however, involved the determination of whether a contract for deed, where the debtor was the purchaser, should be classified as a lien or an executory contract. The Booth court was concerned about whether to apply Section 365 to the contract for deed, in light of the consequences of assumption and rejection. The Booth court then held that the contract for deed was a lien, not an executory contract. Id. at 58.

Booth, however, pre-dated the Thomas American Stone decision, and is not controlling on the issue of whether an option is an executory contract, subject to assumption. Although Booth does discuss Section 365, the holding was based on the consequences of assumption and rejection—not on the classification of "executory." Moreover, Booth is not an assumption case, it is not a option case, it does not reject the Countryman definition, and it does not establish the test of "executoriness" to be applied in Utah's federal courts or the Tenth Circuit.

Indeed, since Booth, another Utah federal district court has discussed, in dicta, the executoriness requirement of Section 365. In First Security Bank v. Gillman, 158 B.R. 498 (D. Utah 1993), the Utah federal district court discussed, without resolution, the issue of whether section 365 imposes the requirement that a contract be "executory" before it can be assumed or rejected. Id. at 503 (rejecting non-debtor's argument that trustee was obligated to perform settlement agreement on grounds different than the executory issue). In discussing the "executory" requirement of Section 365, the Gillman

court, quoting from a law review article, noted that the requirement of "executoriness" may be superfluous in the context of rejection. See id. at 503 & n.2 (quoting Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U. Colo. L. Rev. 1 (1991) (stating "the requirement has little or no meaning in the absence of such a decision to assume"). However, with regard to assumption, the Gillman court acknowledged that "executoriness" is a viable requirement. Specifically, the court stated: "administrative priority is accorded only to contracts affirmatively assumed by the trustee and, under the literal reading of § 365 . . ., only executory contracts may be assumed." Id. at 504.

Ultimately, it appears certain that the "executory" requirement, and the Countryman definition, both still survive in this Court.

> b. The Functional Approach To "Executoriness" And The Riodizio Definition Of Executory Contract Are Purely Result-Oriented; Their Focus Solely On The "Best Interest Of The Estate" Essentially Rewrites Section 365 To Eliminate The Term "Executory" And Ignores Clear Legislative Intent.

The only thing that Freightliner, Simon and Central agree upon is that the law of executory contracts is a mess. This mess is largely the result of courts ignoring their obligation to enforce the plain meaning of the statute. Several commentators[4] along

---

[4] See Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U. Colo. L. Rev. 1 (1991); Westbrook, *A Functional Analysis of Executory Contracts*, 74 Minn. L. Rev. 227 (1989); Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439 (1973).

with various federal bankruptcy, district and circuit courts[5] have proposed myriad approaches and definitions for determining whether various types of contracts are subject to assumption or rejection under the Section 365. Simon and Central cite and discuss several cases that reflect these various definitions and approaches. As explained by Central, all of these cases are "result-oriented" to accomplish whatever result is in the best interest of the estate, under the circumstances of that case. And, in fact, most of the cases deal with rejection, not assumption.[6] In reaching the desired

---

[5] See, e.g., In re Jolly, 574 F.2d 349, 351 (6th Cir. 1978) ("The key, it seems to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejections is expected to accomplish."); In re General Dev. Corp., 177 Bankr. 1000, 1012 (S.D. Fla. 1995) (applying functional approach, stating "whether a contract is executory is determined by the benefits that assumption or rejection would produce for the estate."); In re Waldron, 36 B.R. 633, 637 (Bankr. S.D. Fla. 1984), rev'd, 785 F.2d 936 (11th Cir. 1986) (basing determination of executory upon the policy reasons underlying section 365); In re: Seymour, 144 B.R. 524, 529 (Bankr. D. Kan. 1992) (applying functional approach and "do[ing] away entirely with this dubious exercise of finding "executoriness"); In re Gladding Corp., 22 Bankr. 632, 635 (Bankr. D. Mass. 1982) ("[B]ankruptcy courts should not be bound by static definitions of what is an executory contract, but should strive to satisfy the purposes of the Act in conjunction with the goals of the debtor."); In re G-N Partners, 48 B.R. 462, 465 (D. Minn. 1985) ("[W]hat is an executory contract [should be evaluated] in light of the purposes behind § 365 which was to allow a trustee to pick and choose among the debtor's agreements and assume those which benefit the estate and reject those that do not."); In re III Enterprises, Inc. V, 163 B.R. 453, 468 (Bankr. E.D. Pa. 1994) (holding option invalid because it lacked present, separate consideration, and in dicta, reciting Countryman definition and determining option executory without discussion); In re Drexel Burnham Lambert Group, 138 B.R. 687, 708 (Bankr. S.D.N.Y. 1992) (adopting four part test, and rejecting "executory" threshold to assumption and assignment of contracts).

