Peter W. Billings, A0330
Gary E. Jubber, A1758
Douglas J. Payne, A4113
FABIAN & CLENDENIN,
 A Professional Corporation
215 South State, Suite 1200
P.O. Box 510210
Salt Lake City, Utah 84151
Telephone: (801) 531-8900
Facsimile: (801) 596-2814

Attorneys for Official Committee of
 Unsecured Creditors



RECEIVED
NOV - 6 2002
OFFICE OF JUDGE
GLEN E. CLARK

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Bankruptcy No. 02-22906 GEC |
| | (Chapter 11) |
| SIMON TRANSPORTATION SERVICES | [JOINTLY ADMINISTERED] |
| INC., DICK SIMON TRUCKING, INC. AND | |
| SIMON TERMINAL, LLC | Judge Glen E. Clark |
| Debtors. | |

**ORDER DENYING WITHOUT PREJUDICE DEBTORS' SUPPLEMENTAL MOTION TO ASSUME AND ASSIGN (1) AGREEMENT BETWEEN DICK SIMON TRUCKING AND FREIGHTLINER, (2) AGREEMENT FOR CONDITIONAL COMMITMENT TO REPURCHASE #2000-00366, (3) AGREEMENT FOR CONDITIONAL COMMITMENT TO REPURCHASE #2001-00013, AND (4) AGREEMENT FOR CONDITIONAL COMMITMENT TO REPURCHASE #2001-00014 PURSUANT TO 11 U.S.C. § 365 AND AUTHORIZATION OF AUCTION**

The Debtors' Supplemental Motion To Assume and Assign (1) Agreement Between Dick

Simon Trucking and Freightliner, (2) Agreement For Conditional Commitment To Repurchase

#2000-00366, (3) Agreement For Conditional Commitment To Repurchase #2001-00013, and

262342_1



0222906D852

(4) Agreement For Conditional Commitment To Repurchase #2001-00014 Pursuant To 11 U.S.C. § 365 ("Motion"), came on regularly for hearing before the above-entitled Court on October 21, 2002 at 10:00 a.m. Scott J. Goldstein, Mark A. Thornhill and Weston Harris appeared on behalf of the Debtors, Michael N. Emery appeared on behalf Central Refrigerated Services, Inc. ("Central"), Peter W. Billings and Gary E. Jubber appeared on behalf of the Unsecured Creditors' Committee ("Committee") and J. Thomas Beckett and Dianna M. Gibson, appeared for Freightliner, LLC ("Freightliner").

Having thoroughly read and reviewed the parties' memoranda and exhibits, the Court makes the following findings of fact and conclusions of law:

1. The four agreements that are the subject of Debtors' motion to assume and assign have been referred to by the parties as "Tradeback Agreements" and the Court will adopt that terminology.

2. Jerry Moyes ("Moyes") is the controlling shareholder of the Debtors and Central. Central purchased substantially all of the Debtors assets pursuant to a sale approved by the Court on April 8, 2002 (the "Sale.")

3. Under the Tradeback Agreements, Freightliner is required to repurchase at a set price certain trucks that it had previously sold to Dick Simon Trucking, Inc. ("Simon") provided that Simon satisfied certain conditions.

4. Freightliner argued in its brief that the failure of Simon to perform any of the following would excuse performance by Freightliner: (a) obtain and deliver title to the used truck for trade-back to Freightliner; (b) maintain and present the used truck

to Freightliner in a condition that meets certain specified requirements; and (c) purchase 1.2 new trucks from Freightliner for each truck traded-in.

5. Simon's failure to perform any of the above obligations would constitute a material breach of the Tradeback Agreements and would excuse further performance by Freightliner.

6. At this point in time both Freightliner and Simon each have obligations under the Tradeback Agreements that are so unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other and, therefore, the Tradeback Agreements are executory contracts under the Countryman definition.

7. Since the Countryman definition is the most stringent of the three standards advanced by the parties for determining whether an agreement is an executory contract under the Bankruptcy Code, the Court need not reach the issue of which of the three standards should be adopted.

8. The Tradeback Agreements may be worth as much as $7.7 million, and in any event, have some value and are of significant importance to this bankruptcy proceeding.

9. No party argued strenuously that the Tradeback Agreements were sold or assigned to Central pursuant to the Sale. Instead, Central and the Debtors elected to assume and assign the Tradeback Agreements through a separate motion dated April 9, 2002.

