Peter W. Billings, A0330
Gary E. Jubber, A1758
Douglas J. Payne, A4113
FABIAN & CLENDENIN,
 A Professional Corporation
215 South State, Suite 1200
P.O. Box 510210
Salt Lake City, Utah 84151
Telephone:  (801) 531-8900
Facsimile:  (801) 596-2814

Attorneys for Official Committee of
 Unsecured Creditors

---

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 02-22906 GEC |
| | ) | (Chapter 11) |
| SIMON TRANSPORTATION SERVICES INC. | ) | [JOINTLY ADMINISTERED] |
| and DICK SIMON TRUCKING, INC. | ) | |
| | ) | Judge Glen E. Clark |
| Debtors. | ) | |
| | ) | |

---

## SEVENTH MOTION TO APPROVE SETTLEMENT AGREEMENTS

---

The Official Committee of Unsecured Creditors (the "Committee"), by and through its

counsel, Fabian and Clendenin, hereby moves the court for an order approving the proposed

settlement agreements between the Committee and various defendants named in adversary

proceedings commenced by the Committee and as set forth herein.  The Committee commenced

**Filed: 08/07/07**

adversary proceedings to avoid transfers and recover preferential payments pursuant to 11

U.S.C. § 547 and/or to avoid fraudulent conveyances pursuant to 11 U.S.C. §§ 544 or 548.  The

Committee has entered into settlement agreements, subject to Bankruptcy Court approval, with

the following defendants (the "Defendants"):  Gallagher Bassett Services, Inc., Hershey

Chocolate USA, Quality Chain Corporation, RLI Insurance Company, Richard D. Simon,

Richard D. Simon, Jr., Lyn Simon, Sherry Bokovoy, Thermo King, SVC, Inc., and West Valley

Truck Center.  The settlement agreement with RLI Insurance Company also includes the express

consent to the settlement by non-defendant Central Refrigerated Services, Inc. ("Central") and a

provision reserving certain RLI-related issues between the Committee and Central as more fully

described hereafter.

By this motion, the Committee seeks Bankruptcy Court approval for the proposed

settlements with the Defendants.  In support of its motion, the Committee states as follows:

1.       Debtors Simon Transportation Services, Inc., and Dick Simon Trucking, Inc.

(collectively referred to herein as "Debtors") commenced the instant chapter 11 bankruptcy cases

by filing petitions for relief on February 25, 2002.

2.       Debtor Simon Terminal filed a voluntary petition for relief under Chapter 11 of

the Bankruptcy Code on March 25, 2002.

3.       Prior to confirmation of the Amended Joint Plan of Liquidation in this case, the

Debtors' cases were jointly administered by this Court.

4.       Pursuant to Section 6.3 of the Joint Plan of Liquidation dated December 27, 2002,

and the Order Confirming Amended Joint Plan of Liquidation dated March 11, 2003, the

Committee is vested with all of the Debtors rights under Chapter 5 and Chapter 3 of the Code and all causes of action of any nature.

5.      Prior to commencement of the bankruptcy case, Debtors made certain payments to the Defendants (the "Payments").

6.      The Committee made written demand on Defendants for the return of the Payments received by the respective defendants, asserting that the payments were preferential transfers or fraudulent conveyances.

7.      The Committee has commenced adversary proceedings as described below against the Defendants by filing complaints alleging that the Payments were preferential transfers within the meaning of 11 U.S.C. § 547 and/or to avoid fraudulent conveyances under 11 U.S.C. §§ 544 or 548.

8.      In order to avoid the expense of prolonged litigation and the uncertainty of trial and in order to settle the disputes between the parties, Defendants and the Committee have agreed, subject to Bankruptcy Court approval, to compromises and settlements to resolve their differences concerning the Payments.  The general terms of the settlements are described below. The Committee is holding some of the settlement amounts pending Court approval.

      a.      **Gallagher Bassett Service, Inc.:** The Committee commenced Adversary Proceeding No. 04-02274 against Gallagher Bassett Service, Inc. ("Gallagher Bassett") by filing a complaint alleging preferential transfers in the amount of $40,332.00. Gallagher Bassett responded with evidence showing possible defenses to a part or all of the amounts claimed as a preferential transfer.  The Committee has reviewed Gallagher

Bassett's potential defenses, and based upon its review, as well as the uncertainty, costs, and expenses of litigation, the Committee has agreed to accept $23,000.00 in full settlement of its claim against Gallagher Basset. A copy of the settlement agreement with Gallagher Basset is attached hereto as Exhibit "A.".

b.      **Hershey Chocolate USA**: The Committee commenced Adversary Proceeding No. 04-02308 against Hershey Chocolate USA ("Hershey Chocolate") by filing a complaint alleging preferential transfers in the amount of $22,571.82. Hershey Chocolate responded with evidence showing possible defenses to a part or all of the amounts claimed as a preferential transfer, including ordinary course of business and new value. The Committee has reviewed Hershey Chocolate's potential defenses, and based upon its review, as well as the uncertainty, costs, and expenses of litigation, the Committee has agreed to accept $8,000.00 in full settlement of its claim against Hershey Chocolate. A copy of the settlement agreement with Hershey Chocolate is attached hereto as Exhibit "B".

c.      **Quality Chain Corporation**: The Committee commenced Adversary Proceeding No. 04-02172 against Quality Chain Corporation ("Quality Chain") by filing a complaint alleging preferential transfers in the amount of $24,790. Quality Chain responded with evidence showing possible defenses to a part or all of the amounts claimed as a preferential transfer, including ordinary course of business and new value. The Committee has reviewed Quality Chain's potential defenses, and based upon its review, as well as the uncertainty, costs, and expenses of litigation, the Committee has

agreed to accept $12,000.00 in full settlement of its claim against Quality Chain.  A copy

of the settlement agreement with Quality Chain is attached hereto as Exhibit "C".

    **d.**    **RLI Insurance Company:** The Committee commenced Adversary

Proceeding No. 04-02372 ("the RLI Adversary Proceeding") against RLI Insurance

Company ("RLI") by filing a complaint seeking to recover a payment of $3,000,000 to

RLI as part of a total of $6,000,000 RLI received ("the Deposit") as security for the

obligations of Debtor Dick Simon Trucking to repay RLI for those third party claims

under the self-insured portion of an insurance agreement.  The Committee alleged that

the $3,000,000 constituted an avoidable preferential transfer.  RLI disputes that the

transfer is avoidable as a preferential transfer under Bankruptcy Code § 547 and has

provided the Committee with evidence of certain defenses, including new value. The

Committee has reviewed RLI's potential defenses, and based upon its review, as well as

the uncertainty, costs, and expenses of litigation, the Committee has agreed to settle the

Adversary Proceeding with RLI, with the consent Central Refrigerated Services, Inc.

("Central")(which asserts an interest in any proceeds recovered pursuant to the RLI

Adversary Proceeding against RLI) as follows:

    (1)    RLI agreed pay to the Committee the sum of $190,000.00

(the "Settlement Amount") within ten (10) days after execution of the

settlement agreement by all parties.  The Committee agreed not to expend

the Settlement Amount until Bankruptcy Court approval of the settlement

agreement and, in the event the settlement agreement is not approved, to

promptly repay the Settlement Amount to RLI.  The Committee also

agreed not to expend the Settlement Amount until its dispute with Central

is resolved by litigation or settlement.

(2)      Except for claims arising from the settlement agreement ,

RLI, as additional consideration,  agreed to waive and release and forever

discharge from any and all claim, liability and causes of action of any kind

whatsoever, whether known or unknown, the Consolidated Estate and the

Committee, including but not limited to the proofs of claim filed by RLI

on or about August 9, 2002, asserting a secured claim of an unstated

amount (Claim no. 802 in Case No. 02-22906 and Claim no. 803 in Case

No. 02-22907).  In addition, RLI agreed to waive any claim it may have

pursuant to 11 U.S.C. §502(h) for the $190,000 paid pursuant to the

settlement agreement.