[6] Of interest is that even the proponents of these various approaches to Section 365, in particular one commentator Mr. Michael Andrew, noted that there may be practical reasons why "executoriness" is relevant for assumption, but not for rejection. Mr. Andrew stated:

> One important consequence of this analysis is that, when rejection of a contract is at stake, the definition of an "executory" contract should make no difference (a point on which, as will be seen, Westbrook and I completely agree). Either the contract is "executory" or it is not. If it is, rejection simply assures the non-debtor party of a right to participate in the distribution. [FN30] If it is not, the non-debtor party already has that right, and rejection is unnecessary. But while unnecessary, rejection is also harmless: It does not make the contract obligation somehow vanish, and its "breach" consequence does nothing more than create a claim. Thus, whether the contract is "executory" or not, the result is the same: The non-debtor party has a claim. Obviously, this conclusion has the effect of making definitions of "executoriness"--including Professor Countryman's famous definition [FN31]--superfluous in the rejection context. The failure to recognize that point is at the heart of the modern confusion surrounding "rejection," much of which follows from focusing on the question of which contracts are "executory." As I observed before,

result, the courts have either (1) eliminated the "executory" requirement altogether (e.g., the "Functional Approach"); (2) created a definition of "executory" that categorizes contracts as "executory" if to do so is in the best interest of the estate; or (3) created an entirely new definition of "executory" that fits the facts of that case (e.g., Riodizio). Essentially, the proposition that these cases stand for – and that Simon and Central urge this Court to adopt – is that rules, plain statutory language, congressional rule making and legislative intent mean nothing.

Of the various approaches, Simon urges this Court to adopt either the "Functional Approach" or the Riodizio definition of executory contract and hold that the Trade-backs are executory. While these approaches are slightly different, they share two things in common: the focus of the analysis is the best interest of estate, and they both deal with rejection, not assumption.

    (1)    The Functional Approach is inconsistent with the plain language of Section 365; accordingly, this Court should reject the Functional Approach.

The "Functional Approach" essentially eliminates the "executory" prerequisite to the assumption or rejection of a contract under Section 365. See Simon's Response at 18 (quoting In re Drexel Burnham, 139 B.R. 687, 708 (Bankr. S.D.N.Y. 1992); In re Seymour, 144 B.R. 524, 529 (Bankr. D. Kan. 1992)). The only issue under the "functional"

---

"[t]o ask that question is to suggest irresistibly that rejection must be an important 'power' that the 'executory' contracts definition serves to limit, which in turn suggests that the definition surely must reflect some important bankruptcy policy, rejection its champion."
Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U. Colo. L. Rev. 1, 8-9 (1991).

approach is "whether assumption or rejection of the contract will produce a benefit to the estate and creditors." Id. Accordingly, whether a contract is "executory" is based on the benefit the contract provides to the estate, not the form of the contract. See id. This approach should be rejected because it improperly rewrites Section 365, eliminates the "executory" requirement and effects a judicial amendment of the statute.

> (2) Riodizio and other result-oriented definitions of executory, applied in rejection cases, contradict the plain language of the statute and the legislative intent that only *executory* contracts can be assumed.

In In re Riodizio, Inc., 204 B.R. 417, 423 (Bankr. S.D.N.Y. 1997), the debtor moved to *reject* a stock option agreement (the "warrant"), which granted the non-debtor the option to purchase the debtor's stock at a *di minimus* price. The Riodizio court discussed the nature of options, stating that options are unilateral contracts, "contemplating" performance by two parties but requiring performance only of one, if exercised. After analyzing the various approaches to "executoriness" under Section 365, it concluded that "executoriness lies in the eye of the beholder." Id. Accordingly, the Riodizio court fashioned a new test under which the option at issue would be considered "executory." The Riodizio court stated: "a contract is executory if each side must render performance, on account of an existing legal duty or to fulfill a condition, to obtain the benefit of the other party's performance." Riodizio, 204 B.R. at 424. "[I]f each party must still give something to get something, the contract is executory, and the

debtor must demonstrate whether assumption or rejection confers a net benefit on the estate." Id.