10. A review of the documents surrounding the Sale verifies that the Tradeback Agreements were not marketed as part of the Sale include the following:

a. Simon's failure to disclose the existence of the Tradeback Agreements on its schedules and statement of affairs, particularly Schedule G.

b. Simon's general failure to advertise the terms and estimated value of the Tradeback Agreements in its efforts to market the assets to be sold at the Sale.

c. The confidential memorandum that was apparently utilized by Morgan Keegan, Simon's investment banking firm, to market the assets barely mentions the Tradeback Agreements. When the Tradeback Agreements are mentioned in the confidential memorandum (at Appendix III, page 34), the Tradeback Agreements are characterized as a liability and not as an asset of significant value to a potential purchaser.

d. Central's failure to disclose the existence and value of the Tradeback Agreements in the Asset Purchase Agreement filed with the Court on March 25, 2002 (the "March 25 Agreement") and used pursuant to the Court's order as a "Stalking Horse Bid" to solicit competing bids from potential buyers. The schedules to the March 25 Agreement are completely silent and provide no information whatsoever regarding the terms or potential value of the Tradeback Agreements. Section 2.2(d) of the March 25 Agreement expressly excludes from those assets being purchased "any contracts and agreements other than the Assumed Assets." Section 2.2(l) of the March 25 Agreement specifically excludes from "Acquired Assets" any contract or lease not assumed by Central under sections 2.1 (a), (b), (c), (d) or (g) and 2.6. Section 2.1(g) includes among "Acquired Assets" those "Assumed Contracts" listed

on Schedule 2.1(g). Schedule 2.1(g) filed with the March 25 Agreement is a blank page. Any competing bidder for the assets being purchased under the Stalking Horse Bid would have to conclude that the Tradeback Agreements were excluded by Section 2.2(1).

c. The failure of the Debtors and Central to provide adequate and proper notice to Freightliner of the Sale.

11. Based on the above, the Court cannot find that the Tradeback Agreements were ever marketed, sold or assigned as part of the Sale. Any argument that it was the Debtors' and Central's intent to include the Tradeback Agreements in the Sale would seriously undermine the legitimacy of the entire sale. *See, In re BCD Corporation*, 119 F.3d 852 (10th Cir. 1997). This is particularly true in this situation where the Sale was conducted on shortened notice to an insider.

12. The fact that on April 9, 2002, one day after the Sale, the Debtors and Central filed a joint motion seeking authority to assume and assign the Tradeback Agreements is further evidence that the Tradeback Agreements were not sold or assign to Central as part of the Sale.

13. There is nothing in the record to support the contention that the sales price reached on April 8, 2002 was increased because of the Tradeback Agreements. At best, the sales price was increased by Central in hopes of receiving the Tradeback Agreements in the future. Any increased sales price that was based upon that hope may be consideration for the Sale, but provides no consideration to support the Motion.

262342_1

5

14. There being no consideration paid for the assignment of the Tradeback Agreements, the Debtors did not exercise their business judgment in seeking to assign the Tradeback Agreements to Central and it is not in the best interests of the Estate to approve the assignment.

IT IS HEREBY ORDERED:

1. That the Motion is denied without prejudice;

2. That to ensure that fair consideration is paid for the Tradeback Agreements, the Tradeback Agreements are to be auctioned;

3. That, to avoid any potential conflict of interest, the Committee is to conduct the auction;

4. The Committee shall have the authority to set the terms, conditions and otherwise conduct the auction, including, but not limited to qualifications of bidders, bid increments and other auction procedures.

5. That with respect to vehicles subject to Tradeback Agreements which are now owned by or leased to Central or other entities controlled by Moyes (the "Central Tradeback Agreements"), the following auction procedures shall apply:

    a. The Committee shall conduct an auction at 10:00 A.M. (Mountain Standard Time) on ~~November 19~~ Dec/2 /HEL, 2002 at the offices of Fabian & Clendenin, 215 South State Street, Salt Lake City, Utah;

    b. By November 11, 2002, Central shall provide to the Committee the name and address of all persons either claiming to be a lessor

262342_1

6

or holding a security interest in any of the vehicles subject to the Tradeback Agreements and the Committee shall notify such persons of the time, place and manner of the auction of the Central Tradeback Agreements;

c. The Committee shall auction the Central Tradeback Agreements in a single auction, i.e., the Committee shall not auction by Vehicle Identification Number, by contract or any other subdivision of the whole.

d. The highest bidder at the auction will close within three (3) days of the auction (by ~~November 22~~ Dec 16, 2002). In the event the prevailing bidder fails to close by such date, the Committee is authorized to consummate the sale to the next highest bidder.