(3)      Central consented to the settlement between the Committee

and RLI and to the treatment of the Settlement Amount as provided in the

settlement agreement.

(4)      The parties agreed that nothing in the settlement agreement

shall affect the administration of the insurance coverages and claims by

RLI under its insurance policies with Debtors, including use of the

Deposit amounts pursuant to the terms of such policies.  In accordance

therewith, after all insurance claims under the RLI policies are resolved in

the ordinary course of business, RLI agreed to return any remaining amount of the Deposit (if any) (the "Refunded Deposit") to the Committee by wire transfer to a specified account. The parties agreed that there is no guarantee regarding the amount of the final Refunded Deposit, which may be less than the full Deposit amount.

(5)     The parties agreed that payment of the Settlement Amount by RLI will reduce by $190,000 any refund of Deposit amounts that may otherwise be or hereafter become payable by RLI pursuant to the terms of its insurance policies with Debtors.  The order approving the settlement agreement shall expressly provide that the Deposit shall be deemed to be $5,810,000, subject to reduction in the ordinary course of business under RLI insurance policy administration, as set forth in the settlement agreement.

(6)     Except for claims arising from the settlement agreement or from the Deposit and RLI's duties and obligations related thereto, the Committee, as the representative of the consolidated bankruptcy estate of the above-entitled bankruptcy cases ("the Consolidated Estate"), agreed to release and forever discharge RLI, its affiliates, subsidiaries, employees, agents, representatives, officers, directors, shareholders, successors, parents, assigns, and/or representatives from any and all claims, liabilities and causes of action of any kind whatsoever, whether known or unknown,

which were or could have been asserted in the RLI Adversary Proceeding

or otherwise relating to the Consolidated Estate, the Debtors or the above-

entitled bankruptcy case.

(7)     Central agreed to release and forever discharge RLI, its

affiliates, subsidiaries, employees, agents, representatives, officers,

directors, shareholders, successors, parents, assigns, and/or representatives

from any and all claims, liabilities and causes of action of any kind

whatsoever, whether known or unknown, which were or could have been

asserted in the RLI Adversary Proceeding or otherwise relating to the

Consolidated Estate, the Debtors or the Simon Transportation Services,

Inc., and Dick Simon Trucking, Inc. bankruptcy cases.

(8)     Central contends that any recovery by the Committee

pursuant to the RLI Adversary Proceeding is property to which it is

entitled pursuant to Section 3.4(h) of the Amended and Restated Asset

Purchase Agreement dated as of April 18, 2002 (the "Asset Purchase

Agreement") pursuant to which Central purchased substantially all of the

Debtors' assets.  The Committee contends that any recovery is an

excluded asset pursuant to Section 2.2 of the Asset Purchase Agreement.

Central and the Committee have agreed to defer resolution of this dispute

between them and allow the settlement with RLI to go forward.

A copy of the settlement agreement with RLI is attached hereto as Exhibit "D".

**e.** **Richard D. Simon, Richard D. Simon, Jr., Lyn Simon, and Sherry Bokovoy ("Simon Family Defendants"):**

Richard D. Simon.  The Committee commenced Adversary No. 04-02404 against Richard D. Simon, which alleges that between October 3, 2000 and February 19, 2002, the Debtors made a series of periodic payments to Richard D. Simon totaling $368,594.00, and that said payments were avoidable as fraudulent transfers pursuant to 11 U.S.C. §548 or Utah Code Ann. §§ 25-6-5 & 25-6-6 and 11 U.S.C. § 544(b); and alternatively alleging that $64,753.00 in payments made within 90 days prior to the Petition Date were avoidable as preferential transfers pursuant to 11 U.S.C. § 547. Richard D. Simon disputes that the payments were either fraudulent transfers or preferential transfers and has provided the Committee with evidence of certain defenses, including consideration for payments from the Debtors in exchange for consulting service and forbearance from competition pursuant to the terms of a Consulting and Noncompetition Agreement.  Richard D. Simon also disputes that the Debtors were insolvent at the time of some of the transfers.  The Committee has agreed to settle with Richard D. Simon as part of and on the terms set forth below for settlement with the Simon Family Defendants.

Richard D. Simon, Jr.  The Committee commenced Adversary No. 04-02405 against Richard D. Simon, Jr., which alleges that between October 17, 2000 and October 9, 2001, the Debtors made weekly payments to Richard D. Simon, Jr. totaling $154,503.28, and that said payments were avoidable as fraudulent transfers pursuant to

11 U.S.C. §548 or Utah Code Ann. §§ 25-6-5 & 25-6-6 and 11 U.S.C. § 544(b).  Richard

D. Simon, Jr. disputes that the payments were either fraudulent transfers or preferential

transfers and has provided the Committee with evidence of certain defenses, including

consideration for payments from the Debtors in exchange for employment services and

forbearance from competition pursuant to the terms of an Employment and

Noncompetition Agreement.  Richard D. Simon, Jr. also disputes that the Debtors were

insolvent at the time of some of the transfers.  The Committee has agreed to settlement

with Richard D. Simon, Jr. as part of and on the terms set forth below for settlement with

the Simon Family Defendants.

     Lyn Simon.  The Committee commenced Adversary No. 04-02402 against Lyn

Simon, which alleges that between June 18, 2001 and February 5, 2002, the Debtors

made a series of periodic payments to Lyn Simon totaling $105,000, and that said

payments were avoidable as fraudulent transfers pursuant to 11 U.S.C. §548(a)(1)(B),

and alternatively that $36,000 in payments made within 90 days prior to the Petition Date

were avoidable as preferential transfers pursuant to 11 U.S.C. § 547.  Lyn Simon disputes

that the payments were either fraudulent transfers or preferential transfers and has

provided the Committee with evidence of certain defenses, including consideration for

payments from the Debtors in exchange for employment services and forbearance from

competition pursuant to the terms of an Employment and Noncompetition Agreement.

Lyn Simon also disputes that the Debtors were insolvent at the time of some of the

transfers.  The Committee has agreed to settlement with Lyn Simon as part of and on the

terms set forth below for settlement with the Simon Family Defendants.

Sherry Bokovoy.  The Committee commenced Adversary No. 04-02406 against

Sherry Bokovoy ("Bokovoy"), which alleges that between August 21, 2001 and February

19, 2002, the Debtors made a serious of periodic payments to Sherry Bokovoy totaling

$84,000, and that said payments were avoidable as fraudulent transfers pursuant to 11

U.S.C. §548(a)(1)(B), and alternatively that $42,000 in payments made within 90 days

prior to the Petition Date were avoidable as preferential transfers pursuant to 11 U.S.C. §

547.  Ms. Bokovoy disputes that the payments were either fraudulent transfers or

preferential transfers and has provided the Committee with evidence of certain defenses,

including consideration for payments from the Debtors in exchange for employment

services and forbearance from competition pursuant to the terms of an Employment and

Noncompetition Agreement.  Bokovoy also disputes that the Debtors were insolvent at

the time of some of the transfers.  The Committee has agreed to settlement with Sherry

Bokovoy as part of and on the terms set forth below for settlement with the Simon

Family Defendants.

Settlement with Simon Family Defendants.  The Committee has entered into a

settlement with Richard D. Simon, and Richard D. Simon, Jr., Lyn Simon and Sherry

Bokovoy, who are children of Richard D. Simon.  Richard D. Simon was the founder and

principal of the Debtors until he sold his stock in September 2000.   The Committee has

reviewed the potential defenses of Richard D. Simon, Richard D. Simon, Jr., Lyn Simon

and Sherry Bokovoy, which included assertions of contemporaneous exchanges of new

value and reasonably equivalent value in connection with services provided under respect

consulting agreement or employment agreements.  The defenses also included assertions

that the Simon Family Defendants provided reasonably equivalent value and/or new

value by ongoing forbearance from competing pursuant to non-competition agreements

because of the Simon Family Defendants' asserted extensive knowledge of the Debtors'

operations and the trucking industry due to their years of involvement in ownership

and/or upper management of the Debtors, knowledge of key customers and other contacts

in the industry, relationships with key employees of the Debtors, and the Simon Family's

alleged the financial capability to establish or join a business or businesses in competition

to the Debtors.   Based upon the Committee's review, as well as the uncertainty, costs,

and expenses of litigation, the Committee has agreed to settle the adversary proceedings

with Richard D. Simon, Richard D. Simon, Jr., Lyn Simon and Sherry Bokovoy as

follows:

> (1)      Payment of $160,000.00 to the Committee by Richard D.
> Simon.