Applying this test, the Riodizio court found that "each party must perform under the warrant in order to obtain the benefits under the *contingent bilateral contract of sale*. To sell the shares and receive payment, the debtor must keep the offer open. To make payment and acquire the shares, [the non-debtor party] must first exercise the option granted under the warrant." Id. The court then found the warrant to be executory because its rejection was in the best interest of the estate. See id. 425.

The Riodizio standard, however, is result-oriented, and clearly crafted intentionally to encompass options within the definition of executory. See id. at 424. Moreover, applying Riodizio to the facts here, it remains questionable whether the Trade-back options are executory. Unlike Riodizio — where the non-debtor could only obtain the stock (benefit) through exercising the option (condition) — Freightliner could still sell trucks to Simon (benefit) without Simon having exercised any of the Trade-back options (condition).

In any event, the effect of the Riodizio analysis is to wipe the word "executory" from the statute and allow the trustee or debtor in possession to "assume or reject *any* contract..." when it is in the best interest of the estate to do so. Freightliner agrees that Section 365 should be applied to allow assumption and rejection to effect the best result for the estate. However, whether assumption or rejection is beneficial to the estate has

494310.1

13

nothing to do with whether a contract is executory. In achieving the goal of Section 365, courts must do so within the constraints of the statute. The Ninth Circuit's en banc decision in Helms, which held that unexercised options are not executory, does exactly that.

    4.    **Even if This Court Does Not Apply The Countryman Definition, Options Are Not Executory Contracts Under Bildisco, Which Reflects The Definition Of Executory Found In Section 365's Legislative History.**

An executory contract, under Section 365, is a contract "'on which performance remains due to some extent on both sides.'" Bildisco, 465 U.S. at 523 n.6, 104 S.Ct. at 1194 n.6. With regard to options, performance is not due on both sides. The contingent nature of the obligations arising from an option agreement make options quite distinguishable from the typical contract. See In re National Financial Realty Trust, 226 B.R. 586, 589 (Bankr. W.D. Ky. 1998). Options, by their very nature, do not become bilateral contracts until they are exercised. See Mills v. Brody, 929 P.2d 360, 364 n.1 (Utah Ct. App. 1996) (repeating general rule that "option agreements become bilateral contracts ... only upon exercise of the option in accordance with its terms."). Until exercised, the parties have no mutual contractual obligations to perform.

For example, under Utah law, an option is not enforceable unless it is strictly and unconditionally exercised. See, e.g., Geisdorf v. Doughty, 972 P.2d 67, 70 & n.1 (Utah 1998). The Utah Supreme Court has held that "'when the optionee decides to exercise his option he must act unconditionally and precisely according to the terms of the

option.'" Id. (stating, "actual exercise of the option must be 'in accordance with its terms'" (citations omitted)). An optionee is to be held to strict, exact compliance with the provisions and restrictions of an option. Id. In fact, Utah courts have held that *"[s]uch strict compliance is necessary before the option becomes 'absolute and binding, . . . a bilateral contract, . . . and an executory contract.'"* Id. (citations omitted) (emphasis added). "When an offer specifies the manner in which it must be accepted, it can only be accepted in the specified manner. Otherwise mutual assent is lacking, and no contract is formed." Equitable Life & Cas. Ins. Co. v. Ross, 849 P.2d 1187, 1192 (Utah Ct. App. 1993). Unexercised options – such as the Trade-backs – are not executory under Bildisco or Utah law.

Several federal courts, including the en banc Ninth Circuit in Helms, also have held that unexercised options are not bilateral contracts, and therefore not executory under Section 365. See Freightliner's Memo in Support of Objection to Supplemental Motion to Assume and Assign at 20-23.) Unlike the authorities promoted by Simon and Central, these decisions give effect to the plain meaning of the statute.

**B.   Even If The Trade-backs Are Executory, The Assumption And Assignment Of The Trade-backs—To An Insider, Without Full Disclosure, And Without Consideration—Does Not Benefit The Estate And Is Not In The Best Interest Of Its Creditors.**

Courts have acknowledged that some executory contracts, once assumed, are assets that can increase the value of the estate. See, e.g., Helms, 139 F.3d at 705. Yet

Simon seeks to assume the Trade-backs and assign them to Central for free. That is not in the best interest of the estate or its creditors.