6. That with respect to vehicles subject to Tradeback Agreements which are not owned by or leased to Central or other entities controlled by Moyes (the "Non-Central Tradeback Agreement"), the Committee shall conduct the auction in the time and manner that, in the Committee's judgment, will maximize the return to the Estate;

7. That with respect to the Non-Central Tradeback Agreements, the Committee is directed to use its best efforts to determine the name and address of those persons currently having an interest in such vehicles, including the current owner, the current lessor, the current lessee and any person holding a security interest and to give the best practical notice of the auction to such persons.

262342_1

7

8. To effectuate the transfer of the Tradeback Agreements, the Tradeback Agreements are hereby assumed and assigned to the prevailing bidder at the auction(s) that closes the sale(s) as set forth herein and no further order of this Court shall be necessary.

9. The Committee is authorized to execute necessary documentation to effectuate the assignment of the Tradeback Agreements as contemplated by the Order.

APPROVED AS TO FORM:

_Weston L. Harris_
Weston L. Harris
Parsons Davies Kinghorn & Peters
Attorneys for Debtors

_Michael N. Emery_
Michael N. Emery
Richards Brandt Miller & Nelson
Attorneys for Central Refrigerated Services, Inc.

_J. Thomas Beckett_
J. Thomas Beckett
Parsons Behle & Latimer
Attorneys for Freightliner, LLC

DATED this 2 day of November, 2002.

BY THE COURT:

_Glen E. Clark_
GLEN E. CLARK
United States Bankruptcy Judge

262342_1

8

## CLERK OF THE COURT CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct executed copy of the foregoing **ORDER DENYING WITHOUT PREJUDICE DEBTORS' SUPPLEMENTAL MOTION TO ASSUME AND ASSIGN (1) AGREEMENT BETWEEN DICK SIMON TRUCKING AND FREIGHTLINER, (2) AGREEMENT FOR CONDITIONAL COMMITMENT TO REPURCHASE #2000-00366, (3) AGREEMENT FOR CONDITIONAL COMMITMENT TO REPURCHASE #2001-00013, AND (4) AGREEMENT FOR CONDITIONAL COMMITMENT TO REPURCHASE #2001-00014 PURSUANT TO 11 U.S.C. § 365 AND AUTHORIZATION FOR AUCTION** was mailed, postage fully prepaid, this 13 day of November, 2002, to:

Dec.

UNITED STATES TRUSTEE
9 EXCHANGE PLACE, SUITE 100
SALT LAKE CITY, UTAH 84111

WESTON L. HARRIS, ESQ.
R. KIMBALL MOSIER, ESQ.
PARSONS DAVIES KINGHORN & PETERS
185 SOUTH STATE STREET, SUITE 700
SALT LAKE CITY, UTAH 84111

SCOTT GOLDSTEIN, ESQ.
SPENCER FANE BRITT & BROWNE LLP
1000 WALNUT, SUITE 1400
KANSAS CITY, MISSOURI 64106

J. THOMAS BECKETT
PARSONS BEHLE & LATIMER
201 SOUTH MAIN STREET, SUITE 1800
SALT LAKE CITY, UTAH 84145

MICHAEL N. EMERY
RICHARDS BRANDT MILLER & NELSON
50 SOUTH MAIN STREET, 7TH FLOOR
SALT LAKE CITY, UTAH 84110

262342_1

| | | |
|---|---|---|
| **Fabian & Clendenin**<br>A Professional Corporation<br>(F&C) | **Attorneys at Law**<br>215 South State, Twelfth Floor<br>Salt Lake City, UT 84111<br>Telephone: (801) 531-8900<br><br>P.O. Box 510210<br>Salt Lake City, UT 84151-0210 | **Peter W. Billings**<br>Direct Dial: (801) 323-2201<br>Facsimile: (801) 596-2814<br>pbillings@fabianlaw.com |

November 27, 2002

*RECEIVED DEC - 2 2002 OFFICE OF JUDGE GLEN E. CLARK*

Honorable Glen E. Clark
Chief Judge of the United States
    Bankruptcy Court
350 South Main, #361
Salt Lake City, Utah 84101

      RE:    Dick Simon Trucking, Inc. and Simon Transportation Services, Inc.
              Bankruptcy #02-22906 GEC

Dear Judge Clark:

    No settlement has been reached with respect to the tradeback agreements by the November 27th deadline set by the Court's recent Order.

    Several weeks ago I delivered to the Court an Order which was signed "approved as to form" by Mr. Beckett and Mr. Emery. As previously discussed with the Court by Mr. Jubber on November 15, 2002, if the Court finds the Order satisfactory, the Committee would request that the date set for the auction of November 19, 2002 in paragraph 5(A) of the "HEREBY ORDERED" section be changed to read December 12, 2002.

                                    Very truly yours,

                                    Peter W. Billings

PWB:vlw

cc:    J. Thomas Beckett
        Michael N. Emery

265266_1