> (2)      Waiver by the Simon Defendants of any claims of any
> nature against the bankruptcy estate, including, but not limited to Claim
> No. 885 filed by Richard D. Simon asserting a general unsecured claim in
> the amount of $375,000.00 and a priority wage claim under in the amount
> of $4,650.00; Claim No. 884 filed by Lyn Simon asserting a general

unsecured claim in the amount of $360,000.00 and a priority wage claim

in the amount of $4,650.00; and Claim No. 886 filed by Sherry Bokovoy

asserting a general unsecured claim in the amount of $72,000.00 a priority

wage claim in the amount of $4,650.00.

A copy of the form of the settlement agreement with the Simon Family

Defendants is attached hereto as Exhibit "E".

      **f.**     **Thermo King SVC, Inc.:**  The Committee commenced Adversary

Proceeding No. 04-02203 against Thermo King SVC, Inc. ("Thermo King") by filing a

complaint alleging preferential transfers in the amount of $1,475,090.55.  Thermo King

responded with evidence showing possible defenses to a part or all of the amounts

claimed as a preferential transfer, including that the transfers were made in the ordinary

course of business and that Thermo King provided new value subsequent to the transfers.

The Committee has reviewed Thermo King's potential defenses, and based upon its

review, as well as the uncertainty, costs, and expenses of litigation, the Committee has

agreed to accept $295,000.00 in full settlement of its claim against Thermo King,

together with Thermo King's agreement to waive any claims of any nature against the

bankruptcy estate, including, but not limited to Claim no. 918 in Case No. 02-22906 in

the original amount of $1,333,000.00 claim, which was subsequently amended by the

proof of claim filed by Defendant on or about December 5, 2003 asserting an unsecured

claim in the amount of $1,970,875.03 (Claim no. 18 in Case No. 02-22907 amending

Claim No. 918 in the amount of $1,333,000.00).  A copy of the form of the settlement

agreement with Thermo King is attached hereto as Exhibit "F".

    **g.**  **West Valley Truck Center:**  The Committee commenced Adversary

Proceeding No. 04-02199 against West Valley Truck Center ("West Valley Truck") by

filing a complaint alleging preferential transfers in the amount of $45,396.72.  West

Valley Truck responded with evidence showing possible defenses to a part or all of the

amounts claimed as a preferential transfer, including that the transfers were made in the

ordinary course of business and that West Valley Truck provided new value subsequent

to the transfers.  The Committee has reviewed West Valley Truck's potential defenses,

and based upon its review, as well as the uncertainty, costs, and expenses of litigation,

the Committee has agreed to accept $25,000.00 in full settlement of its claim against

West Valley Truck.  A copy of the form of the settlement agreement with West Valley

Truck Center is attached hereto as Exhibit "G".

9.    The Committee has agreed to accept the respective settlement amounts in full and

final satisfaction of those claims set forth in the adversary proceedings filed against the

Defendants, subject to Bankruptcy Court approval.

10.    The Committee has agreed to release and forever discharge Defendants, and their

agents and/or representatives, from any and all claims relating to the adversary proceedings

(except for any obligations arising under the respective settlement agreements).

11.     Upon approval of the settlement agreements by the Court, the Committee has agreed to dismiss the adversary proceedings against the Defendants, with prejudice, pursuant to Rule 41 of the Federal Rules of Civil Procedure as applied by Bankruptcy Rule 7041.

12.     The Committee has analyzed the claims it has against the Defendants as well as the potential claims and defenses the Defendants have or may assert against the Committee.

13.     The Committee believes that the proposed settlements are in the best interests of the estate because of the expenses, uncertainty, and risks of litigation.

WHEREFORE, the Committee requests an order:

'A.     Approving the settlement agreements entered into between the Committee and Defendants upon the terms and conditions set forth herein;

B.     Approving the dismissal of the adversary proceedings described herein, with prejudice, upon receipt of the settlement payments from the respective Defendants as provided in the Committee's settlement agreements with the Defendants; and

C.     Granting such other and further relief as the court deems just and equitable.

DATED this ___ day of August, 2007.

Peter W. Billings
Gary E. Jubber
Douglas J. Payne
FABIAN & CLENDENIN
 A Professional Corporation
Attorneys for Official Committee of
 Unsecured Creditors

**EXHIBIT "A"**

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into between Gallagher Bassett

Service, Inc. (hereinafter "Defendant"), and the Official Committee of Unsecured Creditors (the

"Committee") as the representative of the consolidated estates of Simon Transportation Services,

Inc., Dick Simon Trucking, Inc., and Simon Terminal, LLC (the "Debtors"), substantively

consolidated under Case Number 02-22906 (GEC) in the United States Bankruptcy Court for the

District of Utah, Central Division (the "Bankruptcy Court").

## R E C I T A L S:

A.    Debtors Simon Transportation Services, Inc., and Dick Simon Trucking filed

voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code") on February 25, 2002; and

B.    Debtor Simon Terminal filed a voluntary petition for relief under Chapter 11 of

the Bankruptcy Code on March 25, 2002; and

C.    Pursuant to Section 6.3 of the Joint Plan of Liquidation dated December 27, 2002,

and the Order Confirming Amended Joint Plan of Liquidation dated March 11, 2003, the

Committee is vested with all of the "Debtors' rights under Chapter 5 and Chapter 3 of the Code

and all causes of action of any nature;" and

D.    The Committee has alleged that the Debtors made a preferential payment to

Defendant of $40,332.00 within ninety days prior to the Debtors' bankruptcy petitions (the

"Payment") by check dated December 13, 2001 as payment of an antecedent debt; and

365738_1

E.     The Committee made written demand on Defendant for the return of the Payment alleging that the Payment was a preferential transfer within the meaning of Bankruptcy Code § 547; and

F.     The Committee has commenced an adversary proceeding (Adversary No. 04-02274, hereinafter the "Adversary Proceeding") against Defendant by filing a complaint alleging that the Payment was a preferential transfer within the meaning of Bankruptcy Code § 547; and

G.     Defendant filed an answer in the Adversary Proceeding disputing that the Payment is avoidable as a preferential transfer under Bankruptcy Code § 547, and raising certain defenses, including ordinary course of business and new value; and

H.     In order to avoid the expense of continued litigation and the uncertainty of trial and in order to settle the dispute between the parties to this Agreement, Defendant and the Committee have agreed to a compromise and settlement to resolve their differences with finality concerning the Payment, and all other matters related thereto.

NOW, THEREFORE, based upon the foregoing facts and recitals, the Committee and Defendant hereby stipulate and agree as follows:

1.     Defendant has agreed to deliver to the Committee the sum of $23,000.00 (the "Settlement Amount") payable to the "Dick Simon Consolidated Bankruptcy Estates" within ten (10) days after execution of this Agreement.

365738_1                                              2

2.      The Committee agrees to accept the Settlement Amount in full and final satisfaction of those claims set forth in the Adversary Proceeding, subject to Bankruptcy Court approval.

3.      The Committee shall release and forever discharges Defendant and its agents and/or representatives from any and all claims relating to the Adversary Proceeding (except for any obligations arising under this Agreement).

4.      Upon approval of the Agreement by the Court, the Committee agrees to dismiss the Adversary Proceeding against the Defendant, with prejudice, pursuant to Rule 41 of the Federal Rules of Civil Procedure as applied by Bankruptcy Rule 7041.