1. **Simon's Assertion That The Quick Sale Was In The Best Interest Of The Estate Is Irrelevant; The Issue Really Is Whether Assumption And Assignment Of The Trade-backs Is Beneficial To The Estate.**

Simon devotes much of its Response to explaining how the "quick sale" to Central was in the best interest of the Estate. Simon asserts that without the "quick sale," "the estate would have been administratively insolvent and the unsecured creditors would have no opportunity to recover anything." (Simon's Response at 15.) Simon painstakingly explains how Central negotiated for new leasing arrangements, obtained waivers of administrative claims against the estate and prevented a liquidation of the assets and the loss of thousands of jobs. (See id.) It may be true that the "quick sale" of those assets benefited the estate (even if the estate received less than fair market value in consideration). However, there is no benefit to the estate in transferring the Trade-backs now to Central for free.

2. **Simon's Assumption and Assignment Of The Trade-backs To An Insider, Without Full Disclosure, And Without Consideration Does Not Benefit The Estate.**

Giving away an undisclosed asset of the estate to an insider for free does not enhance the value of the estate, does not benefit the estate and is not in the best interest of creditors. Even if the Court determines that assumption is available under the law, this Court should refuse to allow Simon to assign the Trade-backs to Central because of

Central's refusal to pay fair market consideration. This result would ensure the integrity of the bankruptcy process. See Waldron, 785 F.2d at 941 ("We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse."). This result would also be in the best interest of creditors.

## II.
## CONCLUSION

By its motion, Simon seeks to transfer property of the estate of which it is the trustee to a related party without any meaningful disclosure. Further, Simon seeks to transfer valuable estate property to Central without any expectation of compensation. These circumstances require Simon to defend its motion in terms that leave absolutely no doubt as to its propriety.

That will be difficult. Simon did nothing to maximize the value of the trade-backs. It did not notify Freightliner of the impending disposition of those assets, and it did not disclose the value of those assets to any interested party.

Central has already purchased substantially all of the assets of the estate that had any value, and it paid less than fair market value for them. Simon's pending motion – which seeks to transfer the trade-backs to Central for free – will benefit no one other than the owner of the equity in Central.

The Bankruptcy Code does not intend the result that Simon seeks. The trade-backs are not executory and they cannot be assumed and assigned. Even if they are

executory, the transfer of a valuable asset to an insider for free – without any meaningful disclosure – is not in the best interest of the estate or its creditors.

For all the reasons stated above, Simon's pending motion must be denied.

RESPECTFULLY SUBMITTED: this 18th day of October 2002.

_____
J. THOMAS BECKETT
DIANNA M. GIBSON
ANNE E. RICE
PARSONS BEHLE & LATIMER
Attorneys for the Freightliner Companies

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October, 2002, I caused to be delivered, a true and correct copy of the foregoing **FREIGHTLINER'S REPLY TO THE RESPONSES OF SIMON AND CENTRAL, AND IN SUPPORT OF ITS OBJECTION TO THE DEBTOR'S SUPPLEMENTAL MOTION FOR AUTHORITY TO ASSUME AND ASSIGN TRADE-BACKS TO CENTRAL**, by the means set forth below, to:

| Via E-Mail & Telefax & FedEx Overnight Courier | VIA E-MAIL & TELEFAX & HAND DELIVERY |
|---|---|
| Scott J. Goldstein [sgoldstein@spencerfane.com] Mark Thornhill [mthornhill@spencerfane.com] Spencer Fane Britt & Browne LLP 1000 Walnut, Suite 1400 Kansas City, Missouri 64106 FAX: (816) 474-3216 | Peter W. Billings [pbillings@fabianlaw.com] Gary E. Jubber [gjubber@fabianlaw.com] Fabian & Clendenin 215 South State, #1200 Salt Lake City, UT 84111 FAX: 596-2814 |
| **VIA E-MAIL & TELEFAX & HAND DELIVERY** | **VIA E-MAIL & TELEFAX & HAND DELIVERY** |
| Michael N. Emery [mne@rbmn.com] Russell C. Fericks [rcf@rbmn.com] Richards Brandt Miller & Nelson 50 South Main Street, #700 Salt Lake City, UT 84144 FAX: 532-5506 | Weston L. Harris [wlh@pdkplaw.com] R. Kimball Mosier [rkm@pdkplaw.com] Parsons Davies Kinghorn & Peters 185 South State, #700 Salt Lake City, UT 84111 FAX: 363-4378 |

_____
J. Thomas Beckett