5.      All parties to this Agreement warrant and represent to each other that they are fully informed and have full knowledge and understanding of the terms, conditions and effects of this Agreement.

6.      This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supercedes all prior oral or written agreements and understandings relating to the subject matter hereof.  No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

7.      This Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and governed by the laws of the State of Utah.

365738_1                                          3

8.     The Bankruptcy Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof.

9.     This Agreement may be executed in counterparts and counterparts containing the signatures of all parties shall represent one and the same agreement.

3/9/2006
DATE

Peter W. Billings
Gary E. Jubber
Douglas J. Payne
FABIAN & CLENDENIN
Attorneys for the Committee

3/9/06
DATE

Gregory J. Adams
McKAY, BURTON & THURMAN
Attorneys for Gallagher Bassett Service, Inc.

365738_1

4

# EXHIBIT "B"

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into between Hershey Chocolate USA (hereinafter "Defendant"), and the Official Committee of Unsecured Creditors (the "Committee") as the representative of the consolidated estates of Simon Transportation Services, Inc., Dick Simon Trucking, Inc., and Simon Terminal, LLC (the "Debtors"), substantively consolidated under Case Number 02-22906 (GEC) in the United States Bankruptcy Court for the District of Utah, Central Division (the "Bankruptcy Court").

## R E C I T A L S:

A.     Debtors Simon Transportation Services, Inc., and Dick Simon Trucking filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 25, 2002; and

B.     Debtor Simon Terminal filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 25, 2002; and

C.     Pursuant to Section 6.3 of the Joint Plan of Liquidation dated December 27, 2002, and the Order Confirming Amended Joint Plan of Liquidation dated March 11, 2003, the Committee is vested with all of the "Debtors' rights under Chapter 5 and Chapter 3 of the Code and all causes of action of any nature;" and

D.     The Committee has alleged that the Debtors made several preferential payments to Defendant totaling $22,571.82 within ninety days prior to the filing of the Debtors' bankruptcy petitions (the "Payments"); and

357674_1

E.     The Committee made written demand on Defendant for the return of the Payments alleging that the Payments were preferential transfers within the meaning of Bankruptcy Code § 547; and

F.     The Committee has commenced an adversary proceeding (Adversary No. 04-02308, hereinafter the "Adversary Proceeding") against Defendant by filing a complaint alleging that the Payments were preferential transfers within the meaning of Bankruptcy Code § 547; and

G.     Defendant filed an answer in the Adversary Proceeding disputing that the Payments are avoidable as preferential transfers under Bankruptcy Code § 547, and raising certain defenses, including new value and ordinary course of business. Defendant asserts, among other things, that the payments were to reimburse Defendant for damage to Defendant's goods while being shipped by the Debtors, and that the timing of the payments is consistent with a long history between the Debtors and Defendants and with industry standards; and

H.     In order to avoid the expense of continuing litigation and the uncertainty of trial and in order to settle the dispute between the parties to this Agreement, Defendant and the Committee have agreed to a compromise and settlement to resolve their differences with finality concerning the Payments, and all other matters related thereto.

NOW, THEREFORE, based upon the foregoing facts and recitals, the Committee and Defendant hereby stipulate and agree as follows:

1.     Defendant has agreed to deliver to the Committee the sum of $8,000.00 (the "Settlement Amount") payable to the "Dick Simon Consolidated Bankruptcy Estates" within ten (10) days after execution of this Agreement.

357674_1                                           2

2.     The Committee agrees to accept the Settlement Amount in full and final

satisfaction of those claims set forth in the Adversary Proceeding, subject to Bankruptcy Court

approval.

3.     The Committee shall release and forever discharges Defendant and its agents

and/or representatives from any and all claims relating to the Adversary Proceeding (except for

any obligations arising under this Agreement).

4.     The Committee shall act with reasonable diligence to seek approval of this

Agreement in the Debtors' consolidated bankruptcy cases.  In the event the Bankruptcy Court

does not approve the settlement proposed in this Agreement, the Committee shall promptly

return to Defendant all amounts paid under this Agreement.

5.     Upon approval of the Agreement by the Court, the Committee agrees to dismiss

the Adversary Proceeding against the Defendant, with prejudice, pursuant to Rule 41 of the

Federal Rules of Civil Procedure as applied by Bankruptcy Rule 7041.

6.     All parties to this Agreement warrant and represent to each other that they are

fully informed and have full knowledge and understanding of the terms, conditions and effects of

this Agreement.

7.     This Agreement embodies the entire agreement and understanding between the

parties hereto with respect to the subject matter hereof and supercedes all prior oral or written

agreements and understandings relating to the subject matter hereof.  No statement,

representation, warranty, covenant or agreement of any kind not expressly set forth in this

Agreement shall affect, or be used to interpret, change or restrict, the express terms and

provisions of this Agreement.

357674_1                                    3

8.    This Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and governed by the laws of the State of Utah.

9.    The Bankruptcy Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof.

10.   This Agreement may be executed in counterparts and counterparts containing the signatures of all parties shall represent one and the same agreement.


_12/13/05_
DATE

Peter W. Billings
Gary E. Jubber
Douglas J. Payne
FABIAN & CLENDENIN
Attorneys for the Committee


HERSHEY CHOCOLATE, USA

By: _____

_____
DATE

Morton R. Branzburg
Its: Counsel _____

357674_1                                    4

# EXHIBIT "C"

NOV-23-2005 WED 02:22 PM
Case 02-22906  Doc 1524    Filed 08/07/07    Entered 08/07/07 16:57:12    Desc Main
Document   Page 27 of 60
FAX NO.  7441589        Nov. 23 2005 01:51PM  P2

FROM :FOCUS4CPA

NOV-23-2005 WED 01:12 PM                    FAX NO.                      P. 02
                                            FAX NO. 8015962814           P. 02/06
NOV-23-2005 WED 12:02 PM FABIAN & CLENDENIN

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into between Quality Chain Corporation (hereinafter "Defendant"), and the Official Committee of Unsecured Creditors (the "Committee") as the representative of the consolidated estates of Simon Transportation Services, Inc., Dick Simon Trucking, Inc., and Simon Terminal, LLC (the "Debtors"), substantively consolidated under Case Number 02-22906 (GEC) in the United States Bankruptcy Court for the District of Utah, Central Division (the "Bankruptcy Court").

### R E C I T A L S:

A.    Debtors Simon Transportation Services, Inc., and Dick Simon Trucking filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 25, 2002; and

B.    Debtor Simon Terminal filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 25, 2002; and

C.    Pursuant to Section 6.3 of the Joint Plan of Liquidation dated December 27, 2002, and the Order Confirming Amended Joint Plan of Liquidation dated March 11, 2003, the Committee is vested with all of the "Debtors' rights under Chapter 5 and Chapter 3 of the Code and all causes of action of any nature;" and

D.    The Committee has alleged that the Debtors made a preferential payment to Defendant totaling $24,790 within ninety days prior to the filing of the Debtors' bankruptcy petitions (the "Payment") as payment of six (6) separate invoices of various dates; and

357871_1

NOV-23-2005 WED 02:23 PM          FAX NO.                    P. 03
Case 02-22906   Doc 1524   Filed 08/07/07   Entered 08/07/07 16:57:12   Desc Main
FROM : FOCUS4CPA          Document: 7441 Page 28 of 60   Nov. 23 2005 01:51PM  P3

NOV-23-2005 WED 01:12 PM                    FAX NO.              P. 03
                                            FAX NO. 8015982814   P. 03/05

NOV-23-2005 WED 12:02 PM FABIAN & CLENDENIN

E.      The Committee made written demand on Defendant for the return of the Payment alleging that the Payment was a preferential transfer within the meaning of Bankruptcy Code § 547; and

F.      The Committee has commenced an adversary proceeding (Adversary No. 04-02172, hereinafter the "Adversary Proceeding") against Defendant by filing a complaint alleging that the Payment was a preferential transfer within the meaning of Bankruptcy Code § 547; and

G.      Defendant filed an answer in the Adversary Proceeding disputing that the Payment is avoidable as a preferential transfer under Bankruptcy Code § 547, and raising certain defenses, including ordinary course of business and new value; and

H.      In order to avoid the expense of continued litigation and the uncertainty of trial and in order to settle the dispute between the parties to this Agreement, Defendant and the Committee have agreed to a compromise and settlement to resolve their differences with finality concerning the Payment, and all other matters related thereto.

NOW, THEREFORE, based upon the foregoing facts and recitals, the Committee and Defendant hereby stipulate and agree as follows:

1.      Defendant has agreed to deliver to the Committee the sum of $12,000.00 (the "Settlement Amount") payable to the "Dick Simon Consolidated Bankruptcy Estates" within ten (10) days after execution of this Agreement.

2.      The Committee agrees to accept the Settlement Amount in full and final satisfaction of those claims set forth in the Adversary Proceeding, subject to Bankruptcy Court approval.

357871_1

2

NOV-23-2005 WED 03:23 PM    FAX NO.    P. 04
Case 02-22906    Doc 1524    Filed 08/07/07    Entered 08/07/07 16:57:12    Desc Main
FROM :FOCUS4CPA    FAX NO. :7441589    Document    Page 29 of 60    Nov. 23 2005 01:51PM P4

NOV-23-2005 WED 01:13 PM                    FAX NO.                    P. 04
NOV-23-2005 WED 12:02 PM FABIAN & CLENDENIN    FAX NO. 8015962814    P. 05/05

9.    The Bankruptcy Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof.

10.    This Agreement may be executed in counterparts and counterparts containing the signatures of all parties shall represent one and the same agreement.

11/23/05
DATE

Peter W. Billings
Gary B. Jubber
Douglas J. Payne
FABIAN & CLENDENIN
Attorneys for the Committee


QUALITY CHAIN CORPORATION

11/23/05
DATE

By: _____

Its: Secretary

# EXHIBIT "D"

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and among the Official Committee of Unsecured Creditors (the "Committee"), as the representative of the consolidated estate ("Consolidated Estate") of Simon Transportation Services, Inc., Dick Simon Trucking, Inc., and Simon Terminal, LLC (the "Debtors"), substantively consolidated under Case Number 02-22906 (GEC) ("Bankruptcy Case") in the United States Bankruptcy Court for the District of Utah, Central Division (the "Bankruptcy Court"), Central Refrigerated Services, Inc. ("Central") and RLI Insurance Company ("RLI").

### R E C I T A L S:

A.     Debtors Simon Transportation Services, Inc., and Dick Simon Trucking, Inc., filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 25, 2002.

B.     Debtor Simon Terminal LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 25, 2002.

C.     On April 22, 2002, the Bankruptcy Court entered its *Order Pursuant to Sections 105(a), 363, 365 and 1146 of the Bankruptcy Code: (A) Authorizing the Sale of Substantially all of the Debtors' Assets to Central Refrigerated Services, Inc. Free and Clear of Liens, Claims Interests and Encumbrances; (B) Approving the Asset Purchase Agreement; and (C) Granting Related Relief* (the "Sale Order") by which the Bankruptcy Court approved a sale of substantially all of the assets of the Debtors to Central pursuant to an Amended and Restated Asset Purchase Agreement dated as of April 18, 2002 (the "Asset Purchase Agreement").

D.      Pursuant to Section 2.2 of the Asset Purchase Agreement certain assets were excluded from the sale including all causes of action under Chapter 5 of the Bankruptcy Code.

E.      Section 3.4 of the Asset Purchase Agreement provided for certain post-closing adjustments to the purchase price.  One post closing adjustment relates to sums collected from RLI.

F.      On March 11, 2003, the Bankruptcy Court executed its *Order Confirming Joint Plan of Liquidation* ("Confirmation Order") pursuant to which all property of the Debtors, including all Debtors' rights under Chapter 5 of the Bankruptcy Code, were vested in the Consolidated Estate under the exclusive control of the Committee.  Pursuant to Section 6.3 of the Joint Plan of Liquidation dated December 27, 2002, and the Confirmation Order, the Committee is vested with all of the "Debtors' rights under Chapter 5 and Chapter 3 of the Code and all causes of action of any nature."

G.      RLI received, as security for the obligations of Debtor Dick Simon Trucking to repay RLI for those third party claims under the self-insured portion of an insurance agreement, a total of $6,000,000 (the "Deposit").  The Committee has alleged that a payment of $3,000,000 on or about December 19, 2001, toward the Deposit constituted a preferential payment by the Debtor Dick Simon Trucking to RLI within ninety days prior to the filing of the Debtors' bankruptcy petitions (the "Payment").

H.      The Committee commenced an adversary proceeding (Adversary Number 04-02372, the "Adversary Proceeding") against RLI by filing a complaint alleging that the Payment was a preferential transfer within the meaning of Bankruptcy Code § 547.

I.    RLI disputes that the Payment is avoidable as a preferential transfer under Bankruptcy Code § 547.

J.    Central contends that any recovery by the Committee pursuant to the Adversary Proceeding is property to which it is entitled pursuant to Section 3.4(h) of the Asset Purchase Agreement.  The Committee contends that any recovery is an excluded asset pursuant to Section 2.2 of the Asset Purchase Agreement.  Central and the Committee have agreed to defer resolution of this dispute between them and allow the settlement with RLI to go forward.

K.    In order to avoid the expense of prolonged litigation and the uncertainty of trial and in order to settle the disputes between the parties to this Agreement, the Committee, Central and RLI have agreed to a compromise and settlement to resolve their differences with finality concerning the Payment.

Now, therefore, based upon the foregoing facts and recitals, the Committee, Central and RLI hereby stipulate and agree as follows:

1.    RLI shall pay to the Committee the sum of $190,000.00 (the "Settlement Amount") within ten (10) days after execution of this Agreement by all parties.  The Committee agrees not to expend the Settlement Amount until Bankruptcy Court approval of this Agreement and, in the event the Agreement is not approved, to promptly repay the Settlement Amount to RLI.  The Committee also agrees not to expend the Settlement Amount until its dispute with Central is resolved by litigation or settlement.

2.    Except for claims arising from this Agreement , RLI, as additional consideration, hereby waives and releases and forever discharges from any and all claim, liability and causes of action of any kind whatsoever, whether known or unknown, the Consolidated Estate and the Committee, including but not limited to the proofs of claim filed by RLI on or about August 9, 2002, asserting a secured claim of an unstated amount (Claim no. 802 in Case No. 02-22906 and Claim no. 803 in Case No. 02-22907).  In addition, RLI waives any claim it may have pursuant to 11 U.S.C. §502(h) for the $190,000 paid pursuant to this Agreement.

3.    Central consents to the settlement between the Committee and RLI and to the treatment of the Settlement Amount as provided herein.

4.    Nothing in this Agreement shall affect the administration of the insurance coverages and claims by RLI under its insurance policies with Debtors, including use of the Deposit amounts pursuant to the terms of such policies.  In accordance therewith, after all insurance claims under the RLI policies are resolved in the ordinary course of business, RLI shall return any remaining amount of the Deposit (if any)  (the "Refunded Deposit") to the Committee by wire transfer to a specified account. The parties agree that there is no guarantee regarding the amount of the final Refunded Deposit, which may be less than the full Deposit amount.

5.    The parties agree that payment of the Settlement Amount by RLI will reduce by $190,000 any refund of Deposit amounts that may otherwise be or hereafter become payable by RLI pursuant to the terms of its insurance policies with Debtors.  The order approving this Agreement shall expressly provide that the Deposit shall be deemed to be $5,810,000, subject to

reduction in the ordinary course of business under RLI insurance policy administration, as set forth in this Agreement.

6.    Except for claims arising from this Agreement or from the Deposit and RLI's duties and obligations related thereto, the Committee, as the representative of the Consolidated Estate, hereby releases and forever discharges RLI, its affiliates, subsidiaries, employees, agents, representatives, officers, directors, shareholders, successors, parents, assigns, and/or representatives from any and all claims, liabilities and causes of action of any kind whatsoever, whether known or unknown, which were or could have been asserted in the Adversary Proceeding or otherwise relating to the Consolidated Estate, the Debtors or the Bankruptcy Case.

7.    Central hereby releases and forever discharges RLI, its affiliates, subsidiaries, employees, agents, representatives, officers, directors, shareholders, successors, parents, assigns, and/or representatives from any and all claims, liabilities and causes of action of any kind whatsoever, whether known or unknown, which were or could have been asserted in the Adversary Proceeding or otherwise relating to the Consolidated Estate, the Debtors or the Bankruptcy Case.

8.    This Agreement is subject to the approval of the Bankruptcy Court in the Bankruptcy Case.  The Committee shall promptly file a motion with the Bankruptcy Court seeking such approval.

9.    Upon approval of the Agreement by the Court, payment of the Settlement

Amount, and execution and delivery of the Notice of Withdrawal of Claims, the Committee agrees to dismiss the Adversary Proceeding against RLI, with prejudice, pursuant to Rule 41 of the Federal Rules of Civil Procedure as applied by Bankruptcy Rule 7041, each party to bear its own costs.

10.   All parties to this Agreement warrant and represent to each other that they are fully informed and have full knowledge and understanding of the terms, conditions and effects of this Agreement.

11.   This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supercedes all prior oral or written agreements and understandings relating to the subject matter hereof.  No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

12.   This Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and governed by the laws of the State of Utah.

13.   The Bankruptcy Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof.

14.    This Agreement may be executed by facsimile signature and in counterparts and counterparts containing the signatures of all parties shall represent one and the same agreement.

5/29/07
DATE

Peter W. Billings
Gary E. Jubber
FABIAN & CLENDENIN
Attorneys for the Committee


RLI INSURANCE COMPANY


5.29.07
DATE

By: _____
Its: General Cansel


_____
DATE

Robert B. Lochhead
PARR WADDOUPS BROWN GEE & LOVELESS
Attorneys for RLI Insurance Company


CENTRAL REFRIGERATED SERVICES, INC.

_____
DATE


By: _____
    Its: _____


_____
DATE

Michael N. Emery
RICHARDS, BRANDT, MILLER & NELSON
Attorneys for Central Refrigerated Services, Inc.

14.   This Agreement may be executed by facsimile signature and in counterparts and counterparts containing the signatures of all parties shall represent one and the same agreement.

_____
DATE

Peter W. Billings
Gary E. Jubber
FABIAN & CLENDENIN
Attorneys for the Committee

RLI INSURANCE COMPANY

_____
DATE

By: _____
    Its: _____

_May 29, 2007_
DATE

Robert B. Lochhead
PARR WADDOUPS BROWN GEE & LOVELESS
Attorneys for RLI Insurance Company

CENTRAL REFRIGERATED SERVICES, INC.

_____
DATE

By: _____
    Its: _____

_____
DATE

Michael N. Emery
RICHARDS, BRANDT, MILLER & NELSON
Attorneys for Central Refrigerated Services, Inc.

ND: 4825-5379-7377, v.  1                    7

14.    This Agreement may be executed by facsimile signature and in counterparts and counterparts containing the signatures of all parties shall represent one and the same agreement.

_____          _____
DATE                                Peter W. Billings
                                    Gary E. Jubber
                                    FABIAN & CLENDENIN
                                    Attorneys for the Committee


                                    RLI INSURANCE COMPANY


_____          By: _____
DATE                                Its: _____



_____          _____
DATE                                Robert B. Lochhead
                                    PARR WADDOUPS BROWN GEE & LOVELESS
                                    Attorneys for RLI Insurance Company

June 4, 2007                        CENTRAL REFRIGERATED SERVICES, INC.
_____
DATE
                                    By: _____
                                    Its: _Vice-President + Genrl Co-rl_



_____          _____
DATE                                Michael N. Emery
                                    RICHARDS, BRANDT, MILLER & NELSON
                                    Attorneys for Central Refrigerated Services, Inc.

14.    This Agreement may be executed by facsimile signature and in counterparts and

counterparts containing the signatures of all parties shall represent one and the same agreement.


_____
DATE

                Peter W. Billings
                Gary E. Jubber
                FABIAN & CLENDENIN
                Attorneys for the Committee


                RLI INSURANCE COMPANY


                By: _____
_____
DATE                      Its: _____


_____
DATE

                Robert B. Lochhead
                PARR WADDOUPS BROWN GEE & LOVELESS
                Attorneys for RLI Insurance Company


                CENTRAL REFRIGERATED SERVICES, INC.
_____
DATE

                By: _____
                      Its: _____

_5/29/07_____
DATE

                Michael N. Emery
                RICHARDS, BRANDT MILLER & NELSON
                Attorneys for Central Refrigerated Services, Inc.

**EXHIBIT "E"**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into between Richard D. Simon,

Richard D. Simon, Jr., Lyn Simon, and Sherry Bokovoy (collectively "Defendants") and the

Official Committee of Unsecured Creditors (the "Committee") as the representative of the

consolidated estates of Simon Transportation Services, Inc., Dick Simon Trucking, Inc., and

Simon Terminal, LLC (the "Debtors"), substantively consolidated under Case Number 02-22906

(GEC) in the United States Bankruptcy Court for the District of Utah, Central Division (the

"Bankruptcy Court").

### R E C I T A L S:

A.      Debtors Simon Transportation Services, Inc., and Dick Simon Trucking filed

voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code") on February 25, 2002; and

B.      Debtor Simon Terminal filed a voluntary petition for relief under Chapter 11 of

the Bankruptcy Code on March 25, 2002; and

C.      Pursuant to Section 6.3 of the Joint Plan of Liquidation dated December 27, 2002,

and the Order Confirming Amended Joint Plan of Liquidation dated March 11, 2003, the

Committee is vested with all of the "Debtors' rights under Chapter 5 and Chapter 3 of the Code

and all causes of action of any nature;" and

D.      The Committee has commenced separate adversary proceedings ("the Adversary

Proceedings") against each of the Defendants as follows:

372862_1

(1)     Adversary No. 04-02404 against Richard D. Simon, which alleges that between October 3, 2000 and February 19, 2002, the Debtors made a series of periodic payments to Richard D. Simon, Jr. totaling $368,594.00, and that said payments were avoidable as fraudulent transfers pursuant to 11 U.S.C. §548 or Utah Code Ann. §§ 25-6-5 & 25-6-6 and 11 U.S.C. § 544(b); and alternatively alleging that $64,753.00 in payments made within 90 days prior to the Petition Date were avoidable as preferential transfers pursuant to 11 U.S.C. § 547;

(2)     Adversary No. 04-02405 against Richard D. Simon, Jr., which alleges that between October 17, 2000 and October 9, 2001, the Debtors made weekly payments to Richard D. Simon, Jr. totaling $154,503.28, and that said payments were avoidable as fraudulent transfers pursuant to 11 U.S.C. §548 or Utah Code Ann. §§ 25-6-5 & 25-6-6 and 11 U.S.C. § 544(b);

(3)     Adversary No. 04-02402 against Lyn Simon, which alleges that between June 18, 2001 and February 5, 2002, the Debtors made a series of periodic payments to Lyn Simon totaling $105,000, and that said payments were avoidable as fraudulent transfers pursuant to 11 U.S.C. §548(A)(1)(b), and alternatively that $36,000 in payments made within 90 days prior to the Petition Date were avoidable as preferential transfers pursuant to 11 U.S.C. § 547;

(4)     Adversary No. 04-02406 against Sherry Bokovoy, which alleges that between August 21, 2001 and February 19, 2002, the Debtors made a serious of periodic payments to Sherry Bokovoy totaling $84,000, and that said payments were avoidable as

fraudulent transfers pursuant to 11 U.S.C. §548(a)(1)(B), and alternatively that $42,000

in payments made within 90 days prior to the Petition Date were avoidable as preferential

transfers pursuant to 11 U.S.C. § 547.

E.    The individual Defendants filed answers in the respective Adversary Proceedings

disputing that the Payments are avoidable as fraudulent conveyances under federal or state law or

as preferential transfers under Bankruptcy Code § 547, and raising certain defenses, including,

but not limited to:

(1) that the Debtors received reasonably equivalent value in the form of:

(a) consulting services and employment services pursuant to the terms of a

Consulting and Noncompetition Agreement between Richard D. Simon and

Simon Transportation Services, Inc., and Employment and Noncompetition

Agreements between Simon Transportation Services, Inc. and each of Richard D.

Simon, Jr., Lyn Simon, and Sherry Bokovoy; and

(b) the Defendants continuing not to compete with the Debtors pursuant to

their agreements in the Consulting and Noncompetition Agreement between

Richard D. Simon and Simon Transportation Services, Inc., and the Employment

and Noncompetition Agreements between Simon Transportation Services, Inc.

and each of Richard D. Simon, Jr., Lyn Simon, and Sherry Bokovoy.  Defendants'

assertions regarding their agreements not to compete included that Defendants

had extensive knowledge of the Debtors' operations and the trucking industry due

to their years of involvement in ownership and/or upper management of the

Debtors, that Defendants had knowledge of key customers and other contacts in

the industry, that Defendants had relationships with key employees of the

Debtors, and that Defendants had the financial capability to establish or join a

business or businesses in competition to the Debtors;

(2) Defendants asserted that the transfers were not preferential because they were

contemporaneous exchanges for new value, i.e. employment and consulting services

provided by the Defendants, and the Defendants continuing not to engage in activities

that would compete with Simon Transportation Services, Inc. as described in more detail

in the preceding subparagraphs; and

(3) Defendants also asserted that the Debtors were not insolvent at the time of

some of the transfers to Defendants.

F.    The total amount potentially recoverable as fraudulent transfers in the Adversary

Proceedings was reduced during the course of the litigation when the Committee's accountants

concluded that the Debtors were likely solvent at the time of some of the payments at issue in the

Adversary Proceedings.

G.    In order to avoid the expense of continued litigation and the uncertainty of trials

and in order to settle the disputes between the parties to this Agreement, Defendants and the

Committee have agreed to a compromise and settlement to resolve their differences with finality

concerning the Payment, and all other matters related thereto.

NOW, THEREFORE, based upon the foregoing facts and recitals, the Committee and

Defendants hereby stipulate and agree as follows:

372862_1                          4

1.  Defendant Richard D. Simon shall to deliver to the Committee the sum of $160,000.00 payable to the "Dick Simon Consolidated Bankruptcy Estates" within ten (10) days after execution of this Agreement in partial satisfaction of the claims of the Committee against Richard D. Simon.

2.  As additional consideration, Defendants waive, release and forever discharge the Consolidated Estate and the Committee from any and all claims, liabilities and causes of action of any kind, including but not limited to those claims that were asserted in the following proofs of claim:

(a)     the proof of claim filed by Richard D. Simon on or about August 22, 2002 (Claim no. 885 in Case No. 02-22906) asserting:

(1) a general unsecured claim in the amount of $375,000.00; and

(2)  a priority claim under 11 U.S.C. § 507(a)(3) in the amount of $4,650.00;

(b)     the proof of claim filed by Lyn Simon on or about August 22, 2002 (Claim no. 884 in Case No. 02-22906) asserting:

(1) a general unsecured claim in the amount of $360,000.00; and

(2)  a priority claim under 11 U.S.C. § 507(a)(3) in the amount of $4,650.00; and

(c)     the proof of claim filed by Sherry L. Bokovoy on or about August 22, 2002 (Claim no. 886 in Case No. 02-22906) asserting:

(1) a general unsecured claim in the amount of $72,000.00; and

(2)  a priority claim under 11 U.S.C. § 507(a)(3) in the amount of $4,650.00.

3.   Defendants Richard D. Simon, Lyn Simon, and Sherry Bokovoy each agree to execute a Notice of Withdrawal of Claims in the form attached hereto as Exhibit "A" with respect to the proof of claim referred to in the preceding paragraph that was filed by the respective defendant.

4.   In return for the payment from Richard D. Simon and the releases and waivers of claims by Defendants as set forth herein, the Committee, as the representative of the Consolidated Estate, shall release and forever discharge Defendants from any and all claims, liabilities and causes of action, including but not limited to those set forth in the Adversary Proceedings (except for any obligations arising under this Agreement).

5.   This Agreement is subject to the approval of the Bankruptcy Court in the Bankruptcy Case.  The Committee shall promptly file a motion with the Bankruptcy Court seeking such approval.

6.   Upon approval of the Agreement by the Court, payment of the Settlement Amount, and execution and delivery of the Notices of Withdrawal of Claims, the Committee agrees to dismiss the Adversary Proceedings against the Defendants, with prejudice, pursuant to Rule 41 of the Federal Rules of Civil Procedure as applied by Bankruptcy Rule 7041, each party to bear its own costs.

7.   All parties to this Agreement warrant and represent to each other that they are fully informed and have full knowledge and understanding of the terms, conditions and effects of this Agreement.

372862_1                                    6

8.   This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supercedes all prior oral or written agreements and understandings relating to the subject matter hereof.  No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

9.   This Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and governed by the laws of the State of Utah.

10. The Bankruptcy Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof.

11. This Agreement may be executed in counterparts and counterparts containing the signatures of all parties shall represent one and the same agreement.


_____      _____
DATE                      Peter W. Billings
                          Gary E. Jubber
                          Douglas J. Payne
                          FABIAN & CLENDENIN
                          Attorneys for the Committee


_____      _____
DATE                      RICHARD D. SIMON


372862_1                          7

_____   _____
DATE           RICHARD D. SIMON, JR.

_____   _____
DATE           LYN SIMON

_____   _____
DATE           SHERRY BOKOVOY

ND: 4838-5183-3857, VER  1

ND: 4838-5183-3857, V.  1

**EXHIBIT "F"**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement (the "Agreement") is entered into between Thermo King

SVC, Inc. (hereinafter "Defendant") and the Official Committee of Unsecured Creditors (the

"Committee"), as the representative of the consolidated estate ("Consolidated Estate") of Simon

Transportation Services, Inc., Dick Simon Trucking, Inc., and Simon Terminal, LLC (the

"Debtors"), substantively consolidated under Case Number 02-22906 (GEC) ("Bankruptcy

Case") in the United States Bankruptcy Court for the District of Utah, Central Division (the

"Bankruptcy Court").

### R E C I T A L S:

A.    Debtors Simon Transportation Services, Inc., and Dick Simon Trucking, Inc.,

filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code") on February 25, 2002; and

B.    Debtor Simon Terminal LLC filed a voluntary petition for relief under Chapter 11

of the Bankruptcy Code on March 25, 2002; and

C.    On March 11, 2003 the Bankruptcy Court executed its *Order Confirming Joint*

*Plan of Liquidation* ("Confirmation Order") pursuant to which all property of the Debtors

including all Debtors' rights under Chapter 5 of the Bankruptcy Code, were vested in the

Consolidated Estate under the exclusive control of the Committee.  Pursuant to Section 6.3 of the

Joint Plan of Liquidation dated December 27, 2002, and the Confirmation Order, the Committee

is vested with all of the "Debtors' rights under Chapter 5 and Chapter 3 of the Code and all

causes of action of any nature;" and

D.     The Committee has alleged that the Debtors made preferential payments to Defendant totaling $1,475,090.55 within ninety days prior to the filing of the Debtors' bankruptcy petitions (the "Payments"); and

F.     The Committee has commenced an adversary proceeding (Adversary Number 04-02399 the "Adversary Proceeding") against Defendant by filing a complaint alleging that the Payments were preferential transfers within the meaning of Bankruptcy Code § 547; and

G.     Defendant disputes that the Payments are avoidable as preferential transfers under Bankruptcy Code § 547; and

H.     In order to avoid the expense of prolonged litigation and the uncertainty of trial and in order to settle the dispute between the parties to this Agreement, Defendant and the Committee have agreed to a compromise and settlement to resolve their differences with finality concerning the Payments, and all other matters related thereto.

Now, therefore, based upon the foregoing facts and recitals, the Committee and Defendant hereby stipulate and agree as follows:

1.     Defendant shall to pay to the Committee the sum of $295,000.00 (the "Settlement Amount") within ten (10) days after execution of this Agreement.  The Committee agrees not to expend the Settlement Amount until Bankruptcy Court approval of this Agreement and, in the event the Agreement is not approved, to promptly repay the Settlement Amount to Defendant.

2.     As additional consideration, Defendant hereby waives and releases and forever discharges from any and all claim, liability and causes of action of any kind whatsoever, whether known or unknown, the Consolidated Estate and the Committee, including but not limited to the proof of claim filed by Defendant on or about August 23, 2002 asserting an unsecured claim in the amount of $1,333,000.00 (Claim no. 918 in Case No. 02-22906) as subsequently amended by the proof of claim filed by Defendant on or about December 5, 2003 asserting an unsecured claim in the amount of $1,970,875.03 (Claim no. 18 in Case No. 02-22907 amending Claim No. 918 in the amount of $1,333,000.00).  Defendant agrees to execute a Notice of Withdrawal of Claims in the form attached hereto as Exhibit "A" upon the Bankruptcy Court's approval of this Agreement.

3.     The Committee, as the representative of the Consolidated Estate, hereby releases and forever discharges Defendant, its affiliates, subsidiaries, employees, agents, representatives, officers, directors, shareholders, successors, parents, assigns, and/or representatives from any and all claims, liabilities and causes of action of any kind whatsoever, whether known or unknown, which were or could have been asserted in the Adversary Proceeding (except for any obligations arising under this Agreement).

4.     This Agreement is subject to the approval of the Bankruptcy Court in the Bankruptcy Case.  The Committee shall promptly file a motion with the Bankruptcy Court seeking such approval.

5.     Upon approval of the Agreement by the Court, payment of the Settlement Amount, and execution and delivery of the Notice of Withdrawal of Claims, the Committee

agrees to dismiss the Adversary Proceeding against the Defendant, with prejudice, pursuant to Rule 41 of the Federal Rules of Civil Procedure as applied by Bankruptcy Rule 7041, each party to bear its own costs. A Stipulation of Dismissal with Prejudice in the form attached as Exhibit "B" shall be executed by both parties upon Bankruptcy Court approval of this Agreement.

6.      All parties to this Agreement warrant and represent to each other that they are fully informed and have full knowledge and understanding of the terms, conditions and effects of this Agreement.

7.      This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supercedes all prior oral or written agreements and understandings relating to the subject matter hereof. No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

8.      This Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and governed by the laws of the State of Utah.

9.      The Bankruptcy Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof.

10.    This Agreement may be executed in counterparts and counterparts containing the

signatures of all parties shall represent one and the same agreement.


_____          _____
DATE                                         Peter W. Billings
                                             Gary E. Jubber
                                             FABIAN & CLENDENIN
                                             Attorneys for the Committee


                                             THERMO KING SVC, INC.


                                             By: _____
_____
DATE                                             Its: _____


_____          _____
DATE                                         Mark S. Olson
                                             David B. Galle
                                             OPPENHEIMER WOLFF & DONNELLY LLP
                                             Attorneys for Defendant, Thermo King SVC, Inc.


_____          _____
DATE                                         Robert S. Prince
                                             Chris Hill
                                             KIRTON & MCCONKIE
                                             Attorneys for Defendant, Thermo King SVC, Inc.


ND: 4818-5278-8993, v. 3

# EXHIBIT "G"

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into between West Valley Truck Center (hereinafter "Defendant"), and the Official Committee of Unsecured Creditors (the "Committee") as the representative of the consolidated estates of Simon Transportation Services, Inc., Dick Simon Trucking, Inc., and Simon Terminal, LLC (the "Debtors"), substantively consolidated under Case Number 02-22906 (GEC) in the United States Bankruptcy Court for the District of Utah, Central Division (the "Bankruptcy Court").

### R E C I T A L S:

A.      Debtors Simon Transportation Services, Inc., and Dick Simon Trucking filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 25, 2002; and

B.      Debtor Simon Terminal filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 25, 2002; and

C.      Pursuant to Section 6.3 of the Joint Plan of Liquidation dated December 27, 2002, and the Order Confirming Amended Joint Plan of Liquidation dated March 11, 2003, the Committee is vested with all of the "Debtors' rights under Chapter 5 and Chapter 3 of the Code and all causes of action of any nature;" and

D.      The Committee has alleged that the Debtors made preferential payments to Defendant totaling $45,396.72 within ninety days prior to the Debtors' bankruptcy petitions (the "Payments") by checks dated December 13, 2001 and January 17, 2002 as payment of antecedent debts; and

4812-9606-2209

E.     The Committee made written demand on Defendant for the return of the

Payments alleging that the Payments were preferential transfers within the meaning of

Bankruptcy Code § 547; and

F.     The Committee has commenced an adversary proceeding (Adversary No. 04-

02199, hereinafter the "Adversary Proceeding") against Defendant by filing a complaint alleging

that the Payments were preferential transfers within the meaning of Bankruptcy Code § 547; and

G.     Defendant filed an answer in the Adversary Proceeding disputing that the

Payments are avoidable as preferential transfers under Bankruptcy Code § 547, and raising

certain defenses, including that the Payments were made in the ordinary course of business and

that Defendant provided new value subsequent to the Payments; and

H.     In order to avoid the expense of continued litigation and the uncertainty of trial

and in order to settle the dispute between the parties to this Agreement, Defendant and the

Committee have agreed to a compromise and settlement to resolve their differences with finality

concerning the Payments, and all other matters related thereto.

NOW, THEREFORE, based upon the foregoing facts and recitals, the Committee and

Defendant hereby stipulate and agree as follows:

1.     Defendant has agreed to deliver to the Committee the sum of $25,000.00 (the

"Settlement Amount") payable to the "Dick Simon Consolidated Bankruptcy Estates" within ten

(10) days after execution of this Agreement.

4812-9606-2209                                    2

2.    The Committee agrees to accept the Settlement Amount in full and final satisfaction of those claims set forth in the Adversary Proceeding, subject to Bankruptcy Court approval.

3.    The Committee shall release and forever discharges Defendant and its agents and/or representatives from any and all claims relating to the Adversary Proceeding (except for any obligations arising under this Agreement).

4.    Upon approval of the Agreement by the Court, the Committee agrees to dismiss the Adversary Proceeding against the Defendant, with prejudice, pursuant to Rule 41 of the Federal Rules of Civil Procedure as applied by Bankruptcy Rule 7041.

5.    All parties to this Agreement warrant and represent to each other that they are fully informed and have full knowledge and understanding of the terms, conditions and effects of this Agreement.

6.    This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supercedes all prior oral or written agreements and understandings relating to the subject matter hereof.  No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

7.    This Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and governed by the laws of the State of Utah.

8.    The Bankruptcy Court shall retain exclusive jurisdiction to adjudicate any

4812-9606-2209                                              3

controversy, dispute or claim arising out of or in connection with this Agreement, or the breach,

termination or validity hereof.

9.     This Agreement may be executed in counterparts and counterparts containing the

signatures of all parties shall represent one and the same agreement.


_____        _____
DATE                                    Peter W. Billings
                                        Gary E. Jubber
                                        Douglas J. Payne
                                        FABIAN & CLENDENIN
                                        Attorneys for the Committee


                                        WEST VALLEY TRUCK CENTER


_____        By: _____
DATE

                                        Its: _____